**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ADRIAN SANTIAGO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2024-CV-2058 |
| | ) | |
| v. | ) | Judge Mary M. Rowland |
| | ) | |
| NORTHWESTERN UNIVERSITY, | ) | Magistrate Judge Gabriel A. Fuentes |
| JAMES THOMAS FOSTER, MONIQUE | ) | |
| HOLLAND, and RACHEL VELEZ, | ) | |
| | ) | |
| Defendants. | ) | |

**THE NORTHWESTERN DEFENDANTS' MEMORANDUM OF LAW
<u>IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

Reid J. Schar
Nicole A. Allen
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654
Phone: (312) 222-9350
rschar@jenner.com
nallen@jenner.com

*Counsel for Defendants Northwestern University, Monique Holland, and Rachel Velez*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ....................................................................................................................... 5

I.      This Court Should Dismiss Plaintiff's IMWL and FLSA Claims (Counts I-II).................. 5

      A.      Plaintiff Was Not an Employee of Northwestern. ..................................................... 5

      B.      Plaintiff's Claim for Overtime Is Deficiently Pled. ................................................. 9

II.     This Court Should Dismiss Plaintiff's IWPCA Claim (Count III) Because He Had No Employment Agreement Entitling Him to the Amounts He Claims He Is Owed. .......................................................................................................................... 10

III.    If Plaintiff Was an Employee of Northwestern, this Court Should Dismiss His Tort Claims (Counts IV-VIII) As Barred by the IWCA. .................................................. 12

IV.    Even if Not Preempted, the Court Should Dismiss Plaintiff's Tort Claims (Counts IV-VIII). ........................................................................................................... 13

      A.      Plaintiff Does Not State a Claim for Negligent Hiring (Count IV) Against Northwestern .......................................................................................................... 13

            1.      Plaintiff Does Not Sufficiently Allege Northwestern's Actual or Constructive Knowledge of Foster's Alleged Unfitness. .......................... 14

            2.      Plaintiff Does Not Sufficiently Allege Foster's "Particular Unfitness" or that it Proximately Caused Injury ....................................... 15

      B.      Plaintiff Does Not State a Claim for Negligent Supervision (Count V) ................ 17

            1.      Plaintiff Does Not Sufficiently Allege Negligent Supervision or Proximate Cause. ..................................................................................... 17

            2.      Plaintiff Does Not Sufficiently Allege that Holland and Velez Had a Duty to Supervise Foster. .................................................................. 19

      C.      Plaintiff Does Not State a Claim for Willful and Wanton Negligence (Count VII) .............................................................................................................. 20

1.     Plaintiff Does Not Sufficiently Allege Willful and Wanton Conduct as Required to Sustain His Claim...............................20

2.     Plaintiff Does Not Allege the Individual Defendants Owed Him a Duty...................................................................................21

D.    Plaintiff Does Not State a Claim for NIED (Count VI)........................................22

1.     Plaintiff Does Not Sufficiently Allege a Contemporaneous Physical Injury or Impact...........................................................22

2.     Plaintiff Does Not Sufficiently Allege a Duty of Care. ...........................23

E.    Plaintiff Does Not State a Claim for IIED (Count VIII).......................................23

F.    Northwestern Is Not Liable Based on Respondeat Superior (Count IX)...............25

CONCLUSION...............................................................................................................25

# TABLE OF AUTHORITIES

**CASES**

*Alam v. Miller Brewing Co.*, 709 F.3d 662 (7th Cir. 2013) ............................................................5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................5

*Atkins v. City of Chicago*, 631 F.3d 823 (7th Cir. 2011) ............................................................5

*Barr v. Cunningham*, 2017 IL 120751 ............................................................20

*Barry v. City of Chicago*, 2021 IL App (1st) 200829 ............................................................16

*Beacom v. Northwestern University*, Case No. 2023 L 8072 (Ill., Cir. Ct. Cook Cnty. Apr. 26, 2024) ............................................................ *passim*

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................5, 19

*Benton v. Little League Baseball, Inc.*, 2020 IL App (1st) 190549 ............................................................22

*Berger v. NCAA*, 843 F.3d 285 (7th Cir. 2016) ............................................................6, 8

*Brown v. BCG Attorney Search*, 2013 WL 6096932 (N.D. Ill. Nov. 20, 2013) ............................................................10

*Brown v. New York City Department of Education*, 2012 WL 6186496 (S.D.N.Y. Dec. 12, 2012), *aff'd*, 755 F.3d 154 (2d Cir. 2014) ............................................................8

*Callahan v. City of Chicago*, 78 F. Supp. 3d 791 (N.D. Ill. 2015), *aff'd*, 813 F.3d 658 (7th Cir. 2016) ............................................................5-6

*Campbell v. A.C. Equipment Services Corp., Inc.*, 242 Ill. App. 3d 707 (4th Dist. 1993) ............................................................20

*Carmona v. 4-Brothers Transport LLC*, 2024 WL 1767572 (N.D. Ill. Apr. 24, 2024) ............................................................19, 23

*Davis v. Potter*, 301 F. Supp. 2d 850 (N.D. Ill. 2004) ............................................................4

*Doe v. La Magdalena II, Inc.*, 585 F. Supp. 2d 984 (N.D. Ill. 2008) ............................................................12

*Edwards v. Commonwealth Edison*, 2015 WL 6445417 (N.D. Ill. Oct. 23, 2015) ............................................................13

*Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565 (7th Cir. 2016) ............................................................11

*Fallon v. Indian Trail School*, 148 Ill. App. 3d 931 (2d Dist. 1986) ............................................................14

*Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528 (2d Cir. 2016) ............................................................8

iii

*Glickman v. Main-Niles Ass'n of Special Recreation*, 440 F. Supp. 3d 946 (N.D. Ill. 2020)......................................................................................................................18

*Gress v. Lakhani Hospitality, Inc.*, 2018 IL App (1st) 170380 ......................................16

*Helix Energy Solutions Group, Inc. v. Hewitt*, 598 U.S. 39 (2023).................................5

*Herrera v. Di Meo Brothers, Inc.*, 529 F. Supp. 3d 819 (N.D. Ill. 2021) .....................17

*Hill v. Watson*, 2014 WL 440371 (N.D. Ill. Feb. 4, 2014) ........................................6, 8

*Hoffman v. Roadlink Workforce Solutions, LLC*, 2014 WL 3808938 (N.D. Ill. Aug. 1, 2014) ..............................................................................................................11

*Hollins v. Regency Corp.*, 867 F.3d 830 (7th Cir. 2017) .................................................8

*Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago*, 104 F.3d 1004 (7th Cir. 1997) .....................................................................................12

*Iqbal v. Zafar*, 2013 WL 5587082 (N.D. Ill. Oct. 9, 2013) ..........................................19

*Layne v. Builders Plumbing Supply Co.*, 210 Ill. App. 3d 966 (2d Dist. 1991)............24

*Leonard v. Kurtz*, 234 Ill. App. 3d 553 (3d Dist. 1992) ................................................22

*Martin v. Siciliano*, 2023 WL 3320428 (N.D. Ill. May 9, 2023).................................19

*Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455 (1990) ..........................................13

*Miller v. Equitable Life Assurance Society of the United States*, 181 Ill. App. 3d 954 (1st Dist. 1989)......................................................................................................24

*Palar v. Blackhawk Bancorporation, Inc.*, 2013 WL 5366124 (C.D. Ill. Sept. 25, 2013) ..................................................................................................................... 10-11

*Parks v. Speedy Title & Appraisal Review Services*, 318 F. Supp. 3d 1053 (N.D. Ill. 2018)....................................................................................................................9, 10

*Phillips v. Exxon Mobil Corp.*, 2018 WL 3458286 (N.D. Ill. July 18, 2018)...............12

*Pryor v. Chicago Transit Authority*, 2022 IL App (1st) 200895 ...................................20

*Public Finance Corp. v. Davis*, 66 Ill. 2d 85 (1976) ....................................................24

*Purdham v. Fairfax County School Board*, 637 F.3d 421 (4th Cir. 2011) ............... 6-7, 9

*Ruff v. Han*, 2022 WL 767219 (N.D. Ill. Mar. 14, 2022) ............................................25

*Ruff v. Han*, 2023 WL 4351889 (N.D. Ill. July 5, 2023) ................................................23

*Santos v. Boeing Co.*, 2004 WL 1384724 (N.D. Ill. May 11, 2004)..............................12

*Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199 (11th Cir. 2015) ......................8

*Schweihs v. Chase Home Finance, LLC*, 2016 IL 120041 ................................22, 23, 24

*Silver v. Townstone Financial, Inc.*, 2015 WL 1259507 (N.D. Ill. Mar. 17, 2015).....................10

*Tabora v. Gottlieb Memorial Hospital*, 279 Ill. App. 3d 108 (1st Dist. 1996)............24

*Todaro v. Township of Union*, 40 F. Supp. 2d 226 (D.N.J. 1999)...................................7

*Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290 (1985)...........6

*Turner v. M.B. Financial Bank*, 2017 WL 4390367 (N.D. Ill. Oct. 3, 2017) ...............25

*Van Horne v. Muller*, 185 Ill. 2d 299 (1998) ...............................................13, 15, 16

*Vann v. Dolly, Inc.*, 2020 WL 902831 (N.D. Ill. Feb. 25, 2020) ...................................11

*Walker v. Walgreens Specialty Pharmacy LLC*, 2023 WL 5334609 (N.D. Ill Aug. 18, 2023) ...............................................................................................................10

*Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947)...............................................6

*Warnell v. Ford Motor Co.*, 1998 WL 748328 (N.D. Ill. Oct. 22, 1998) ....................14

*Watkins v. BNSF Railway Co.*, 2022 WL 4386684 (N.D. Ill. Sept. 21, 2022) ............18

*Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 155 (1st Dist. 1999)........25

*Williamson v. Curran*, 714 F.3d 432 (7th Cir. 2013)....................................................4

**STATUTES**

820 ILCS 115/2.............................................................................................................10

820 ILCS 305/11 ..........................................................................................................12

820 ILCS 305/15(a) ......................................................................................................12

29 U.S.C. § 203(e)(4)(A) ...............................................................................................9

29 U.S.C. § 206(a)(1)(C) ...............................................................................................5

**OTHER AUTHORITIES**

29 C.F.R. § 553.106(a)................................................................................9

29 C.F.R. § 553.106(e)................................................................................9

56 Ill. Admin. Code 300.450 .......................................................................11

DOL Opinion Letter FLSA 2005-51, 2005 WL 3308622 (Nov. 10, 2005)..................9

DOL Opinion Letter FLSA2008-16, 2008 WL 5483056 (Dec. 18, 2008) ..................9

## INTRODUCTION

Plaintiff Adrian Santiago has sued Northwestern University, current University employees Monique Holland and Rachel Velez, and Northwestern's former head baseball coach James Foster. ECF No. 1-1 ("Compl.") ¶ 6. This motion to dismiss is submitted on behalf of the University, Holland, and Velez, collectively referred to herein as the Northwestern Defendants.

Plaintiff was a volunteer assistant baseball coach at Northwestern during the 2022-2023 baseball season and reported to Foster. Like other former Northwestern baseball coaches who have filed a state court lawsuit against these same defendants, *see Beacom v. Northwestern University*, Case No. 2023 L 8072 (Ill., Cir. Ct. Cook Cnty.),[1] Plaintiff alleges that Foster created a toxic work environment, including by yelling, cursing, and engaging in other "unprofessional" behavior. Compl. ¶ 17. Based on this and similar alleged conduct, Plaintiff seeks compensatory and punitive damages for the Northwestern Defendants' alleged violations of state and federal wage laws (Counts I, II, and III), negligence, including in hiring and supervising Foster (Counts IV, V, and VII), and negligent and intentional infliction of emotional distress ("NIED" and "IIED," respectively) (Counts VI and VIII). The allegations reflect a dislike of Foster but do not state a valid claim for legal recourse.

First, Plaintiff's wage claims under the federal Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL") fail. Plaintiff was a volunteer. *See, e.g.*, *id*. ¶¶ 6, 17(c), 21. Volunteers are not entitled to lost wages or overtime under the FLSA or IMWL. Plaintiff's claim under the Illinois Wage Payment and Collection Act ("IWPCA") fails for the similar reason

---

[1] The court's opinion in *Beacom*, dismissing all counts, is attached as Ex. B. The complaint in *Beacom*, which is substantially similar to Plaintiff's complaint here, is attached as Ex. C.

that he did not earn wages pursuant to an employment contract or agreement.

Second, even if Plaintiff was an employee, his tort claims are barred by the Illinois Workers' Compensation Act ("IWCA"), which provides the exclusive remedy for accidental injuries allegedly sustained in the workplace, including the emotional injuries Plaintiff claims here.

Third, if not preempted by the IWCA, Plaintiff's claims for negligent hiring, negligent supervision, and willful and wanton negligence fail for the reasons articulated by the state court in *Beacom*. Plaintiff does not plead facts sufficient to conclude anyone at Northwestern was or should have been aware of Foster's purported misconduct before Northwestern hired him. He does not plead a connection between Foster's alleged misconduct at other schools and the injuries he claims to have suffered. He does not plead facts sufficient to establish that Holland or Velez had a duty to supervise Foster. And he does not sufficiently plead willful and wanton conduct.

Fourth, and again like the *Beacom* court, this Court should dismiss Plaintiff's emotional distress claims. Plaintiff does not sufficiently allege he sustained a physical injury, or that Holland or Velez owed him a duty, as required to state a NIED claim. And Plaintiff's allegations of Foster's foul language, yelling, and other "unprofessional" behavior are inadequate to state an IIED claim.

Because each of Plaintiff's underlying claims are deficient, his attempt to base a claim on a *respondeat superior* theory[2] must also be dismissed.

## **BACKGROUND**

Plaintiff joined Northwestern's coaching staff as an unpaid volunteer. Compl. ¶¶ 6, 21 & n.1, 91. He agreed to coach in an unpaid role and without an employment contract in hopes that he

---

[2] Plaintiff's *respondeat superior* claim—the ninth count of his complaint—is incorrectly labeled Count VII. To avoid confusion, the Northwestern Defendants refer to the *respondeat superior* claim as Count IX.

eventually would be provided what he describes as an "opportunity to thrive as more than a volunteer coach with the team," for example, as a "first or second assistant." *Id.* ¶ 33.

During his time as a volunteer coach, reporting to Foster as the head baseball coach, Plaintiff alleges that Foster engaged in "abuse and bullying" that consisted of the following:

- "[V]olatile, unpredictable behavior with frequent blow-ups," foul language, and yelling, which Plaintiff found "unprofessional and demean[ing]";

- Inappropriate comments about a student-athlete's ethnicity;

- "Paranoia" and efforts to "manipulate and pit staff against one another"; and

- Requests that staff members engage in conduct Plaintiff perceived as violative of National Collegiate Athletics Association ("NCAA") rules, such as having a volunteer like Plaintiff engage in recruiting activities.

*Id.* ¶¶ 17, 18.

Several members of the baseball staff, but not Plaintiff, allegedly reported Foster's conduct to the Human Resources Department ("HR") in October 2022 and separately reported Foster to the NCAA. *Id.* ¶ 19. Plaintiff concedes that HR investigated the complaint—indeed, Plaintiff says that he met with HR staff in connection with the investigation. *Id.* ¶ 20. After a "thorough investigation, including witness interviews and a review of relevant information and documents," HR concluded that Foster violated University policy by "engag[ing] in bullying and abusive behavior, ma[king] an inappropriate comment regarding a female staff member, and sp[eaking] negatively about his staff to other staff members," but found the allegations that Foster made racially insensitive comments and discouraged student athletes from seeking medical attention to be unfounded. Northwestern Letter to Michael Napoleon, Ex. A.[3] HR referred the matter to the

---

[3] Plaintiff relies throughout his complaint on a February 22, 2023 letter from Northwestern to the former baseball coaches who reported Foster's alleged conduct to HR. *See* Compl. ¶¶ 31-32,

Athletics Department for remedial action. *Id*. Plaintiff alleges that Foster later was terminated. Compl. ¶ 62. Plaintiff nonetheless complains that "Northwestern did nothing." *Id*. ¶ 64.

According to Plaintiff, the baseball coaches who complained to HR about Foster (Michael Napoleon, Jon Strauss, and Christopher Beacom) "became remote special contract workers at Northwestern" and later "lost their positions." *Id*. ¶ 30. Plaintiff says that, in their absence, he was assigned their duties: program operations, pitching strategy, and recruiting. *Id*. ¶ 34. He "remained a volunteer" but was "fed assurances by Foster that Plaintiff could be hired next season." *Id*. ¶ 38.

In March 2023, Plaintiff allegedly approached Foster and Northwestern about "receiving pay for the three jobs he was now performing." *Id*. ¶ 39. By Plaintiff's own admission, Northwestern did *not* respond by making him a paid employee: Foster told Plaintiff he "was caught up in administrative bullshit," and Velez told him they were "working it out." *Id*. ¶ 40. After discussion, Northwestern allegedly made two $5,000 stipend payments to Plaintiff (which Plaintiff says is "less than what any other coach or the Director of Operations made under their employment contracts") but retained him as a volunteer coach without an employment agreement. *Id.* ¶¶ 45, 52-53. In June 2023, after it purportedly became clear to Plaintiff that he would not be elevated to a paid role as a pitching coach, he left Northwestern. *Id.* ¶¶ 59-60.

---

109-110, 123, 141. It is well-established that the "Court may … consider documents referred to in a plaintiff's complaint and attached to a motion to dismiss if they are central to the plaintiff's claim, even if the plaintiff did not attach them to his complaint." *Davis v. Potter*, 301 F. Supp. 2d 850, 856 (N.D. Ill. 2004); *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (same). The Northwestern Defendants therefore attach the February 22, 2023 letter to this motion to dismiss and ask the Court to consider it in assessing Plaintiff's allegations regarding the investigation and its aftermath.

## **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted when the complaint fails to state a facially plausible and legally valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). However, a court need not accept as true legal conclusions or threadbare recitals of the elements supported by conclusory statements. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) (citation omitted). Rather, Rule 8(a)(2) requires a showing that rises "above the speculative level." *Twombly*, 550 U.S. at 555. And if a plaintiff pleads facts that show he has no claim, the claim must be dismissed. *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011).

## **ARGUMENT**

### I.     **This Court Should Dismiss Plaintiff's IMWL and FLSA Claims (Counts I-II).**

This Court should dismiss Plaintiff's IMWL and FLSA claims because Plaintiff, as a matter of law, was not an employee of Northwestern. In any event, even if Plaintiff was an employee, he would be entitled only to compensation at minimum wage and not to overtime pay because he does not specify the hours he allegedly worked and when he worked those hours.

#### A.     **Plaintiff Was Not an Employee of Northwestern.**

The FLSA requires that an employer pay its "employee[s]" a minimum wage, 29 U.S.C. § 206(a)(1)(C), and overtime at 1.5 times the employee's hourly rate, *id.* § 207. *See Helix Energy Sols. Group., Inc. v. Hewitt*, 598 U.S. 39, 44 (2023) (detailing FLSA requirements). The IMWL, interpreted coextensively with the FLSA, requires the same. *Callahan v. City of Chi.*, 78 F. Supp.

3d 791, 821 (N.D. Ill. 2015) ("same analysis" applies to FLSA and IMWL claims), *aff'd*, 813 F.3d 658 (7th Cir. 2016).

A precondition to these obligations, however, is that Plaintiff satisfy his burden of establishing he was an "employee" of Northwestern, as only compensation for employees is governed by the laws' minimum-wage provisions. *Walling v. Portland Terminal Co*., 330 U.S. 148, 150-51 (1947); *see also Berger v. NCAA*, 843 F.3d 285, 290 (7th Cir. 2016) (plaintiff bears the burden of establishing his status as an employee and entitlement to compensation). An employee for purposes of the FLSA and IMWL is an individual who works in contemplation of compensation as a result of an "express[] or implied[] agree[ment] to pay them compensation." *Walling*, 330 U.S. at 151-52; *see also Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 306 (1985). By contrast, a volunteer who works without a compensation agreement generally is not an employee. *See Hill v. Watson*, 2014 WL 440371, at *1 (N.D. Ill. Feb. 4, 2014) (volunteer intern with athletic department was not employee). The definition of employee is limited in this way for good reason: The FLSA was "not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage [or pleasure] on the premises of another," as such a broad interpretation would run counter to Congress' intent and threaten "[o]rdinary volunteerism." *Tony & Susan Alamo Found.*, 471 U.S. at 300, 303.[4]

Plaintiff cannot establish that he was an employee of Northwestern, rather than a volunteer who worked without an explicit or implicit agreement he would be compensated. *See Purdham v.*

---

[4] This analysis "depends on the totality of circumstances ... of the working relationship" rather than on "technical label[s]." *Berger*, 843 F.3d at 290-91 (explaining that the Seventh Circuit does not apply a "multifactor test" and instead evaluates the "economic reality of the alleged employment relationship").

*Fairfax Cnty. Sch. Bd.*, 637 F.3d 421, 428 (4th Cir. 2011) (explaining that the question of whether an individual is a volunteer or employee "is a matter of law to be determined by the court"). Plaintiff candidly—and repeatedly—admits he was hired as a "volunteer." Compl. ¶¶ 6, 21, 33-34, 38, 46. He admits he had no compensation agreement with Northwestern, express or implied, and laments he was never made one of the "*paid* members of the baseball staff." *Id.* ¶¶ 29, 39, 42 n.2, 77 (emphasis added). He admits he worked numerous "unpaid" positions on the team. *Id.* ¶ 91. And while he claims he was promised a paid coaching position in a *future* baseball season, *id.* ¶¶ 56-58, his allegations do not establish he reasonably expected or was promised remuneration for the services rendered during *the 2022-23 baseball season*—the services for which he seeks compensation. In fact, as a volunteer coach, the NCAA prohibited Plaintiff from receiving compensation. *Id.* ¶ 46.[5] Under these alleged facts, assumed to be true for purposes of the motion to dismiss, Plaintiff was not an employee who worked in contemplation of compensation.

The Fourth Circuit's opinion in *Purdham v. Fairfax County School Board*, 637 F.3d 421 (4th Cir. 2011), holding that a volunteer coach who worked under circumstances similar to Plaintiff's was not an employee, is illustrative. There, a public school's golf coach worked 400 to 450 hours a year, instructing the team, coordinating schedules, and overseeing fundraising. *Id.* at 424. The school district reimbursed the coach for expenses and provided a stipend, *id.* at 425— and the coach sued under FLSA for missing wages, *id.* at 426. The district court ruled for the school, holding that the coach was a "volunteer," not an employee, *id.*, and the Fourth Circuit

_____

[5] *Cf. Todaro v. Twp. of Union*, 40 F. Supp. 2d 226, 230-31 (D.N.J. 1999) ("[A] person who performs services in the face of a regulation or stated policy that specifies such services will be unpaid, yet who nevertheless persists in 'expecting' to receive compensation, should not be permitted to satisfy the definition of 'employee' simply by unreasonably insisting that he has a subjective expectation of receiving wages.").

affirmed, *id.* at 428. The appellate court reasoned that the case "present[ed] a classic example of an individual who is motivated, in significant part, by humanitarian and charitable instincts"— namely, "his long-standing love of golf and his dedication to his student athletes." *Id.* at 429. That dedication is part of the culture of student athletics, the court explained, for which coaches often volunteer their service without expectation of compensation. *Id.* Cf. *Berger*, 843 F.3d at 293 (student athletes are not employees, including because athletes participate in sports "for reasons wholly unrelated to immediate compensation"); *Hill*, 2014 WL 440371, at *2 (dismissing FLSA counts where plaintiff was unpaid intern for athletic department).

So too here. Plaintiff alleges he became a volunteer coach because he was motivated by his passion for baseball and collegiate athletics, and not by economic considerations. *See, e.g.*, Compl. ¶ 60 (describing the volunteer position as "a 'dream opportunity' to 'represent [his] hometown school'"). He received an advantage for his service by developing coaching skills, making himself more marketable in the coaching pool, and positioning himself to become Foster's "first or second assistant," *id.* ¶ 33, or the team "pitching coach," *id.* ¶ 56. In this way, Plaintiff's volunteer coaching position resembled an internship or fellowship, the benefits of which inure to the volunteer.[6] *See Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 535 (2d Cir. 2016) (setting out factors that guide whether an unpaid intern is an employee and noting that "[w]hen properly designed," unpaid interns are the primary beneficiaries of the relationship); *Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199, 1211 (11th Cir. 2015) (similar); *Hollins v. Regency Corp.*, 867

---

[6] Similarly, Plaintiff's allegedly diverse job responsibilities support, rather than undermine, the conclusion that he was a volunteer. *See, e.g.*, *Brown v. N.Y.C. Dep't of Educ.*, 2012 WL 6186496, at *3 (S.D.N.Y. Dec. 12, 2012) ("[T]he fact that [plaintiff] performed so many different types of tasks suggests that he was a volunteer. If [plaintiff] held a position as an employee, his tasks would be limited to those in his job classification."), *aff'd*, 755 F.3d 154 (2d Cir. 2014).

F.3d 830, 836 (7th Cir. 2017) (holding that cosmetology students were not employees where they received "licensing hours and academic credit for their time and effort").

Plaintiff's alleged receipt of two $5,000 stipends does not alter this analysis. The public employee context provides an analogy: there, Congress created an exemption to the FLSA's coverage for "any individual who volunteers to perform services for a public agency," if the individual receives no compensation, or the fee is nominal, not a substitute for compensation, and not tied to productivity. 29 U.S.C. § 203(e)(4)(A); 29 C.F.R. § 553.106(a) (volunteers may be paid "expenses, reasonable benefits, a nominal fee, or any combination thereof, for their service without losing their status as volunteers"); 29 C.F.R. § 553.106(e) (fee cannot be "a substitute for compensation and must not be tied to productivity"). The Department of Labor has defined a fee as "nominal" if it does not exceed 20% of what an employer "would otherwise pay to hire a coach or advisor for the same services." DOL Opinion Letter FLSA 2005-51, 2005 WL 3308622, at *3 (Nov. 10, 2005); *see also* DOL Opinion Letter FLSA2008-16, 2008 WL 5483056 (Dec. 18, 2008).

Again, *Purdham* offers a helpful comparison: The coach in *Purdham*, like Plaintiff, received a stipend for his work but remained a volunteer because the stipend was far less than that of a full-time employee, was not tied to hours coached, and the coach remained primarily motivated by his commitment to the game. 637 F.3d at 425, 429. Here, too, Plaintiff alleges he received only two $5,000 payments, not more than 20% of the $100,000 salary he claims a pitching coach would make. Compl. ¶¶ 45, 48, 56, 92.

### B. Plaintiff's Claim for Overtime Is Deficiently Pled.

Even if Plaintiff was an employee who could pursue a minimum-wage claim under the FLSA or IMWL, he has not adequately pleaded a claim for overtime.

The FLSA and IMWL require overtime wages for hours worked over 40 hours in a week.

To state a claim for failure to pay overtime, a plaintiff must "sufficiently allege forty hours of work in a given workweek as well as some uncompensated time in excess of forty hours." *Parks v. Speedy Title & Appraisal Review Servs.*, 318 F. Supp. 3d 1053, 1069 (N.D. Ill. 2018) (marks omitted). Plaintiff alleges in conclusory fashion that "Northwestern required him to work more than [40] hours per week," including on weekends, Compl. ¶ 83, but does not specify how many hours he actually worked each week in excess of 40 hours. In addition, if Plaintiff's allegations were true, his hours were not the same each week, as he purportedly took on "duties ... previously handled by [prior paid coaches]" as the season progressed. *Id*. ¶ 34. Yet he does not specify the extent to which his hours varied and in which weeks they purportedly exceeded 40.

Absent such allegations, the case law dictates dismissal of Plaintiff's claim for overtime. *See Parks*, 318 F. Supp. 3d at 1069 (dismissing FLSA claim where plaintiff generally alleged overtime hours but did not allege how many hours worked in a week or how many overtime hours she worked without being paid the proper salary); *Silver v. Townstone Fin., Inc.*, 2015 WL 1259507, at *1 (N.D. Ill. Mar. 17, 2015) (same); *Walker v. Walgreens Specialty Pharmacy LLC*, 2023 WL 5334609, at *16 (N.D. Ill Aug. 18, 2023) (dismissing FLSA claim for failure to allege with specificity "at least one workweek" in which the plaintiff worked more than 40 hours).

## II. This Court Should Dismiss Plaintiff's IWPCA Claim (Count III) Because He Had No Employment Agreement Entitling Him to the Amounts He Claims He Is Owed.

Plaintiff's claim that Northwestern violated the IWPCA by failing to pay him wages for services he performed fails for the same reasons as his IMWL and FLSA claims: The IWPCA protects only "employees," 820 ILCS 115/2, and Plaintiff was not an employee of Northwestern. *Cf. Brown v. BCG Att'y Search*, 2013 WL 6096932, at *3 (N.D. Ill. Nov. 20, 2013) (where plaintiff's FLSA claim failed, so did his IWPCA claim); *Palar v. Blackhawk Bancorporation, Inc.*,

2013 WL 5366124, at *7 (C.D. Ill. Sept. 25, 2013) (similar).

Even if he was an "employee," however, Plaintiff's IWPCA claim fails because he did not have a contract or agreement entitling him to the wages that he claims to be owed. The IWPCA defines "wages" narrowly, as "compensation owed an employee *by an employer pursuant to an employment contract or agreement* between the 2 parties." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016) (quoting 820 ILCS 115/2) (emphasis added). In Illinois, an agreement requires a "manifestation of mutual assent on the part of two or more persons." 56 Ill. Admin. Code 300.450; *see also Hoffman v. Roadlink Workforce Sols., LLC*, 2014 WL 3808938, at *4-5 (N.D. Ill. Aug. 1, 2014). Thus, "[a]bsent an agreement to pay the [p]laintiff[ ] a certain wage, the [p]laintiff['s] IWPCA claims cannot proceed." *Vann v. Dolly, Inc.*, 2020 WL 902831, at *4 (N.D. Ill. Feb. 25, 2020) (dismissing IWPCA claim because, while plaintiffs asserted the existence of an agreement, it "[did] not specify a certain agreed upon rate of pay").

Plaintiff's allegations establish he had no contract or agreement. By Plaintiff's own account, he began work as a volunteer coach without any agreement to be paid. Compl. ¶¶ 33-34, 38. After he allegedly took on additional responsibilities, he purportedly approached Foster and Northwestern about "receiving pay for the three jobs he was now performing," *id*. ¶ 39—reflecting that he had no agreement prior to that point. Velez allegedly told him they were "working it out," *id*. ¶ 40, and Northwestern allegedly later paid Plaintiff two $5,000 stipends, *id*. ¶¶ 45, 50-51. But neither Plaintiff's inquiry nor Northwestern's response reflects mutual assent to pay Plaintiff something *more*: He does not allege that any of the Northwestern Defendants promised him *additional* money. If anything, Plaintiff's alleged inquiry followed by the alleged payments reflects an implicit agreement that Plaintiff would only be paid the two $5,000 stipends he says he received. His IWPCA claim therefore must be dismissed.

**III.   If Plaintiff Was an Employee of Northwestern, this Court Should Dismiss His Tort Claims (Counts IV-VIII) As Barred by the IWCA.**

If Plaintiff was in fact an employee of Northwestern, as he claims, then his tort claims (Counts IV-VIII) should be dismissed pursuant to the IWCA's exclusivity provision, which bars employees from bringing any common law or statutory claims (1) for accidental injuries, (2) arising from and occurring in the course of employment, (3) that are compensable under the IWCA. 820 ILCS 305/15(a), 305/11; *Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chi.*, 104 F.3d 1004, 1016 (7th Cir. 1997). The IWCA also bars "employees from bringing common law actions against their employers based solely upon … respondeat superior." *Hunt-Golliday*, 104 F.3d at 1017.

Although the Act refers to "accidental injuries," 820 ILCS 305/11, "claims based upon negligence are preempted by the IWCA," *Santos v. Boeing Co.*, 2004 WL 1384724, at *6–7 (N.D. Ill. May 11, 2004). This is because "[c]laims for negligence are inherently claims for accidental injuries." *Phillips v. Exxon Mobil Corp.*, 2018 WL 3458286, at *4 (N.D. Ill. July 18, 2018). Thus, courts have held that claims for negligent hiring, negligent supervision, and willful and wanton negligence are preempted by the IWCA. *See, e.g.*, *id.* (dismissing negligent retention and supervision claims); *Doe v. La Magdalena II, Inc.*, 585 F. Supp. 2d 984, 986-87 (N.D. Ill. 2008) (same for willful and wanton negligence claim). Courts also treat the type of emotional injury claimed by Plaintiff as compensable under the IWCA. *See, e.g.*, *Phillips*, 2018 WL 3458286, at *3-4 (dismissing NIED and negligent retention and supervision claims); *Doe*, 585 F. Supp. 2d at 986-87 (dismissing negligence and willful and wanton claims).

Assuming Plaintiff was an employee of Northwestern, Counts IV through VII do not state a valid claim. Counts IV, V, VI, and VII allege that Plaintiff suffered a work-related emotional

injury resulting from an employer's or co-worker's negligence—claims clearly covered by the IWCA's exclusivity provision. Although not governed by a negligence standard, Plaintiff's IIED claim in Count VIII is also "accidental" under the IWCA, as pled, because he does not allege Northwestern "direct[ed] or expressly authorize[d]" the conduct that purportedly injured him. *See Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 463 (1990). Further, Plaintiff claims injury as a result of a workplace environment of toxicity, abuse, and harassment while working with the baseball program, establishing the requisite "causal connection" between the claimed injury and alleged employment. *Edwards v. Commonwealth Edison*, 2015 WL 6445417, at *5 (N.D. Ill. Oct. 23, 2015). Therefore, if Plaintiff is an employee as he claims to be, his exclusive remedy is under the IWCA.[7]

## IV. Even if Not Preempted, the Court Should Dismiss Plaintiff's Tort Claims (Counts IV-VIII).

### A. Plaintiff Does Not State a Claim for Negligent Hiring (Count IV) Against Northwestern.

A claim for negligent hiring requires that (1) the employee had a particular unfitness for the position so as to create a danger of harm to third persons; (2) such unfitness was or should have been known to the employer at the time the employee was hired; and (3) the unfitness proximately caused injury. *Van Horne v. Muller*, 185 Ill. 2d 299, 311 (1998). As the state court in *Beacom* reasoned in dismissing the other coaches' complaints against Northwestern based on the same

---

[7] Although the state court in *Beacom* dismissed all claims as improperly pled, it declined to dismiss the *Beacom* plaintiffs' tort claims on IWCA preemption grounds, citing the need for further factual development. *See* Ex. B at 5-7. But, as reflected in the numerous opinions dismissing state and federal tort claims as barred by the IWCA's exclusivity provision, *see supra* at 12, preemption is a question of law properly decided on the pleadings, comparing Plaintiff's allegations to what is compensable under the IWCA. Accordingly, dismissal is proper.

alleged set of facts, *see* Ex. B at 8; Ex. C, Plaintiff has not adequately pleaded facts establishing that Northwestern negligently hired Foster.

### 1. Plaintiff Does Not Sufficiently Allege Northwestern's Actual or Constructive Knowledge of Foster's Alleged Unfitness.

Plaintiff does not allege that Northwestern knew of any prior incident involving Foster that put it on notice of Foster's purported bullying and abuse of his coaching staff. Instead, Plaintiff's theory is that Northwestern should have "diligently vetted" Foster and that a "proper investigation" would have revealed that:

- certain unspecified and unsubstantiated "allegations of abuse and misconduct" were made against Foster while he was a coach at Army West Point, prior to being hired by Northwestern;

- there was a "celebratory Zoom" when he left that coaching position;

- a student of Foster's at West Point pitched when "[h]e wasn't feeling good" due to "pink eye, flu, or cold"; and

- while Foster was the head baseball coach at the University of Rhode Island ("URI"), a player died after a team workout.

Compl. ¶¶ 15, 103-108 & n.12.

Even assuming the relevance of the prior allegations (which Northwestern disputes), Plaintiff's theory fails as a matter of law. A negligent hiring claim cannot be based on a "general, common law duty to investigate employees, if such a duty even exists." *Warnell v. Ford Motor Co.*, 1998 WL 748328, at *3-4 (N.D. Ill. Oct. 22, 1998) (applying Illinois law); *see also Fallon v. Indian Trail Sch.*, 148 Ill. App. 3d 931, 935-36 (2d Dist. 1986) (affirming dismissal because "allegations that the school district failed to investigate" do not state a negligent hiring claim).

Here, Plaintiff's allegations are devoid of facts necessary to support his claim. He does not identify what information was supposedly "readily available," when, and what Northwestern

should have known at the time of hiring Foster. *See* Compl. ¶ 105. Plaintiff cites several online articles he says reflect Foster's alleged conduct while he was employed by West Point and URI (*see id.* at nn.8-13), but all but two were published *after* Foster was hired and thus do not reflect information available to Northwestern during the hiring process. The only two articles predating Foster's hiring did not put Northwestern on notice of any wrongful conduct. One is from 2016, and discusses the URI incident, but does not mention Foster and states that the player died from an unspecified medical emergency. *Id.* ¶ 108 n.12. The other, a 2018 story, is about a player who pitched in a tournament while "just getting over being sick" with strep throat. *Id.* ¶ 107 n.11. The article praises the player and in no way criticizes Foster. *Id.*

Based on these same alleged facts, the state court in *Beacom* concluded that the *Beacom* plaintiffs had not established that "a more proactive approach" by the Northwestern Defendants would have revealed Foster's alleged unfitness, or that the Northwestern "[D]efendant[s] had actual knowledge of any prior misconduct committed by Foster." Ex. B at 8. This Court should do the same here and, like the *Beacom* court, dismiss the negligent hiring claim.

### 2. Plaintiff Does Not Sufficiently Allege Foster's "Particular Unfitness" or that it Proximately Caused Injury.

Plaintiff also fails to sufficiently plead the "particular unfitness" or proximate cause elements of his negligent hiring claim. Under Illinois law, "it is not enough for the plaintiff to simply allege that the employee was generally unfit for employment." *Van Horne*, 185 Ill. 2d at 313. Rather, liability for negligent hiring arises only when a "*particular* unfitness of an employee gives rise to a particular danger of harm to third parties," and that particular unfitness "rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position." *Id.*; *see also* Ex. B at 8.

In *Van Horne*, the plaintiff brought a negligent hiring claim against a radio station whose disc jockey employee allegedly made defamatory statements about the plaintiff on-air. *Van Horne*, 185 Ill. 2d at 308-11. In support, the plaintiff alleged the disc jockey had a history of prior "outrageous and offensive" on-air conduct, including harassment of a local television host, broadcasting misinformation about tolls, and mocking the elderly. *Id.* at 314. The Illinois Supreme Court affirmed dismissal of the claim, concluding that the disc jockey's prior "outrageous conduct" was not similar enough to the alleged defamation to put his employer on notice of the possibility of defamatory conduct. *Id.* at 314-16. Likewise, in *Gress v. Lakhani Hospitality, Inc.*, 2018 IL App (1st) 170380 ¶¶ 1, 42-44, the court affirmed dismissal of a negligent hiring claim where a hotel employee had previously been arrested for solicitation and was presently accused of raping a hotel patron. Despite the subject-matter connection between the allegations (solicitation and rape), the court found the alleged rape was not foreseeable and the hotel was not negligent. *Id.* ¶¶ 42-44.

Here, Plaintiff claims injury to himself and student-players. Compl. ¶ 111. But Plaintiff has no right to assert claims based on the rights of or injuries to students. *See, e.g.*, *Barry v. City of Chi.*, 2021 IL App (1st) 200829 ¶ 43 (affirming dismissal of complaint and explaining that a "party must assert its own legal rights and interests, rather than ... a claim ... based upon the rights of third parties" (citation omitted)). Plaintiff also does not allege Foster required him to engage in conduct vis-à-vis the students he coached, such as forcing a player to play while sick, that caused Plaintiff injury.

Instead, Plaintiff's claimed injuries stem from Foster's purported mistreatment of Plaintiff himself. Specifically, Plaintiff alleges Foster cussed at, yelled at, and bullied him, which caused him discomfort and emotional harm. He then alleges that Northwestern should have anticipated this emotional abuse of Plaintiff because publicly-available articles published prior to Foster being

hired by Northwestern reported that, at Foster's prior schools, a student pitched a game while sick and another student died after practice due to an unspecified medical emergency.

In other words, Plaintiff's argument is that the conditions under which students practiced and played at Foster's prior schools should have put Northwestern on notice that Foster would bully and harass his *coaching staff* at Northwestern. This is baseless. Even if everything Plaintiff claims is true, there is no nexus between Plaintiff's current claim and the former allegations about players practicing and playing while ill. Not unlike the hotel in *Gress* that was not on notice of the possibility of a rape, or the radio station in *Van Horne* that was not on notice of possible defamatory statements, it is a far and unsupported leap from prior incidents involving player health to the conclusion that Northwestern knew or should have known Foster had any particular unfitness that might cause him to yell at and harass members of the baseball coaching staff—the conduct Plaintiff identifies as the source of his injury. Absent this nexus, Plaintiff's claim should be dismissed.

**B.      Plaintiff Does Not State a Claim for Negligent Supervision (Count V).**

Plaintiff's negligent supervision claim should be dismissed because Plaintiff does not plead facts sufficient to demonstrate: (1) the Northwestern Defendants had a duty to supervise Foster; (2) they negligently supervised Foster; and (3) their negligence caused Plaintiff's claimed injuries. *Herrera v. Di Meo Bros., Inc.*, 529 F. Supp. 3d 819, 832 (N.D. Ill. 2021); *see also* Ex. B at 9.

**1.      Plaintiff Does Not Sufficiently Allege Negligent Supervision or Proximate Cause.**

Plaintiff fails to sufficiently allege that the Northwestern Defendants were negligent in supervising Foster. Plaintiff alleges in conclusory fashion that Foster had a negative reputation and engaged in misconduct elsewhere but does not assert specific facts that establish what Northwestern or any individual defendant knew, should have known, or when they should have

known this unspecified information. Nor does Plaintiff allege anything that Northwestern or the individual defendants should have done differently—in the form of additional supervision or training of Foster, or otherwise—that could have prevented Plaintiff's alleged injuries. *See Watkins v. BNSF Ry. Co.*, 2022 WL 4386684, at *11 (N.D. Ill. Sept. 21, 2022) (dismissing Illinois negligent supervision claim where plaintiff did not specify what training, supervision, or monitoring should have been provided, making an inference of negligence unreasonable).

Indeed, as the *Beacom* court held, Northwestern's conduct, as pleaded, proves it was not negligent. *See* Ex. B at 10. Immediately following the HR complaint against Foster, Northwestern acted. Northwestern personnel, including Velez, met with Plaintiff to corroborate information provided by Beacom in the investigation. Compl. ¶ 20. Further, as reflected in the February 22, 2023 letter upon which Plaintiff relies, Northwestern investigated the complaint, including by conducting witness interviews and document review. Ex. A at 1; s*ee also* Ex. B at 10. It determined that Foster violated certain University policies, notified the complainants by letter, and shared the results of the investigation "with the leadership in Athletics & Recreation to take appropriate remedial action." Ex. A at 1. Plaintiff cannot demonstrate that Northwestern was negligent in its supervision when it thoroughly investigated Foster, identified policy violations, addressed those violations, conveyed those findings in writing, and took affirmative remedial steps. *See* Ex. B at 10 (dismissing negligent supervision claim because Northwestern "did investigate" and "promptly" took action).

Similarly, Plaintiff fails to adequately plead proximate cause. Proximate cause requires that Plaintiff's injuries be "generally foreseeable," such that a supervisor would be expected to take particular action to prevent the injuries from occurring. *See Glickman v. Main-Niles Ass'n of Special Recreation*, 440 F. Supp. 3d 946, 955 (N.D. Ill. 2020) (dismissing negligent supervision

claim where plaintiff failed to allege how supervision of employee fell short). Here, again, Plaintiff recites in conclusory fashion the proximate cause element, *see* Compl. ¶ 129, but pleads no facts that establish foreseeability, or what steps the Northwestern Defendants should have taken to prevent the alleged injuries. *Cf. Martin v. Siciliano*, 2023 WL 3320428, at *7 (N.D. Ill. May 9, 2023) (dismissing negligent supervision claim due to threadbare recital of proximate cause element).

### 2. Plaintiff Does Not Sufficiently Allege that Holland and Velez Had a Duty to Supervise Foster.

Plaintiff's claim should also be dismissed as to Holland and Velez because, as the *Beacom* court recognized, there is no indication that either of them had a duty to, or did in fact, supervise Foster. *See* Ex. B at 10. Plaintiff's only allegations regarding a duty to supervise are, again, threadbare recitals of the elements, which are wholly insufficient to survive a motion to dismiss. Compl. ¶ 122. *See Twombly*, 550 U.S. at 545 (conclusions of law or fact do not survive dismissal); *Iqbal v. Zafar*, 2013 WL 5587082, at *3 (N.D. Ill. Oct. 9, 2013) ("Plaintiffs fail to allege any facts beyond the formulaic recitation of the elements of a negligence claim."). Plaintiff is required to plead specific facts that, if true, establish a supervisory role. *See, e.g.*, *Carmona v. 4-Bros. Transp. LLC*, 2024 WL 1767572, at *3 (N.D. Ill. Apr. 24, 2024) (denying leave to amend negligent supervision claim where the "allegations offer[ed] only conclusory assertions that [defendants] had a duty to supervise" the individual in question).

Plaintiff's allegations fall well short of this standard. He does not allege that Velez or Holland had authority to hire, fire, promote, reassign, or take other tangible employment action against Foster. To the contrary, Holland is the Deputy Director of Athletics (Chief of Staff), not Foster's supervisor. Compl. ¶ 9. Velez works in HR and is not alleged to have had any supervisory

role related to Foster or the baseball team more generally. *Id.* ¶ 10. As the court did in *Beacom*, this Court should dismiss the negligent supervision claims against Holland and Velez. Ex. B at 10.

### C. Plaintiff Does Not State a Claim for Willful and Wanton Negligence (Count VII).

Plaintiff's willful and wanton negligence claim is also insufficiently pled. *See* Ex. B at 10.

#### 1. Plaintiff Does Not Sufficiently Allege Willful and Wanton Conduct as Required to Sustain His Claim.

Plaintiff makes the conclusory claim in Count VII that Defendants engaged in "willful and wanton conduct" but, like the *Beacom* plaintiffs, fails to allege any conduct meeting that standard. *See* Ex. B at 10 (finding Plaintiffs "have not sufficiently pled ... willful or wanton conduct"). Willful and wanton conduct is an aggrieved form of negligence that "shock[s] the conscience." *See, e.g.*, *Pryor v. Chi. Transit Auth.*, 2022 IL App (1st) 200895, ¶ 42. At minimum, it requires a plaintiff to plead facts demonstrating a "reckless disregard" for Plaintiff's safety that Defendants knew or should have known exposed Plaintiff to a high risk of serious injury. *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 242 Ill. App. 3d 707, 714-15 (4th Dist. 1993). The injury must constitute threatened or actual "serious physical harm to others." *Id.* at 715; *see also Barr v. Cunningham*, 2017 IL 120751, ¶¶ 20-21 (summarizing cases involving risk of harm). And the employer's conduct must be more than negligent: The employer must have understood and disregarded the danger. *Campbell*, 242 Ill. App. 3d at 716 (dismissing claim where "Plaintiffs failed to allege sufficient facts" to "support an action for [willful] and wanton misconduct since, under these allegations, defendants could have been merely careless and not in disregard of a known danger").

Plaintiff pleads no facts from which one can conclude Northwestern, Holland, or Velez consciously or recklessly disregarded Plaintiff's physical safety, or knew or should have known they were exposing Plaintiff to a risk of serious physical injury. Plaintiff claims these defendants

allegedly disregarded the toxicity of the workplace, including Foster's "cursing[] and yelling" and "insensitive language," and then makes a vague reference to staff and student "safety." Compl. ¶ 142(a)-(d). But Plaintiff alleges no facts that, if true, would establish a risk of *physical* injury to himself at all, much less serious physical injury. The only reference to physical injury in the complaint is in the context of players being required to play while sick; but, again, Plaintiff cannot assert claims on behalf of third parties. *Barry*, 2021 IL App (1st) 200829, ¶ 43.

### 2. Plaintiff Does Not Allege the Individual Defendants Owed Him a Duty.

Plaintiff's negligence claim also should be dismissed as to Holland and Velez because Plaintiff fails to plead facts demonstrating either of these individuals—who were not Plaintiff's employers—owed Plaintiff a duty of care. *Cf.* Ex. B at 10 (concluding that "Plaintiffs have not sufficiently pled a duty owed" by Holland or Velez). Plaintiff alleges in a conclusory fashion that these defendants owed him a duty to provide a "safe, non-toxic work environment." Compl. ¶ 140. But he pleads no facts that, if true, would establish any such duty. These defendants were not Plaintiff's employers and did not control Plaintiff's work environment. Nor does Plaintiff plead facts sufficient to establish that either of these defendants had a general duty to ensure Plaintiff enjoyed a "safe, non-toxic work environment." *Id*. Plaintiff does not allege that Velez or Holland were involved in Foster's hiring or were responsible for Plaintiff's work environment. As discussed above, they did not supervise Foster. For this separate reason, Count VII should be dismissed.

**D.      Plaintiff Does Not State a Claim for NIED (Count VI).**

The Court should also, as in *Beacom*, dismiss Plaintiff's NIED claim. An NIED claim requires that: (1) the Northwestern Defendants owed Plaintiff a duty of care; (2) they breached the duty; (3) the breach was the proximate cause of Plaintiff's injuries; and (4) contemporaneous physical injury or impact resulted. *Schweihs v. Chase Home Fin.., LLC*, 2016 IL 120041 ¶¶ 31-38; Ex. B at 10. Like the plaintiffs in *Beacom*, Plaintiff does not plead that he suffered a contemporaneous physical injury or impact, or that Holland or Velez owed him a duty. *See* Ex. B at 11.

**1.      Plaintiff Does Not Sufficiently Allege a Contemporaneous Physical Injury or Impact.**

The "contemporaneous physical injury or impact" element of an NIED claim requires a plaintiff to plead either a physical act on them that caused them contemporaneous injury or impact (the "direct victim" theory), or a physical act that injured someone in such close proximity to the plaintiff that the plaintiff also faced a high risk of contemporaneous physical injury or impact (the "bystander" theory). *Schweihs*, 2016 IL 120041 ¶¶ 31-38. The injury or impact must be physical, not mental: Allegations that a plaintiff suffered emotional distress—even severe distress—is insufficient to state a claim in the absence of an allegedly contemporaneous physical injury or impact. *See Benton v. Little League Baseball, Inc.*, 2020 IL App (1st) 190549 ¶¶ 79-81 (affirming dismissal of NIED claim where plaintiffs alleged severe distress but not physical impact); *Leonard v. Kurtz*, 234 Ill. App. 3d 553, 555-56 (3d Dist. 1992) (same).

*Schweihs* is instructive. There, the plaintiff allegedly suffered extreme emotional distress after two men forcefully entered her home, causing her to fear for her safety. 2016 IL 120041 ¶¶ 13-16. The plaintiff alleged the incident made her "afraid while in her home" and resulted in

her seeking "treatment, therapy, and medication ... for issues with sleeping, post-traumatic stress, anxiety, and depression." *Id.* ¶ 16. The trial court nonetheless dismissed the NIED claim for failure to plead any contemporaneous physical impact, and the Illinois Supreme Court affirmed. *Id.* ¶ 44.

Plaintiff here likewise alleges no contemporaneous physical injury or impact on him or anyone else, instead claiming he was exposed to verbal abuse, that he sought mental health resources, and that he was injured in the form of "severe and extensive emotional distress." Compl. ¶¶ 4, 136. None of these alleged injuries constitute a contemporaneous physical impact as needed to state a valid NIED claim. *Cf.* Ex. B at 11 ("Plaintiffs' complaint is a recitation of what is not covered by the tort."). The Court therefore should dismiss the NIED claim against all defendants.

### 2.     Plaintiff Does Not Sufficiently Allege a Duty of Care.

Plaintiff's NIED claim separately fails against Holland and Velez because Plaintiff fails to plead facts demonstrating either of these individuals owed Plaintiff a duty of care. Plaintiff's only allegation speaking to this element is a conclusory recitation thereof, *see* Compl. ¶ 132, which, as explained above in the context of Plaintiff's other claims, is insufficient. *See Carmona*, 2024 WL 1767572, at *3; *Ruff v. Han*, 2023 WL 4351889, at *4 (N.D. Ill. July 5, 2023) (dismissing NEID claim where plaintiff "[did] not attempt to explain what duty [defendants] owed her").

### E.     Plaintiff Does Not State a Claim for IIED (Count VIII).

To state a valid IIED claim, Plaintiff must plead facts that, if true, establish: (1) extreme and outrageous conduct; (2) by a person who intended his conduct would cause severe emotional distress or knew of a high probability his conduct would cause such distress; and (3) that, in fact, caused severe emotional distress. *Schweihs*, 2016 IL 120041 ¶ 50; *see also* Ex. B at 11-12. As in *Beacom*, Plaintiff's allegations fall well short of these requirements. *See* Ex. B.at 12 (concluding that Plaintiffs' allegations "do not approach the pleading requirements for IIED").

First, Plaintiff fails to plausibly plead that Foster's conduct was "extreme and outrageous." This requires more than "mere insults, indignities, threats, annoyances, petty oppressions or trivialities." *Pub. Fin. Corp. v. Davis*, 66 Ill. 2d 85, 89-90 (1976). The conduct must be so extreme "as to go beyond all possible bounds of decency" and be "utterly intolerable in a civilized community." *Schweihs*, 2016 IL 120041 ¶ 51.

The conduct Foster allegedly directed at Plaintiff—yelling, cursing, speaking badly behind his back, and requesting that other staff members violate unspecified NCAA rules and regulations (Compl. ¶ 148)[8]—falls well short of this standard. *See* Ex. B at 12. It is not the type of conduct that "no reasonable man could be expected to endure." *Tabora v. Gottlieb Memorial Hosp.*, 279 Ill. App. 3d 108, 119-20 (1st Dist. 1996) (affirming dismissal of IIED claim where plaintiff alleged his supervisor made false claims about him, berated him in front of staff, and harassed and intimidated him for years); *Miller v. Equitable Life Assurance Soc'y of the U.S.*, 181 Ill. App. 3d 954, 955-56 (1st Dist. 1989) (affirming dismissal of IIED claim where plaintiff alleged her coworkers and supervisors yelled at, threatened, and insulted her, and refused necessary police assistance); *Layne v. Builders Plumbing Supply Co.*, 210 Ill. App. 3d 966, 972-73 (2d Dist. 1991) (affirming dismissal of IIED claim where plaintiff alleged employer made false report to police).

Second, Plaintiff fails to plead Foster intended his conduct to cause severe emotional distress or knew there was a high probability his conduct would cause such distress. Plaintiff does no more than merely recite the knowledge element, with no supporting facts. Compl. ¶ 149.

---

[8] As discussed above, Plaintiff's allegations related to Foster's conduct toward third parties (*see, e.g.*, Compl. ¶¶ 17-18) should be disregarded. *See, e.g.*, *Barry*, 2021 IL App (1st) 200829 ¶ 43. But even if the Court were to consider all alleged conduct, the allegations do not demonstrate extreme and outrageous conduct as a matter of law.

Third, Plaintiff fails to plausibly allege his emotional distress was "severe." Illinois law requires a plaintiff to plead specific, detailed facts from which extreme severity can be inferred. *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 155 (1st Dist. 1999). General allegations that a plaintiff "suffered anxiety, humiliation, and extreme and severe emotional distress" do not state a claim. *Id.* at 155-56 (marks omitted). Plaintiff's allegations again are far short of the legal standard. Plaintiff alleges he suffered severe distress but offers no facts to support that conclusion. The few facts he does plead—for example, that he requested help in getting a therapist, Compl. ¶ 150—do not establish severe distress under Illinois law. *Welsh*, 306 Ill. App. 3d at 155-56.

### F.     Northwestern Is Not Liable Based on *Respondeat Superior* (Count IX).

Plaintiff seeks to hold Northwestern liable on a *respondeat superior* theory for his claims against Foster (negligence and IIED) but can only do so if he has sufficiently pleaded those underlying claims. *Turner v. M.B. Fin. Bank*, 2017 WL 4390367, at *6 (N.D. Ill. Oct. 3, 2017); Ex. B at 13. As explained above, Plaintiff has not sufficiently pleaded those claims and thus the *respondeat superior* claim should be dismissed. *See also Ruff v. Han*, 2022 WL 767219, at *8 (N.D. Ill. Mar. 14, 2022) (no basis for employer vicarious liability where tort claims dismissed).

## CONCLUSION

For the reasons stated herein, the Northwestern Defendants respectfully request that Plaintiff's Complaint be dismissed. Because Plaintiff's claims are defective and cannot be revived, the dismissal should be with prejudice.

Dated: May 10, 2024                          Respectfully submitted,

                                                  NORTHWESTERN UNIVERSITY,
MONIQUE HOLLAND, AND
RACHELVELEZ

By: /s/ Reid J. Schar
One of their attorneys

Reid J. Schar
Nicole A. Allen
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654
Phone: (312) 222-9350
rschar@jenner.com
nallen@jenner.com

## CERTIFICATE OF SERVICE

I, Reid J. Schar, an attorney, hereby certify that on May 10, 2024, I caused a true and correct copy of the foregoing Memorandum of Law to be served via email on:

Christopher J. Esbrook
David F. Pustilnik
Esbrook P.C.
321 N. Clark St., Suite 1930
Chicago, IL 60654
Phone: (312) 319-7680
Counsel for Plaintiff

James M. Kelly
Jay L. Cohen
James Kelly Law Firm, P.C.
7817 N. Knoxville Ave.
Peoria, IL 61614
Phone: (309) 679-0919
Counsel for James Foster

/s/ Reid J. Schar