**EXHIBIT B**

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
# COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| CHRISTOPHER M. BEACOM, MICHAEL, DUSTIN NAPOLEON, and JONATHAN R. STRAUSS, <br><br> Plaintiffs, <br> v. <br><br> NORTHWESTERN UNIVERSITY, DERRICK GRAGG, JAMES THOMAS FOSTER, MONIQUE HOLLAND, and RACHEL VELEZ <br><br> Defendants. | No. 2023 L 008072 <br><br> Judge Daniel J. Kubasiak <br><br> Commercial Calendar T |

## OPINION

This cause is before the court on Defendants Northwestern University ("NU"), Derrick Gragg ("Gragg"), Monique Holland ("Holland"), and Rachel Velez's ("Velez") (collectively "Defendants") Motion to Dismiss.

The court reviewed the pleading and the arguments made by the parties. Upon doing so, the court grants in part and denies in part Defendants' Motion to Dismiss as set forth herein.

## BACKGROUND

The following allegations are contained in the Complaint. In June 2022, Northwestern University ("NU") hired James Thomas Foster ("Foster") as NU's head baseball coach. Foster was recruited to NU from Army West Point after six years there. Plaintiffs Christopher M. Beacom ("Beacom"), Michael Dustin Napoleon ("Napoleon"), and Jonathan R. Strauss ("Strauss") (collectively "Plaintiffs") allege that NU hired Foster despite his departure from Army West Point being for allegations of abuse and misconduct made by student-athletes. Plaintiffs allege that from the beginning of Foster's tenure at NU, they were subject to abuse and bullying from Foster.

In October 2022, Plaintiffs began the process of formally reporting Foster's behavior to NU administration. NU assigned Mark Wesoloski ("Wesoloski") as the baseball team's "sport administrator." Plaintiffs allege that they went to James Blais ("Blais"), Deputy Director of Athletics for NU, and Maria Sanchez ("Sanchez"), Chief Diversity and Inclusion Officer with complaints about Foster. Plaintiffs allege that Blais and Sanchez were horrified by the allegations and gave Plaintiffs the process for filing a formal complaint through NU Human Resources ("HR").

On November 30, 2022, Plaintiffs submitted a complaint to HR that included allegations of toxic work environment, Foster discouraging players from seeking medical treatment, and Foster's derogatory and sexist comments regarding the female student

manager. Plaintiffs allege that HR did not communicate with them regarding their complaint until January 2023.

In January 2023, HR interviewed each plaintiff separately. Plaintiffs allege that Foster's toxicity escalated and when they reached out for support they were ignored or told to trust NU's process. Plaintiffs allege that NU only interviewed Plaintiffs, the trainer, and a volunteer coach rather than conduct a thorough and wide-ranging investigation. Plaintiffs allege that HR did not interview a single student athlete or medical professional regarding Plaintiffs' complaints. Plaintiffs allege that despite the investigation conducted by Rachel Velez ("Velez") and Tracy Marquette Gioria-Walker ("Walker"), they continued to face toxicity and abuse from Foster and the administration on several occasions. Although Plaintiffs take exception with the time NU took to conduct its investigation, Plaintiffs do acknowledge that shortly after the January interviews NU confirmed their claims.

In mid-February 2023, Velez sent an email to Plaintiffs stating that there was enough evidence to substantiate several of the claims and that Plaintiffs would receive a formal letter addressing the investigation. Plaintiffs allege that Holland attended the baseball team's first game, but then left after the first game allowing "all hell to break loose." (Plaintiffs do not elaborate on that description of "hell.") Plaintiffs allege that Foster publicly yelled at Strauss and revoked his authority to make decisions regarding pitchers even though he was the pitching coach. Plaintiffs do not allege that Foster was without authority to make pitching decisions.

In mid- February 2023, NU provided a letter to Plaintiffs stating that there was sufficient evidence to substantiate their claims. Plaintiffs allege that on that same day, Derrick Gragg ("Gragg"), NU's Director of Athletics, confirmed that none of the three Plaintiffs would be returning NU's baseball program and that NU was in the process of hiring new coaches. The email went on to suggest a mediation to establish cohesion in the baseball program despite the fact that Plaintiffs were not going to continue with the program. Plaintiffs declined to participate in mediation. Plaintiffs allege that they were forced to become remote special contract workers to receive pay for the remainder of their contracts, while Foster remained as head coach. Plaintiffs allege that NU endorsed Foster's outrageous behavior for the 2022-2023 season, but then terminated Foster on July 13, 2023, three days after the highly publicized termination of football coach Patrick Fitzgerald.

The Court has considered Plaintiffs' complaint and the pending motion within the context of the relevant time frame and sequence of events. The Court considers the adverse actions Plaintiffs allege that establish their course of action, and does not weigh arguments that Plaintiffs attempt to advance for others who are not party to this matter. This is a workplace action involving an employer, a supervisor, and three employees. That is the context that the Court will address this matter.

Foster states that Plaintiffs were already in place when he was hired as head baseball coach. When Plaintiffs were hired may or may not be an issue as this matter proceeds, but it does not influence the Court's consideration of the arguments addressed herein. The Plaintiffs' employment agreements attached to the motion show that Strauss was hired on August 5, 2022 as an assistant baseball coach, and Beacom as Director of

Operations for NU baseball, and Napoleon as an assistant baseball coach were hired on August 22, 2022. All three contracts expired on June 30, 2023.

In general terms, Plaintiffs allege that they were subject to verbal abuse and bullying by Foster from the very beginning of his tenure and that NU protected him.

The Complaint alleges breach of contract against NU (Count I), negligent hiring against NU and Gragg (Count II), negligent supervision against NU, Gragg, Holland, and Velez (Count III), negligence (willful and wanton) against Defendants (Count IV), negligent infliction of emotional distress against Defendants (Count V), intentional infliction of emotional distress against Foster (Count VI), *respondeat superior* (Count VII).

## STANDARD OF LAW

Pursuant to 735 ILCS 5/2-619.1, a party may file together a section 2-615 motion to dismiss, section 2-619 motion to dismiss, and 2-1005 motion for summary judgment. 735 ILCS 5/2-619.1; *Edelman v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164, (1st Dist. 2003). On a 2-619.1 motion, a court should entertain the section 2-615 motion first; the section 2-619 motion with affidavits filed in support should be brought only after a legally sufficient cause of action has been found. *Johannesen v. Eddins*, 2011 IL App (2d) 110108 ¶29.

In a 2-615 motion to dismiss, the movant challenges the legal sufficiency of the complaint or counterclaim based on certain defects or defenses apparent on the face of the allegations. *Beacham v. Walker*, 231 Ill. 2d 51, 57 (2008). In such a motion, all well-pled facts and their reasonable inferences must be taken as true and viewed in the light most favorable to the non-movant. *Jarvis v. S. Oak Dodge*, 201 Ill. 2d 81, 85 (2002). Illinois is a fact pleading jurisdiction; therefore, "a [claimant] must allege facts sufficient to bring a claim within a legally recognized cause of action." *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 355 (2004). Mere conclusions of law and unsupported conclusory factual allegations are insufficient to survive a 2-615 motion to dismiss. *Alpha Sch. Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 736 (1st Dist. 2009).

A section 2-619 motion to dismiss raises defects, defenses, or other affirmative matters that appear on the face of the complaint, or are established by external submissions, that defeat the plaintiff's claim. *Ball v. County of Cook*, 385 Ill. App. 3d 103, 107 (1st Dist. 2008). In doing so, the motion "admits the legal sufficiency of the [claimant's] allegations." *Miner v. Fashion Enters*, 342 Ill. App. 3d 405, 413 (1st Dist. 2003). The "affirmative matter" must be apparent on the face of the pleadings or be supported by affidavits or other evidentiary materials. *John Doe v. Univ. of Chi. Med. Ctr.*, 2015 IL App (1st) 133735, ¶ 37. An affirmative matter negates a cause of action completely or refutes crucial conclusions of law or material fact within the pleadings. *In re Estate of Schleker*, 209 Ill. 2d 456, 461 (2004). A court must take all well-pled facts and reasonable inferences as true, and it must construe all pleadings and supporting documents in the light most favorable to the non-movant. *Porter v. Decatur Mem. Hosp.*, 227 Ill. 2d 343, 353 (2008).

Although Illinois is a fact-pleading jurisdiction, Plaintiffs are required to allege only ultimate facts necessary to state a cause of action and are not required to set out all of the evidence. *People ex rel. Fabner v. Carriage Way West, Inc.*, 88 Ill. 2d 300, 308 (1981).

The purpose of a section 2-619 motion is to provide a means to dispose of issues of law or of easily proved issues of fact, with a reservation of jury trial as to disputed questions of fact. *Bloomingdale State Bank v. Woodland Sales Co.*, 186 Ill. App. 3d 227, 232 (2nd Dist. 1989).

## DISCUSSION

### *Breach of Contract (Count I)*

NU seeks to dismiss Count I under Sections 2-619 and 2-615 by arguing that NU's Employee Handbook is not a contract and that Plaintiffs fail to state a cause of action. NU argues that the only valid contract between NU and Plaintiffs were their respective employment contracts. NU argues that Plaintiffs do not allege that any of the Defendants breached these agreements and Plaintiffs do not contest the fact that they were paid their salaries and benefits due to them under those agreements. NU argues that an employee handbook may create contract rights if it is disseminated to the employee, the employee believes it is an offer, the employee is aware of the handbook, and the employee accepts the offer. NU argues that the Employee Handbook contains a clear disclaimer that it promises nothing and does not act as a contract. In addition, NU argues that the cross references to the handbook in Plaintiffs' employment agreements do not negate the disclaimer. NU argues that Plaintiffs do not claim the handbook was disseminated to them, that they ever saw or read the handbook, or that they relied upon its terms.

To state a claim for breach of contract, a plaintiff must show: (1) the existence of a valid and enforceable contract, (2) performance by the plaintiff, (3) a breach of the subject contract by the defendant, and (4) that the defendant's breach resulted in damages. *Unterschuetz v. City of* Chi., 346 Ill. App. 3d 65, 69 (1st Dist. 2004). Plaintiff's pleadings must also allege facts sufficient to indicate the terms of the contract claimed to have been breached. *See Id.* A complaint which merely alleges that the parties entered into or approved a contract states a legal conclusion and is insufficient. *Kraft Chem. Co. v. Ill. Bell Tel. Co.*, 240 Ill. App. 3d 192, 198 (1st Dist. 1992). Terms such as "offered," "accepted," and "breached" suggest legal conclusions. *Talbert v. Home Sav. Bank of Am., F.A.*, 265 Ill. App. 3d 376, 380 (1st Dist. 1994).

Plaintiffs maintain that the Employee Handbook did create contract rights. Plaintiffs maintain that Illinois courts have long held that disclaimers, such as the one in NU's Employee Handbook, are not effective in negating contract rights established by the handbook. Plaintiffs maintain that the disclaimer was not titled disclaimer nor was it printed in capital letters or bolded to make it conspicuous. Plaintiffs maintain that the disclaimer is buried within the extensive handbook and that the handbook is publicly available online. Lastly, Plaintiffs maintain that NU's breach has injured them by forcing them to become special remote contractors.

The Court finds that the Employee Handbook contains a clear disclaimer in the first section of the handbook and the employment contract contains an integration clause. The Court finds that the disclaimer's title is bolded and the pertinent language is bolded as well. The Court also agrees with NU that the Complaint fails to allege any breach of the employment agreements or allege that Plaintiffs are owed outstanding amounts. The Court also finds that Plaintiffs have failed to adequately plead a breach of the contract and damages.

As such, the Court grants Defendants' motion to dismiss Count I without prejudice. Plaintiffs may replead if they can address the Court's findings.

*Negligence Based Claims (Counts II-V) and*
*Intentional Infliction of Emotional Distress (Count VI)*

Defendants seek to dismiss Counts II to VI by arguing that these claims are preempted/barred by the Illinois Workers' Compensation Act ("IWCA"). Defendants argue that the IWCA's exclusivity provision bars employees from bringing statutory claims for accidental injuries arising from and occurring during their course of employment, that can be compensable under the Act. Defendants argue that the IWCA also bars employees from bringing common law claims based upon *respondeat superior*. Defendants argue that Plaintiffs have pled themselves out of Counts II to VI. Defendants argue that Illinois courts have determined that negligent hiring, negligent supervision, and negligence claims are all barred by the IWCA.

Plaintiffs maintain that the IWCA does not bar Counts II-VI. Plaintiffs maintain that Foster's conduct was encouraged and authorized by NU and its administrative staff, therefore making it not accidental. Plaintiffs further maintain that as leader of the NU baseball program, Foster was the alter ego of NU and that fact bars NU from asserting any defenses that Plaintiffs' injuries were accidental. Plaintiffs also maintain that the IWCA cannot compensate them for the injuries sustained as a direct result of Defendants' actions as their association with Foster's baseball program will likely hinder their ability to find another job in another baseball program.

Additionally, Plaintiffs maintain that they need not make any allegations that NU directed or expressly authorized Foster's conduct, but are only required to allege that the individual defendants are alter egos of NU. Plaintiffs maintain that Foster was given complete control over and was entirely responsible for NU's baseball program, thereby making him NU'S alter ego as the Court in *Toothman* found was required to prove these allegations at the pleading stage. Further, Plaintiffs maintain that NU allowed a lackluster investigation to drag on for months and in light of their repeated complaints, NU cannot suggest in good faith that it did not know that Foster's conduct was going to result in severe emotional distress.

Foster argues that the Illinois Workers Compensation Act's ("IWCA") exclusivity provisions for injuries suffered during the course of employment precludes Plaintiffs' claims. Foster argues that the Court cannot determine whether the IWCA can compensate Plaintiffs' claims as that determination can only be made by the Commission. Foster

maintains that there are no amendments that could be made to rectify these deficiencies. Further, Foster maintains that he does not owe Plaintiffs any type of duty.

The Court first looks to *Pathfinder Co. v. Industrial Com.* for guidance. In *Pathfinder* the Illinois Supreme Court found that an act is considered accidental if the injury is caused by something that is without design or was unforeseeable. *Pathfinder Co. v. Industrial Com.*, 62 Ill. 2d 556, 563 (1976). Because injuries intentionally inflicted by a co-worker are accidental from the employer's point of view, the employer has a right to consider that the injured employee's sole remedy against the employer will be under the IWCA. *Hunt-Golliday v. Metropolitan Water Reclamation Dist.*, 104 F.3d 1004, 1016 *citing Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 463-464 (1990). The exclusivity provisions will not bar a common law cause of action against an employer, however, for injuries which the employer or its alter ego intentionally inflicts upon an employee or which were commanded or expressly authorized by the employer. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 464 (1990).

The Act's exclusivity provisions bar employees from bringing common law actions against their employers based solely upon the *respondeat superior* doctrine. *Hunt-Golliday v. Metropolitan Water Reclamation Dist.*, 104 F.3d 1004, 1017 *citing Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 465 (1990).

To state a legally sufficient claim of negligence, the complaint must allege facts establishing the existence of a duty of care owed by the defendants to the plaintiffs, a breach of that duty, and an injury proximately caused by that breach. *Iseberg v. Gross*, 227 Ill. 2d 78, 87 (2007), citing *Bajwa v. Metro. Life Ins. Co.*, 208 Ill. 2d 414, 421 (2004); *Hills v. Bridgeview Little League Ass'n*, 195 Ill. 2d 210, 228, 745 N.E.2d 1166, 253 Ill. Dec. 632 (2000). Whether a duty is owed is a question of law for the court to decide, while breach and proximate cause are factual matters for the jury. *Id.*, citing *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43-44, 809 N.E.2d 1248, 284 Ill. Dec. 302 (2004); *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 340, 798 N.E.2d 724, 278 Ill. Dec. 340 (2003); *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 525, 513 N.E.2d 387, 111 Ill. Dec. 944 (1987); *Pelham v. Griesheimer*, 92 Ill. 2d 13, 440 N.E.2d 96, 64 Ill. Dec. 544 (1982). These sections bar an employee from bringing a common law cause of action against his or her employer unless the employee-plaintiff proves: (1) that the injury was not accidental; (2) that the injury did not arise from his or her employment; (3) that the injury was not received during the course of employment; or (4) that the injury was not compensable under the Act. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 463

The pleading requirements for negligent infliction of emotional distress include: (1) the existence of a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury proximately caused by that breach. *See Brackett v. Galesburg Clinic Ass'n*, 293 Ill. App. 3d 867, 872 (3rd Dist. 1997), *citing Corgan v. Muehling*, 143 Ill. 2d 296, 306 (1991). "To state a cause of action for the tort of negligent infliction of emotional distress, a plaintiff must allege that the infliction of emotional distress arose out of the *negligent* acts of a defendant." *Id.* "Where the purported emotional distress has been caused by *intentional* acts committed by a defendant, the plaintiff does not state a cause of action for *negligent* infliction of emotional distress." *Id.*

The Court notes that Plaintiffs maintain similar arguments as presented in their response in opposition to the other Defendants' motion to dismiss. The Court finds that questions still exist as to the application of the IWCA and it would be a premature determination to dismiss this matter pursuant to the IWCA. Foster may renew the same as an affirmative defense or reassert these arguments in a motion as discovery unfolds. The Court finds that to summarily dismiss this matter pursuant to the IWCA would create far reaching consequences beyond this matter.

As to the matter regarding whether Plaintiffs' claims are compensable the Court looks to *McDonald v. Symphony Bronzeville Park, LLC*, 2022 IL 126511. As to whether the injuries asserted by Plaintiffs are compensable under the IWCA, the Court looks to *McDonald v. Symphony Bronzeville Park, LLC*, 2022 IL 126511. In *McDonald* the Illinois Supreme Court found that an injury is compensable under the IWCA when there was a "harmful change in the human organism- not just its bones and muscles, but its brain and nerves as well." *McDonald v. Symphony Bronzeville Park, LLC*, 2022 IL 126511, P42. "[T]he purpose of the Workmen's Compensation Act is to afford employees financial protection when their earning power is temporarily diminished or terminated due to employment injuries." *McDonald v. Symphony Bronzeville Park, LLC*, 2022 IL 126511, P42; see also *Laffoon v. Bell & Zoller Coal Co.*, 65 Ill. 2d 437, 446 (1976).

As such, the Court denies Defendants Section 2-619 motion to dismiss.

*Section 2-615*

*Negligent Hiring (Count II)*

NU and Gragg seek to dismiss Count II by arguing that Plaintiffs' allegations fail to state a claim for negligent hiring. NU and Gragg argue that nowhere in the Complaint do Plaintiffs allege that NU or Gragg specifically knew of any prior incident involving Foster that put them on notice of Foster's purported bullying and abuse of his coaching staff. NU and Gragg argue that a negligent hiring claim cannot be based on a general, common law duty to investigate employees, even if such a duty exists. NU and Gragg argue that Plaintiffs' allegations are devoid of any facts supporting the claim that information regarding Foster at the time he was hired was readily accessible to NU and Gragg. NU and Gragg argue that the two articles referenced by Plaintiffs do not contain any information that would have put them on notice of potential issues coming with hiring Foster.

In addition, NU and Gragg argue that Plaintiffs fail to sufficiently plead Foster's particular unfitness. NU and Gragg argue that it is not enough for a plaintiff to simply allege that the employee was generally unfit for employment. NU and Gragg argue that Plaintiffs allegations stem from Foster's purported mistreatment of Plaintiffs themselves, specifically that Foster cussed at them, yelled, and bullied them which caused emotional distress and harm. NU and Gragg argue that Plaintiffs allege that NU and Gragg should have anticipated this because of publicly available articles, but that there is no nexus between Plaintiffs' allegations and former players complaining of playing while sick under Foster's previous coaching.

In Illinois, to establish a cause of action for negligent hiring, the Plaintiff must establish that (1) the employer knew or should have known that the party hired had a particular unfitness for the job that would create a foreseeable danger to others; and (2) this particular unfitness was the proximate cause of the plaintiff's injury. *Strickland v. Communications and Cable of Chicago, Inc.* 304 Ill.App.3d 679, 682 (1st Dist. 1999).

Plaintiffs maintain that they adequately pled that NU and Gragg had actual or constructive knowledge regarding Foster's particular unfitness for the head coaching position. Plaintiffs maintain that they alleged that a proper investigation and vetting of Foster would have revealed his established reputation as a bully. Plaintiffs maintain that they adequately pled Foster's particular unfitness proximately caused their damages. Plaintiffs maintain that Foster faced allegations of abuse and bullying while at Army West Point, which establish a nexus connection between prior action and the complained of action in this matter. Plaintiffs maintain that they suffered and will continue to suffer the effects of Foster's behavior.

The Court finds that Plaintiffs have not adequately pled facts alleging that had NU and Gragg taken a more proactive approach Foster's prior conduct would have been revealed. The Court finds that none of the allegations demonstrate that NU or any other defendant had actual knowledge of any prior misconduct committed by Foster.

As such, the Court grants Defendants' motion to dismiss Count II pursuant to Section 2-615 without prejudice.

*Negligent Supervision and Negligence (Willful and Wanton) (Counts III and IV)*

Defendants seek to dismiss Counts III and IV under Section 2-615 by arguing that Plaintiffs make conclusory claims that Defendants engaged in willful and wanton conduct. Defendants argue that willful and wanton conduct is conduct that shocks the conscience and Plaintiffs must plead facts demonstrating that Defendants had a reckless disregard for Plaintiffs' safety or that Defendants knew or should have known their actions would expose Plaintiffs to serious injury. Defendants argue that the injury must constitute serious physical harm to others. Defendants argue that Plaintiffs do not plead facts that Defendants consciously or recklessly disregarded Plaintiffs' physical safety or knew or should have known that their actions were exposing Plaintiffs to serious physical injury.

In addition, Defendants argue that Plaintiffs fail to sufficiently plead proximate cause. Defendants argue that Plaintiffs have failed to allege that their injuries were generally foreseeable such that a supervisor would be expected to take particular action to prevent those injuries. Also, Defendants argue that Plaintiffs fail to sufficiently plead that Holland and Velez had a duty to supervise Foster. Defendants argue that Plaintiffs do not allege that Velez and Holland had authority to hire, fire, promote, reassign, or make any other tangible employment changes regarding Foster.

Lastly, Defendants argue that Plaintiffs negligence claim should be dismissed against Gragg, Holland, and Velez because Plaintiffs fail to allege facts demonstrating they owed Plaintiffs a duty of care. Defendants argue that Plaintiffs make conclusory allegations

that these three defendants owed them a duty to provide a safe, non-toxic work environment.

To succeed in an action for negligent supervision, the plaintiff must plead and prove that the employer knew or should have known that its employee had a particular unfitness for his position so as to create a danger of harm to third persons and that the employer's failure to safeguard the plaintiff against this particular unfitness proximately caused the plaintiff's injury. *Platson v. NSM, America, Inc.*, 322 Ill. App. 3d 138, 144 (2d Dist. 2001), citing *Van Horne v. Muller*, 185 Ill. 2d 299, 313 (1998); *Mueller v. Community Consolidated School District 54*, 287 Ill. App. 3d 337, 342-43, 222 Ill. Dec. 788, 678 N.E.2d 660 (1997). To satisfy the element of proximate causation, the plaintiff must demonstrate a "tangible connection" between the employee's particular unfitness for the job and the resulting harm to the plaintiff. *Id. Carter v. Skokie Valley Detective Agency, Ltd.*, 256 Ill. App. 3d 77, 83, 195 Ill. Dec. 138, 628 N.E.2d 602 (1993). That is, the particular unfitness of the employee must have rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position. *Id. Van Horne*, 185 Ill. 2d at 313. Generally, the existence of proximate cause is a question of fact for the jury. *Id.*

In order to state a legally recognizable claim for willful and wanton conduct, a plaintiff must establish that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; (3) the defendant acted with a deliberate intent to harm or with an utter indifference to, or conscious disregard for, the welfare of the plaintiff; and (4) the plaintiff's injuries were proximately caused by the alleged breach. *Ontap Premium Quality Waters, Inc. v. Bank of Northern Ill.*, 262 Ill. App. 3d 254, 261 (2nd Dist. 1994). Duty is a prerequisite to any willful and wanton claim and its existence will be determined as an issue of law. *Id.*

Plaintiffs maintain that they sufficiently pled willful and wanton conduct. plaintiffs maintain that it is undeniable that Defendants were aware of and recklessly disregarded clear and unambiguous cries for help. Plaintiffs maintain that Defendants knew that Plaintiffs were being seriously injured as a direct result of Foster's misconduct and that Defendants could have foreseen the negative impact of Foster's misconduct.

In addition, Plaintiffs maintain that it is undeniable that NU and Velez were the ones that conducted the investigation when Plaintiffs filed their formal HR complaint. Plaintiffs further maintain that they sent multiple emails to Gragg, Holland, and Velez outlining Foster's abusive misconduct. Plaintiffs maintain that NU admitted that there was sufficient evidence to substantiate Plaintiffs' claims and sent Holland to supervise the baseball team's games, but Holland left after the first game. Plaintiffs also maintain that they plead that NU failed to adequately train and educate Foster on the negative impact of abuse and bullying. Plaintiffs further maintain that they allege that NU did nothing regarding Foster's misconduct for months.

Plaintiffs maintain that they adequately plead proximate cause. Plaintiffs maintain that Foster's misconduct was on display for the public and Defendants. Plaintiffs maintain that NU's administration admitted that they were horrified by Plaintiffs' allegations and that this notice made Plaintiffs subsequent injuries due to Defendants' inaction foreseeable.

Lastly, Plaintiffs maintain that Defendants did owe them a duty as Velez, Holland, and Gragg were all in positions of authority and/or control over Plaintiffs' work environment. Plaintiffs maintain that Gragg had the power to make employment decisions including addressing Foster's alleged misconduct and that Holland played a part in Foster's hiring and Velez was in part responsible for Plaintiffs' work environment.

The Court finds that Plaintiffs have not sufficiently pled a duty owed nor any willful or wanton conduct. Defendants did receive Plaintiffs' grievances, did investigate, and did take action. While Plaintiffs may argue that action should have been taken sooner, the time line shows action was promptly taken. Also, the Court addresses further below the allegations against Foster and concludes that Plaintiffs fail to state a cause of action.

As such, the Court grants Defendants motion to dismiss Counts III and IV without prejudice.

*Negligent Infliction of Emotional Distress (Count V)*

Defendants seek to dismiss Count V by arguing that Plaintiffs fail to allege a contemporaneous physical injury or impact. Defendants argue that a physical impact or injury is required to sufficiently plead negligent infliction of emotional distress ("NIED") and that allegations that a plaintiff suffered emotional distress, even if severe, are insufficient to state a claim absent a contemporaneous physical injury or impact. Defendants argue that *Schweihs* is instructive as the trial court dismissed the NIED claim for failure to plead any contemporaneous physical impact.

Defendants also argue that Plaintiffs fail to allege a duty of care held by Gragg, Holland, and Velez. Defendants argue that Plaintiffs simply recite the elements of NIED and conclude that the individually named defendants owed them a duty. Defendants argue that this is insufficient especially in light of the deficiencies in Plaintiffs' other claims.

The pleading requirements for negligent infliction of emotional distress include: (1) the existence of a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury proximately caused by that breach. *See Brackett v. Galesburg Clinic Ass'n*, 293 Ill. App. 3d 867, 872 (3rd Dist. 1997), *citing Corgan v. Muehling*, 143 Ill. 2d 296, 306 (1991). "To state a cause of action for the tort of negligent infliction of emotional distress, a plaintiff must allege that the infliction of emotional distress arose out of the *negligent* acts of a defendant." *Id.* "Where the purported emotional distress has been caused by *intentional* acts committed by a defendant, the plaintiff does not state a cause of action for *negligent* infliction of emotional distress." *Id.*

Plaintiffs maintain that Illinois courts have revisited the requirement of pleading a contemporaneous physical injury or impact and found that the zone of danger rule applies in certain circumstances. Plaintiffs maintain that this rule does not apply when a separate tort has already been committed against a plaintiff and they assert emotional distress as an element of damages. Plaintiffs maintain that because they have several theories of liability, this exception applies to this matter.

The Court finds that Plaintiffs fail to sufficiently plead a cause for negligent infliction of emotional distress. It is clear that the tort does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041, P51; *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 463 (1990); *Public Finanace Corp. v. Davis*, 66 Ill. 2d 85, 89 (1978), citing Restatement (Second) of Torts, sec. 46, comment d (1965); see also *Hayes v. Ill. Power Co.*, 225 Ill. App. 3d 819, 826-27 (4th Dist. 1992). Plaintiffs' complaint is a recitation of what is not covered by the tort.

The Court finds that Plaintiffs fail to establish that they have suffered any damages. Whether the infliction of emotional distress is done negligently or intentionally there must still be a demonstration that the actions that are alleged to have inflicted the emotional distress are so severe that no reasonable man could be expected to endure it. *See Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041, P51. The Court notes that Plaintiffs have not alleged that they have been under the care of any medical professional so as to demonstrate the injuries or harm they have suffered due to Foster's actions. The Court finds that Plaintiffs fail to state a cause of action.

As such, the Court grants Defendants motion to dismiss Count V without prejudice.

*Intentional Infliction of Emotional Distress (Count VI)*

Defendants seek dismissal of Count VI by arguing that Plaintiffs fail to plead how Foster's conduct was outrageous and extreme. Defendants argue that Foster's alleged conduct falls well short of outrageous and extreme. Defendants argue that Plaintiffs simply recite the knowledge requirement for intentional infliction of emotional distress ("IIED"), but fail to provide any supporting facts. Defendants argue that Plaintiffs fail to allege any severe emotional stress caused by Foster's conduct.

Illinois courts have held that mere threats are not enough to constitute an actionable intentional infliction of emotional distress claim. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 15 (1992). "The conduct must be extreme and outrageous. The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities. 'It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Public Finanace Corp. v. Davis*, 66 Ill. 2d 85, 89 (1978), citing Restatement (Second) of Torts, sec. 46, comment d (1965); see also *Hayes v. Ill. Power Co.*, 225 Ill. App. 3d 819, 826-27 (4th Dist. 1992).

The elements for the intentional infliction of emotional distress are (1) extreme and outrageous conduct, (2) intent by the defendant to cause, or a reckless disregard of the probability of causing emotional distress, (3) severe or extreme emotional distress suffered by the plaintiff, and (4) an actual and proximate causation of emotional distress by the defendant's outrageous conduct. Public Finance Corp. v. Davis, 66 Ill. 2d 85 (1976) (a debtor

lawfully attempting to collect a debt from plaintiff did not inflict actionable emotion distress).

Plaintiffs maintain that they have sufficiently pled that Foster's conduct was extreme and outrageous as Foster's attempts to publicly humiliate Plaintiffs clearly constitutes extreme and outrageous conduct. Plaintiffs maintain that Illinois courts recognize that conduct that is retaliatory and punitive in nature often satisfy the first prong of IIED. Plaintiffs maintain that they pled that Foster knew there was a high probability that his conduct would cause Plaintiffs' stress. Plaintiffs maintain that they pled that Foster's conduct was so severe that it caused one of the Plaintiffs to again start taking anxiety medication that he had been off of for years.

Although the tort originally arises from a killing, the standard has evolved to include other actions. First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress. *Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041, P49-P51. Third, the conduct must in fact cause severe emotional distress. *Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041, P49-P51 citing *McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E.2d 806, 127 Ill. Dec. 724 (1988) (citing *Public Finance*, 66 Ill. 2d at 90).

The Court finds Plaintiffs' allegations do not approach the pleading requirements for IIED. Plaintiffs do not allege an actual injury suffered, they do not recite any medical or psychological treatment or counseling that they have engaged in as support for their damages. The Plaintiffs do not recite that they have been unemployed or have been unable to find employment as a result of Foster's conduct. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and duration of the distress are factors to be considered in determining its severity." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 276-277 (2003).

The Court must consider the pleadings in the context of the positions held by Plaintiffs and the context of the work environment. The question posed is could no reasonable college baseball coach be expected to endure what Plaintiffs experienced? The Court finds that Plaintiffs fail to allege that Foster's conduct was so unbearable and invasive that they could not bear to withstand it any longer. Further, as the Court found above, Plaintiffs have not sufficiently pled any damages as a result of Foster's actions.

As such, the Court grants Defendants' motion to dismiss Count VI without prejudice.

### *Fraudulent Inducement (Count VII)*

Defendants seek to dismiss Count VII by arguing that Plaintiffs fail to satisfy the heightened pleading standard when claiming fraud. Defendants argue that Plaintiffs offer vague and conclusory allegations that NU falsely represented its workplace culture and that Plaintiffs fail to allege the specific misrepresentations that were made to them by Defendants. Defendants argue that Plaintiffs fail to allege that NU made these supposed misrepresentations with the knowledge that they were false.

Fraudulent inducement to enter into a contract is a form of common law fraud. *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 17 (2d Dist. 1995). To state a cause of action for common law fraud, a plaintiff must allege (1) a false statement of material fact, (2) knowledge or belief by the maker that the statement was false, (3) an intention to induce the plaintiff to act, (4) reasonable reliance upon the truth of the statement by the plaintiff, and (5) damage to the plaintiff resulting from reliance. *Id.* A successful common law fraud complaint must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496 (1996).

Plaintiffs maintain that they did not accept employment at NU based on promises to be fulfilled at some unknown point in the future, but accepted positions based on representations by NU on the current condition of the workplace. Plaintiffs further maintain that NU hired Foster despite his well-known reputation of being an abusive bully.

The Court finds that Plaintiffs fail to allege specific misrepresentations made by NU relating to the workplace conditions that NU knew were false. The Court agrees with Defendants, that Plaintiffs simply conclude that NU knew the workplace would be toxic as a result of Foster's hiring. As such, the Court grants Defendants motion to dismiss Count VII without prejudice.

### *Respondeat Superior (Count VIII)*

Defendants seek dismissal of Count VIII by arguing that Plaintiffs have not sufficiently plead their underlying claims preempting them from being able to pursue this claim.

Under the theory of vicarious liability, or *respondeat superior*, an employer can be liable for the torts of an employee that are committed within the scope of the employment. *Vancura v. Katris*, 238 Ill. 2d 352, 375 (2010). The employee's liability is imputed to the employer; that is, where the employee is acting within the scope of the employment, the plaintiff generally need not establish any malfeasance on the part of the employer. *Id.* Under *respondeat superior*, an employer's vicarious liability extends to the negligent, willful, malicious or even criminal acts of its employees, when those acts are committed within the scope of employment. *Adames v. Sheahan*, 233 Ill. 2d 276, 298 (2009).

Plaintiffs maintain that as detailed above, they sufficiently state causes of action for each of their claims.

As the Court found that none of Plaintiffs' causes of actions were able to stand, the Court cannot allow this Count to stand. The Court finds that *respondeat superior* requires that an employee is liable for some type of misconduct that can then be transferred onto the employer. The Court finds that Plaintiffs have not provided adequate facts to support this cause of action. As such, the Court grants Defendants' motion to dismiss. Plaintiffs may replead if they are able to address the issues raised by the Court.

## ORDER

It is ordered:

(1) Defendants' 2-619.1 motion to dismiss is granted in part and denied in part;
    a. Defendants' 2-619 motion to dismiss Count I is granted without prejudice;
    b. Defendants' 2-619 motion to dismiss based upon the IWCA is denied;
    c. Defendants' 2-615 motion to dismiss is granted without prejudice
(2) Plaintiffs are given 28 days, until May 17, 2024, to amend the Complaint
(3) This matter is continued to May 28, 2024 at 9:00 a.m. for status on the pleadings and for a proposed discovery schedule.

Judge Daniel J. Kubasiak

APR 26 2024

Circuit Court - 2072

ENTERED,

Judge Daniel J. Kubasiak, No. 2072