IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ADRIAN SANTIAGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2024-cv-2058 |
| | ) | |
| NORTHWESTERN UNIVERSITY, | ) | Judge Mary M. Rowland |
| JAMES THOMAS FOSTER, MONIQUE | ) | |
| HOLLAND, and RACHEL VELEZ, | ) | Magistrate Judge Gabriel A. Fuentes |
| | ) | |
| Defendants. | ) | |

**DEFENDANT, JAMES FOSTER'S, MEMORANDUM
OF LAW IN SUPPORT OF MOTION TO DISMISS**

Defendant, JAMES FOSTER, (Foster), through his attorneys, JAMES KELLY LAW FIRM, PC., and for his Memorandum of law in Support of Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) states:

**I.      INTRODUCTION**

This is a tort case. Plaintiff alleges counts against Foster for negligence (willful and wanton) (Count VII) and intentional infliction of emotional distress (Count VIII). Plaintiff's case is a copy of another case filed in Cook County Circuit Court by three previous assistant coaches at Northwestern University (*Beacom, et al. v. Northwestern University, et al*, Case No. 2023-L-008072).  An Illinois Judge, applying Illinois law, has dismissed that suit based on Plaintiffs' failure to plead facts (Exhibit A, Court's Opinion dated April 26, 2024).

Plaintiff is a former volunteer baseball coach and assistant baseball coach that worked as a co-employee with Foster for a short period of time and he is now trying to capitalize on the perceived problems at Northwestern in its Athletic Department.  Plaintiff is attempting to benefit financially based

1

on the national news story. Even assuming Plaintiff's alleged facts as true, his allegations amount to nothing more than workplace disagreements between employees and about how Foster was running the Northwestern baseball program as the new coach. It is not a Complaint to remedy negligent or intentional conduct by Foster. Plaintiff wants to piggyback on the turmoil surrounding the former Northwestern football coach and financially gain based on vague allegations of emotional stress.

When Plaintiff's allegations are parsed down from the embellished and glorified generalizations, there are only limited alleged actions directly committed by Foster to Plaintiff.

- Publicly berated the Plaintiff in front of visitors, telling him to "shut the fuck up" when announcing players to hit or pitch (¶ 17(a))
- Attempting to manipulate and pit staff against one another (¶ 17(d))
- Demonstrating extreme and outrageous conduct by yelling and cursing at staff (¶ 148)
- Repeatedly requesting staff to violate NCAA rules and regulations (¶ 148)
- Emotionally manipulating staff while speaking derogatorily about them behind their backs (¶ 148)

Plaintiff has failed to allege specific facts to state any claim. Assuming all of Plaintiff's facts are true and assuming there are sufficient facts to recognize Plaintiff's legal theories, Plaintiff's Complaint must be dismissed with prejudice as the negligence count is preempted by the Workers' Compensation Act and the intentional infliction of emotional distress claim can never be pled to meet the high Illinois legal standard.

## II.       LEGAL STANDARD

### A.       FRCP 12(b)(6)

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim on which relief may be granted. Fed. R. Civ. P. 12(b)(6). Thus, dismissal is appropriate when, even if all the facts alleged are true, there is no legal claim. *Payton v. Rush-Presbyterian St. Luke's Med. Ctr.,* 184 F.3d 623, 627 (7th Cir. 1999). When ruling on a 12(b)(6) motion, the Court will "accept the well-pleaded facts in the complaint as true," but will not defer to "legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). To state a claim under the federal notice pleading standards, the Complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, a plaintiff's Complaint must allege "sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp.*, 550 U.S. at 570). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. This plausibility standard is not a probability requirement, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* To survive a motion to dismiss, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level." *Twombly*, 550 U.S. at 555. A plaintiff cannot "merely parrot the statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit), rather than providing some specific facts to ground those legal claims . . ." *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009).

While detailed factual allegations are not necessary in a complaint*, Twombly*, 550 U.S. at 555, a plaintiff can plead too much. A plaintiff can plead himself "out of court by pleading facts that show

that he has no legal claim." *Atkins v. City of Chicago*, 631 F.3d 823, 831 (7th Cir. 2011). Dismissal is appropriate where a plaintiff pleads himself out of court "by alleging (and thus admitting) the ingredients of a defense." *Weiler v. Vill. Of Oak Lawn*, 86 F.Supp.3d 874, 881 (N.D. Ill. 2014) (quoting *U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003)). In this case, Plaintiff has pled himself out of court by admitting facts that defeat his claim of willful and wanton negligence.

Applying Illinois law, Courts in this Circuit and District have held that the exclusivity provisions of ¶5 of the Workers' Compensation Act is a basis for dismissal of a plaintiff's complaint of negligence. *See e.g.*, *Belluomini v. United States*, 64 F.3d 299 (7th Cir. 1995) and *Webster v. Firstexpress, Inc.*, 2019 U.S. Dist. LEXIS 44575 (N.D. Ill. 2019). Section 5(b) of the Workers' Compensation Act, provides in part as follows:

> a. No common law or statutory right to recover damages from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety, service, advice, or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of duty as such employee other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or anyone otherwise entitled to recover damages for such injury. 820 ILCS 305/5(a) (West).

Section 11 of the Act also states:

> The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer for accidental injury sustained by any employee arising out of or in the course of the employment according to the provisions of this Act. 820 ILCS 305/11 (West 2000).

The exclusive remedy provision of the Act "is part of the quid pro quo in which the sacrifices and gains of employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, it is relieved of the prospect of large damage verdicts." *Meerbrey v. Marshall Field Co.*, 139 Ill. 2d 455, 462 (1990), quoting Larson Workmen's Compensation §65.11 (1988).

4

In *Meerbrey*, the Illinois Supreme Court stated that a plaintiff/employee can only escape the exclusivity provisions and bring a common law action against the employer only if the employee can prove:

    (1) The injury was not accidental;

    (2) The injury did not arise from his/her employment;

    (3) The injury was not received during the course of employment; or

    (4) The injury was not compensable under the Act.

*See also, Webster v. Firstexpress, Inc., supra.*

Plaintiff's claims based on negligence are barred by the exclusivity provision of the Act. It is not solely the fact that the claims are based in negligence, but also that the claims arise from the conditions of employment, that cause them to be barred. *Senesac*, 324 Ill. App. 3d at 392.

### B.    Elements of Negligence

Illinois law sets out the standard for proving negligence. Negligence is the failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not do under similar circumstances. *Williams v. Conner,* 228 Ill. App. 3d 350, 364 (5th Dist. 1992); Illinois Pattern Jury Instructions Civil 10.01. In order to recover for negligence, Plaintiff must plead and prove that:

    (1)    A duty was owed to the plaintiff by the defendant;

    (2)    Injuries or damages were sustained by the plaintiff; and

    (3)    Defendant's breach of duty owed to plaintiff was the proximate cause of plaintiff's injuries or damages.

*Johnson v. Edward Orton, Jr. Ceramic Found.,* 71 F. 4th 601 (7th Cir. 2022) and *Thompson v. County of Cook*, 154 Ill. 2d 374, 382 (1993); Illinois Pattern Jury Instructions Civil 21.02. The failure to prove any one of these elements is fatal to Plaintiff's cause of action. Illinois Pattern Jury Instructions Civil 21.02.

The question of whether a duty exists is ordinarily a question of law for the Court to decide. *Largosa v. Ford Motor Company*, 303 Ill. App. 3d 751, 754 (1st Dist. 1999). The relationship of the parties to each other determines the duty owed by one to another. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 47 (1991). In determining whether a duty exists under given circumstances, a Court will consider the likelihood of injury, the reasonable foreseeability of that injury, the magnitude of the burden of eliminating or guarding against the risk, and the consequence of placing that burden on the defendant. *Johnson, supra* and *Kirk v. Michael Reese Hospital & Medical Center,* 117 Ill. 2d 507, 526 (1997).

### C. Willful and Wanton

Plaintiff has alleged an action for negligence using the terms willful and wanton misconduct. Illinois' Courts have determined that willful and wanton misconduct is a form of negligence. *Corgan v. Muehling*, 143 Ill. 2d 296, 302 (1991). In Illinois, there is no independent tort of willful and wanton conduct. *Lohman v. Bemis*, 289 Ill. App. 3d 139, 142 (1st Dist. 1997).

### D. Intentional Infliction of Emotional Distress

Illinois case law makes clear that the standard is high; the tort does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or trivialities. *Benton v. Little League Baseball, Inc.*, 2020 IL App (1st) 190549, ¶64. It is not enough that the defendant acted with a tortious or even criminal intent, that he intended to inflict emotional distress, or that his conduct could be characterized by malice. *Id.* Conduct must reach a level where recitation of the facts to an average member of the community would arouse his resentment and lead him to exclaim, "Outrageous!" *Id*. Given this high standard, a Complaint alleging the intentional infliction of emotional distress must be more specific and detailed than normally permissible in pleading a tort action. *Id.*

## III. ARGUMENT

### A. Count VII (Negligence Willful and Wanton) of Plaintiff's Complaint Should be Dismissed as Illinois' Workers' Compensation Act's Exclusive Remedy Provision Bars Plaintiff's Claims

Plaintiff is attempting to sue his co-employee for workplace negligence damages which is not allowed in Illinois. Co-employees are "immune from a common law negligence suit by the Plaintiff pursuant to Section 5(a) (and Section 11) of the Workers' Compensation Act. *Ramsey v. Morrison*, 175 Ill. 2d 218, 224 (1997), *Morales v. Herrera*, 2016 IL App (1st) 153540, ¶14.

In enacting the Illinois' Workers' Compensation Act, the General Assembly established a new framework for recovery to replace the common law rights and liabilities that previously governed employee injuries. *Sharp v. Gallagher,* 95 Ill. 2d 322, 326 (1983). In exchange for a system of no-fault liability, the employee is subject to statutory limitations on recovery for injuries and occupational diseases arising out of and in the course of employment. *Id.* At 326-327. Accordingly, the Act contains an exclusive remedy provision as part of the quid pro quo which balances the sacrifices and gains of employees and employers. *Meerbrey,* 139 Ill. 2d at 462.

Exclusive remedy provisions are found in two separate sections of the Act. Section 5(a) states, in part:

> There is no common law or statutory right to recover damages from the employer…for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act.

Section 11 of the Act states in part:

> The compensation herein provided, together with the provisions of this Act, shall be the measure of responsibility of any employer engaged in any of the enterprises or businesses enumerated in (the Act)…

Section 5(a) and Section 11 of the Act have been viewed analogously for purposes of judicial construction. *Folta v. Ferro Engineering,* 2015 IL 118070, ¶13.

The Illinois Supreme Court has stated that the Act generally provides the exclusive means by which an employee can recover for work-related injuries. *Meerbrey,* 139 Ill. 2d at 462. An employee may only escape the exclusive remedy under limited circumstances requiring the employee to establish that the injury:

> 1. Was not accidental;
>
> 2. Did not arise from his employment;
>
> 3. Was not received during the course of employment; or
>
> 4. Was not compensable under the Workers' Compensation Act.

*Webster v. Firstexpress, Inc., supra,* and *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 237 (1st Dist. 1980).

Here, Plaintiff has alleged in Count VII, allegations which squarely put the claims within the bounds of Illinois' workers' compensation system. In order to proceed with his lawsuit, the burden is upon Plaintiff to prove that he fits into one of the narrow exceptions to the Act. Plaintiff has not done so with his pleading.

Exceptions 2 and 3 do not apply based upon the allegations made. Plaintiff alleges that he was in the course and scope of his employment and that the acts alleged to have been committed by Foster arose out of the employment, given Plaintiff has attached respondent superior liability to Northwestern. Plaintiff fails under his respondent superior theory, which he pled, if Foster's alleged actions were not related to his job duties for Northwestern. *Mitchell v. Norman James Construction Co.*, 291 Ill. App. 3d 927, 932 (1997). There is no question based upon Plaintiff's pleadings that Plaintiff worked with Foster and claims injury arising out of and in the course of his employment obligations. Unlike the intentional infliction of emotional distress count, Count VII is a negligence cause of action dealing with alleged accidental injuries suffered by Plaintiff while in the course and scope of his duties.

With respect to exception 1, whether couched as willful and wanton or not, the injuries were accidental, Plaintiff is alleging negligence claims. In negligence claims, the injuries are often, if not

always, accidental. Although the alleged actions are alleged as intentional, so are many actions which cause accidental injuries that are compensable by Illinois' Workers' Compensation Act. The Illinois Supreme Court has stated, as black-letter law, "the Workmen's Compensation Act precludes a common-law action for damages by an employee under the Act against a co-employee based on the latter's negligence during the course of their employment." *Collier, supra*, at 241. This result applies regardless of proof of willful or wanton negligence, as alleged by Plaintiff. *Id.* To show that an injury was not accidental, a plaintiff must allege that the employer acted deliberately and with specific intent to injure the employee. *Webster, supra*. For example; even if the alleged conduct goes beyond aggravated negligence and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, willfully failing to furnish a safe place to work, or even willfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character. *Copass v. Illinois Power Co.*, 211 Ill. App. 3d 205 (Ill. App. Ct. 1991). Therefore, exception 1 does not apply to Plaintiff's negligence claims.

With respect to exception 4, whether the accidental injury is compensable under the Workers' Compensation Act, Plaintiff has pled no facts which would support these counts surviving Foster's Motion to Dismiss. Illinois allows recovery under its Workers' Compensation Act for both physical-mental and mental-mental claims. Plaintiff's pleading is vague as to the basis for his alleged injury, but this is irrelevant as both pathways are available via Illinois' Workers' Compensation Commission. Illinois recognizes mental injuries under its Workers' Compensation Act.

Illinois recognizes both physical-mental injuries and mental-mental injuries. Physical-mental injuries are those precipitated by physical contact or injury. *Diaz v. Illinois Workers' Compensation Comm'n (Vill. of Montgomery)*, 2013 IL App (2d) 120294WC, ¶23. Illinois also recognizes as compensable mental-mental injuries in which mental trauma occurs causing further mental, psychological, or psychiatric illness. *Id*. A petitioner can prevail with a mental-mental injury claim

9

when there is objective evidence supporting inferences of psychological injury, causation, and disability. *Chicago Transit Authority v. Illinois Workers' Compensation Comm'n.,* 2013 IL App (1st) 120253WC, ¶21.

Moreover, this Court is not the judge of compensability. Illinois' Workers' Compensation Act provides that "all questions arising under this Act…shall be determined by the Commission." 820 ILCS 305/18. The Commission is the sole fact-finder for employee accidental injuries under the Act. Whether a causal relationship exists between employment and a condition of ill-being is a question of fact. *Certi-Serve, Inc. v. Industrial Comm'n.,* 101 Ill. 2d 236, 244 (1984). It is the function of the Commission to decide questions of fact, judge the credibility of witnesses, and resolve conflicts in the evidence. *Hosteny v. Illinois Workers' Compensation Comm'n.*, 397 Ill. App. 3d 665, 674 (1st Dist. 2009). This is especially true with respect to medical issues to which the Commission is owed heightened deference because of the expertise it possesses in the medical arena. *Long v. Industrial Comm'n*, 76 Ill. 2d 561, 566 (1979).

Given the clear law in Illinois that provides physical-mental and mental-mental injuries are compensable, Plaintiff's alleged injuries could be found compensable under the Act by the Commission whose has the exclusive role to make that determination. That statement of law comports with the General Assembly's statutory scheme providing, in the bargain between employers and employees, that employees have no common law right of action in cases of alleged work injuries.

Here, Plaintiff would have an even lower proof bar at the Commission as workers' compensation is a no-fault system. Therefore, if Plaintiff was to argue or allege that he would not succeed with compensability in a workers' compensation forum, there is no reason why these counts should be allowed to advance under the heightened negligence standard in circuit court. Plaintiff has attempted to negate the benefit of the bargain reached in Illinois' workers' compensation scheme. The Court should dismiss Plaintiffs' negligence claims. Plaintiff would never be able to allege facts

sufficient to avoid Illinois' exclusive remedy provision. For the foregoing reasons, Count VII of Plaintiff's Complaint should be dismissed with prejudice.

    **B.    Plaintiff's Count VII Alleging Negligence (Willful and Wanton) Must be Dismissed as There is No Duty in Illinois**

As previously established, for a negligence claim to be lawfully sufficient, the defendant must owe a duty to the plaintiff, the defendant must breach that duty, and the injury must be the proximate cause of the breach. *Johnson, supra*, and *Corgan v. Muehling*, 143 Ill. 2d 296, 306 (1991). "The determination of whether a duty exists — whether the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff — is an issue of law to be determined by the Court." *Id*. Where a plaintiff has not adequately alleged facts that impose a duty upon a defendant, the action should be dismissed for failure to state a claim. *Parks v. Kownacki*, 193 Ill. 2d 164, 181 (2000).

Here, Plaintiff alleges in VII that Foster "owed the Plaintiff a duty of care to provide a safe, non-toxic work environment." (Complaint ¶ 140). Plaintiff alleges that Foster should have known that abusing, yelling, and cursing at staff members and exposing staff and student athletes to sexist, racist and insensitive language and commentary would pose a high probability of serious harm to those staff members including but not limited to Plaintiff. (Complaint ¶ 142). The scope of any duty owed is directly tied to the nature of the harm, and the harm alleged by the Plaintiff is psychological in nature. *Sommers v. Household Int'l, Inc.,* 1999 U.S. Dist. LEXIS 20176 at 27, 1999 WL 1285858. Plaintiff is therefore alleging that Foster owed a duty to not do or say anything that would cause him excessive psychological stress. There is no such duty that exists in Illinois law. *Brown v. Kouretsos*, 2016 U.S. Dist. LEXIS 77727 at 17, 2016 WL 3269000. In Illinois, employers do not owe a duty to "refrain from doing anything that would cause an undue amount of psychological stress" to their employees. *Sommers*, 1999 WL 1285858, at 27, 1999 WL 1285858. For the stated reasons, Plaintiff's alleged facts

do not impose a duty upon Foster, and therefore the negligent infliction of emotional harm action should be dismissed for failure to state a claim.

In addition to proving that a duty existed, to show willful and wanton conduct, Plaintiff must prove that Foster engaged in a course of action which shows actual or deliberate intention to harm or reckless disregard for the person's safety. *Doe –3 v. McLean County Unit Dist. No. 5 Bd. Of Dirs.*, 2012 IL 112479, ¶86. In this context, a defendant recklessly or consciously disregards the probability of causing emotional distress if the defendant is certain or substantially certain that the defendant's conduct will cause emotional distress. *Public Finance Corp.*, 66 Ill. 2d at 90. Plaintiff has failed to plead and cannot prove that Foster engaged in a course of action with the deliberate intention to harm Plaintiff or for reckless disregard for Plaintiff's safety.

Finally, most of the allegations in Plaintiff's Complaint do not concern what happened to Plaintiff, but actions involving other members of the Northwestern baseball program. These allegations do not support any type of negligence claim or infliction of emotional distress for Plaintiff. Plaintiff's attempt to support his cause of action for emotional distress because he witnessed or became aware of injuries alleged to have been inflicted on third parties fails. To state a cause of action as a bystander for negligent infliction of emotional distress, the plaintiff must allege that he was in such proximity to the accident in which the direct victim was physically injured, that there was a high risk of physical injury to the plaintiff at the time, and that at that time or afterwards, the plaintiff suffered physical injury or illness resulting from the emotional distress. *Benton*, 2020 IL App (1st) 190549, ¶78. Plaintiff has not alleged that he witnessed such a physical injury, and he sustained a physical injury or illness thereafter.

Accordingly, Plaintiff's negligence claim must be dismissed.

### C. Plaintiff Has Failed to State a Cause of Action for Intentional Infliction of Emotional Distress

In order to properly plead a cause of action for intentional infliction of emotion distress, a plaintiff must allege facts to establish:

>   (1)   That the defendants' conduct was extreme and outrageous;
>
>   (2)   That the defendant knew that there was a high probability that his conduct would cause severe emotional distress; and
>
>   (3)   That the conduct in fact caused severe emotional distress.

*Kolegas*, 154 Ill. 2d at 20. The Illinois Supreme Court has warned that "mere insults, indignities, threats, annoyances, petty oppressions or trivialities" do not constitute extreme and outrageous conduct. *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 89-90 (1976). "Rather, the nature of Defendant's conduct must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Kolegas*, 154 Ill. 2d at 21. In determining whether conduct is outrageous and extreme, we use an objective standard based on all the facts and circumstances of the case. *Duffy v. Orland Brook Condominium Owners Ass'n.*, 2012 IL App (1st) 113577, ¶36. A complaint alleging the infliction of intentional emotional distress "must be specific, and detailed beyond what is normally considered permissible in pleading a tort action." *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 155 (1st Dist. 1999) (quoting *McCaskill v. Barr,* 92 Ill. App. 3d 157, 158 (4th Dist. 1980). The First District has generally been hesitant to hold that employers' retaliatory actions were extreme or outrageous enough to satisfy the first element of the tort of intentional infliction of emotional distress. *Welsh*, 306 Ill. App. 3d at 154. "This reluctance seems to be grounded in a fear that 'if the anxiety and stress resulting from discipline, job transfers, or even terminations could form the basis of an action for emotional distress, virtually every employee would have a cause of action." *Id.; Miller v. Equitable Life Assurance Society of the United States*, 181 Ill. App. 3d 954, 957 (1989).

A determination of whether words or conduct are extreme and outrageous must be made objectively on a case-by-case basis. *Knieriem v. Izzo*, 22 Ill. 2d 73, 86 (1961). To qualify as outrageous, defendant's conduct must be so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in civilized community. *Kolegas*, 154 Ill. 2d at 21. Such conduct must be differentiated from the mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities that are part of the costs of complex society from which the law provides no protection. *Doe v. Calumet City*, 161 Ill. 2d 374, 392 (1994). It is not enough that the defendant has acted with an intent that is tortious or even criminal, or that he has intended to inflict emotional distress or even that his conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous and so extreme in degree as to go beyond all possible bounds of decency. *Schweihs,* 2016 IL 120041, ¶51 and *Public Finance Corp.,* 66 Ill. 2d at 90. The law intervenes only when the distress is so severe that no reasonable man could be expected to endure it. *Id*.

A plaintiff must meet a high threshold to demonstrate a cause of action for intentional infliction of emotional harm in the employment context. Courts are hesitant to find a cause of action for intentional infliction of emotional distress in employment situations. Courts are concerned that, if everyday job stresses resulting from discipline, personality conflicts, job transfers, or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action. *Graham v. Commonwealth Edison Co.,* 318 Ill. App. 3d 736, 746 (1st Dist. 2001). In the employment setting, the conduct complained of must be particularly outrageous. *Piech v. Arthur Andersen & Co., SC,* 841 F. Supp. 825, 831 (N.D. Ill. 1994) (applying Illinois law). The work setting contemplates a degree of teasing and taunting that, in other circumstances, might be considered cruel and outrageous. *Id*. The Federal District Court in *Piech* indicated that viable claims for intentional infliction of emotional harm in the employment setting

generally involve circumstances beyond what can be considered a typical employment dispute better addressed in a Title VII or equivalent suit. *Id*. at 832.

The *Piech* Court provided examples of cases involving behavior in the employment context that constituted outrageous behavior. For example, in *Dean v. Ford Motor Credit Co.*, a supervisor intentionally placed checks in plaintiff's purse so that plaintiff would appear as a thief and fear criminal charges. *Piech*, 841 F. Supp. at 832, *Dean v. Ford Motor Credit Co.*, 885 F.2d 300 (5th Cir. 1989). In *Bailey v. Unocal Corp.,* a defendant exposed himself to the plaintiff and subjected the plaintiff to unwelcome sexual advances, sexual comments containing sexual innuendos, and repeated requests and propositions for sexual behavior. *Piech*, 841 F. Supp. at 832, *Bailey v. Unocal Corp.,* 700 F. Supp. 396, 399 (N.D. Ill. 1988). In *Pavilon v. Kaferly*, the defendant knew the plaintiff was susceptible to emotional distress and pursued the plaintiff for dates, offered her money for sex, threatened to kill and rape her, and threatened to challenge custody of her children. *Piech*, 841 F. Supp. at 832, *Pavilon v. Kaferly*, 204 Ill. App. 3d 235, 241 (1st Dist. 1990).

The *Piech* Court also provided a number of examples of behavior in the employment context that were not held to be outrageous. For example, in *Miller v. Equitable Life Assurance Soc.*, the plaintiff alleged that she was surrounded by supervisors and coworkers who were inconsiderate, rude, vulgar, uncooperative, unprofessional, and unfair, and that an agent touched plaintiff's breast, another agent stated that he wanted her, and a manager suggested that she use sex to sell insurance. *Piech*, 841 F. Supp. at 832, *Miller*, 181 Ill. App. 3d at 955-956. In *Morrison v. Sandell*, the plaintiff alleged that toilet paper and human waste matter were placed in a drawer that plaintiff would open. *Piech*, 841 F. Supp. at 832, *Morrison v. Sandell,* 112 Ill. App. 3d 1057, 1060. Another example of the reluctance to find a cause of action arising out of an employment situation is *Briggs v. North Shore Sanitary Dist.,* 914 F. Supp. 245 (N.D. Ill. 1996). The Federal District Court, again applying Illinois law, held that an African American employee who had a pickaninny doll hung in her office, was subject to racial slurs, was excluded from office social activities, was placed on probation, and was refused proper training,

did not state a cause of action for intentional infliction of emotional harm. *Id*. at 252. Thus, a plaintiff must demonstrate truly outrageous conduct by a defendant even in a workplace setting where the defendant has substantial control over the plaintiff. In essence, the allegations, if true, must shock the conscience. *Piech, supra*.

Another factor considered by Courts in determining whether plaintiff has shown a valid cause of action is whether the defendant is pursuing a legitimate objective. For example, collection agencies may cause an individual significant emotional distress when attempting to collect a debt owed by the individual. However, as long as they are pursuing the legitimate objective of collecting the debt through legal means they cannot be found liable for intentional infliction of emotional distress. *Public Finance Corp.,* 66 Ill. 2d at 93. Arguably, Foster was trying to win games and build a strong baseball program when the alleged incidents occurred. Another factor courts consider in determining whether there has been an intentional infliction of emotional harm is whether a defendant is aware that the plaintiff is particularly susceptible to emotional distress. *Kolegas*, 154 Ill. 2d at 21. There are no factual allegations that the Plaintiff was particularly susceptible to emotional distress or, even if he was, that Foster was aware or should have been aware of such susceptibility.

Even assuming Plaintiff's facts are true, Plaintiff has failed to state a cause of action for intentional infliction of emotional harm. As indicated above, what might be considered outrageous behavior in other situations is not considered outrageous in the employment context. It is especially true considering that the employment situation involved in this case is a Division I university baseball program. The context is a Power Five Conference athletic team, not a classroom or a boardroom. It is a major university baseball program, and the Plaintiff is an adult and had been previously exposed to the type of environment in which the alleged intentional infliction of emotional harm occurred. Even if this was a classroom or boardroom, Plaintiff has not demonstrated a cause of action for intentional infliction of emotional distress. The essence of Plaintiff's Complaint is that Plaintiff thought he deserved an assistant coaching position and Foster did not give it to him. It does not matter what

16

Plaintiff thought he was owed, how he perceived Foster, or even how Foster performed. What matters is whether Plaintiff has cited specific facts showing, or from which it could be reasonably concluded, that Foster intentionally inflicted emotional harm on the Plaintiff. He has not. The facts alleged in the instant case are so dissimilar from the facts in *Doe v. Calumet City, supra*, where a woman had, immediately prior to the incident alleged to have caused infliction of emotional harm, been sexually assaulted and her children threatened, as to provide no basis to conclude that the Plaintiff was susceptible to emotional distress.

Finally, although Plaintiff has alleged that he suffered severe emotional distress, his allegations do not support such a claim. Plaintiff alleges that he asked a Northwestern Athletic Department official to see a therapist for extreme anxiety and received no response (Complaint ¶54) and that because he had no insurance to cover fees needed to diagnose and treat Plaintiff's various mental health symptoms, Plaintiff could not seek treatment. (Complaint ¶55). These allegations are not sufficient to meet the threshold of a viable claim for mental distress. Allegations that a plaintiff suffered depression and anxiety do not support a claim for severe emotional distress. *Knysak v. Shelter Life Insurance Co.,* 273 Ill. App. 3d 360, 371 (5th Dist. 1995). Similarly, allegations that plaintiff suffered anxieties, depression, and other physical manifestations such as loss of time, loss of ability to concentrate, and interference with peace of mind did not constitute severe mental distress. *Mucklow v. John Marshall Law Sch.*, 176 Ill. App. 3d 886, 895 (1st Dist. 1988). Thus, Plaintiff is not even close to alleging severe mental distress.

Given the best allegations Plaintiff has made do no more than allege insults or indignities, not extreme and outrageous conduct, dismissal with prejudice is warranted by Illinois law. *Benton*, 2020 IL App (1st) 190549, ¶ 74. Even discriminatory, blameworthy, highly inappropriate, and reprehensible behaviors are not automatically actionable as intentional inflictions of emotional distress. *Id.* at ¶ 69. No reasonable factfinder would find the complained of conduct to be extreme or outrageous; therefore,

17

Plaintiff's intentional infliction of emotional distress Count cannot survive a motion to dismiss. *Id*. at ¶ 74.

Plaintiff cannot credibly contend that Foster designed to cause him emotional distress by the alleged way that he interacted with members of the Northwestern baseball team or with other Northwestern baseball staff. Similarly, with respect to this Plaintiff, telling Plaintiffs, even in harsh terms, to not interfere when Foster was dealing with another baseball team member, or yelling at another staff member during a baseball game and removing his authority to call pitches or even making childish remarks about staff members behind their backs, Plaintiff cannot credibly contend that these isolated instances were designed to cause him emotional distress. Neither can Plaintiff contend that Foster had foreseen the conduct that they allege. As demonstrated in the discussion concerning intentional infliction of emotional distress, workplace conduct, which may under other circumstances support an award of punitive damages, does not support a claim for intentional infliction of emotional harm.

Plaintiff's Complaint, itself, undercuts his claim of significant emotional distress. Plaintiff's Complaint indicates that he sought continued employment as Northwestern's pitching coach for the next baseball season with Foster, the alleged perpetrator of the toxic environment, and that Plaintiff left the Northwestern Baseball Program only after he found out that he would not be offered the pitching coach position. (Complaint ¶¶56 – 59). If the emotional distress was so severe, why would one want to endure another year of such distress? The simple answer is that one would not. Plaintiff has not alleged mental distress that would support a cause of action for intentional infliction of emotional distress.

Accordingly, Plaintiff has failed to state a cause of action for intentional infliction of emotional harm.

## IV. CONCLUSION

Plaintiff is attempting to capitalize on the publicity surrounding Northwestern's Athletic Department and trying to collect common law damages. Common law actions for negligence among co-employees are barred by the Illinois' Workers' Compensation Act. Plaintiff's intentional infliction of emotional distress claim falls squarely within the type of case courts do not allow. Even if Plaintiff connects in his Complaint specific actions by Foster to Plaintiff, he will never be able to meet the high standard of shocking and outrageous conduct required in Illinois. All of Plaintiff's counts against Foster should be dismissed with prejudice.

Respectfully submitted,
JAMES FOSTER, Defendant,

By: _/s/ James M. Kelly_
James M. Kelly

James M. Kelly, ARDC No. 6238519
Jay L. Cohen, ARDC No. 6338233
JAMES KELLY LAW FIRM, PC.
7817 N. Knoxville Avenue
Peoria, IL 61614
T: (309) 679-0900
F: (309) 679-0919
E: jim@jameskellylawfirm.com
E: jayc@jameskellylawfirm.com
*Attorneys for James Foster*

**CERTIFICATE OF SERVICE**

      I certify that on June 10, 2024, I electronically filed the foregoing with the Clerk of the Court using the CMECF system which will send notification of such filing to all counsel of record in the above-captioned case.

/s/ James M. Kelly

James M. Kelly, ARDC No. 6238519
Jay L. Cohen, ARDC No. 6338233
JAMES KELLY LAW FIRM, PC.
7817 N. Knoxville Avenue
Peoria, IL 61614
T: (309) 679-0900
F: (309) 679-0919
E: jim@jameskellylawfirm.com
E: jayc@jameskellylawfirm.com
*Attorneys for James Foster*