IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| CHRISTOPHER M. BEACOM, MICHAEL, DUSTIN NAPOLEON, and JONATHAN R. STRAUSS, <br><br> Plaintiffs, <br><br> v. <br><br> NORTHWESTERN UNIVERSITY, DERRICK GRAGG, JAMES THOMAS FOSTER, MONIQUE HOLLAND, and RACHEL VELEZ <br><br> Defendants. | No. 2023 L 008072 <br><br> Judge Daniel J. Kubasiak <br><br> Commercial Calendar T |

## OPINION

This cause is before the court on Defendant James Foster's ("Foster") Motion to Dismiss. The court reviewed the pleading and the arguments made by the parties. Upon doing so, the court grants in part and denies in part Foster's Motion to Dismiss for the reasons stated herein.

## BACKGROUND

The following allegations are contained in the Complaint. In June 2022, Northwestern University ("NU") hired James Thomas Foster ("Foster") as NU's head baseball coach. Foster was recruited to NU from Army West Point after six years there. Plaintiffs Christopher M. Beacom ("Beacom"), Michael Dustin Napoleon ("Napoleon"), and Jonathan R. Strauss ("Strauss") (collectively "Plaintiffs") allege that NU hired Foster despite his departure from Army West Point being for allegations of abuse and misconduct made by student-athletes. Plaintiffs allege that from the beginning of Foster's tenure at NU, they were subject to abuse and bullying from Foster.

In October 2022, Plaintiffs began the process of formally reporting Foster's behavior to NU administration. NU assigned Mark Wesoloski ("Wesoloski") as the baseball team's "sport administrator." Plaintiffs allege that they went to James Blais ("Blais"), Deputy Director of Athletics for NU, and Maria Sanchez ("Sanchez"), Chief Diversity and Inclusion Officer with complaints about Foster. Plaintiffs allege that Blais and Sanchez were horrified by the allegations and gave Plaintiffs the process for filing a formal complaint through NU Human Resources ("HR").

On November 30, 2022, Plaintiffs submitted a complaint to HR that included allegations of toxic work environment, Foster discouraging players from seeking medical treatment, and Foster's derogatory and sexist comments regarding the female student manager. Plaintiffs allege that HR did not communicate with them regarding their complaint until January 2023.

EXHIBIT A

In January 2023, HR interviewed each plaintiff separately. Plaintiffs allege that Foster's toxicity escalated and when they reached out for support they were ignored or told to trust NU's process. Plaintiffs allege that NU only interviewed Plaintiffs, the trainer, and a volunteer coach rather than conduct a thorough and wide-ranging investigation. Plaintiffs allege that HR did not interview a single student athlete or medical professional regarding Plaintiffs' complaints. Plaintiffs allege that despite the investigation conducted by Rachel Velez ("Velez") and Tracy Marquette Gioria-Walker ("Walker"), they continued to face toxicity and abuse from Foster and the administration on several occasions. Although Plaintiffs take exception with the time NU took to conduct its investigation, Plaintiffs do acknowledge that shortly after the January interviews NU confirmed their claims.

In mid-February 2023, Velez sent an email to Plaintiffs stating that there was enough evidence to substantiate several of the claims and that Plaintiffs would receive a formal letter addressing the investigation. Plaintiffs allege that Holland attended the baseball team's first game, but then left after the first game allowing "all hell to break loose." (Plaintiffs do not elaborate on that description of "hell.") Plaintiffs allege that Foster publicly yelled at Strauss and revoked his authority to make decisions regarding pitchers even though he was the pitching coach. Plaintiffs do not allege that Foster was without authority to make pitching decisions.

On February 23, 2023, NU provided a letter to Plaintiffs stating that there was sufficient evidence to substantiate their claims. Plaintiffs allege that on that same day, Derrick Gragg ("Gragg"), NU's Director of Athletics, confirmed that none of the three Plaintiffs would be returning to NU's baseball program and that NU was in the process of hiring new coaches. The email went on to suggest a mediation to establish cohesion in the baseball program despite the fact that Plaintiffs were not going to continue with the program. Plaintiffs declined to participate in mediation. Plaintiffs allege that they were forced to become remote special contract workers to receive pay for the remainder of their contracts, while Foster remained as head coach. Plaintiffs allege that NU endorsed Foster's outrageous behavior for the 2022-2023 season, but then terminated Foster on July 13, 2023, three days after the highly publicized termination of football coach Patrick Fitzgerald.

The Court has considered Plaintiffs' complaint and the pending motion within the context of the relevant time frame and sequence of events. The Court considers the adverse actions Plaintiffs allege that establish their course of action, and does not weigh arguments that Plaintiffs attempt to advance for others who are not party to this matter. This is a workplace action involving an employer, a supervisor, and three employees. That is the context that the Court will address this matter.

Foster states that Plaintiffs were already in place when he was hired as head baseball coach. When Plaintiffs were hired may or may not be an issue as this matter proceeds, but it does not influence the Court's consideration of the arguments addressed herein. The Plaintiffs' employment agreements attached to the motion show that Strauss was hired on August 5, 2022 as an assistant baseball coach, and Beacom as Director of Operations for NU baseball, and Napoleon as an assistant baseball coach were hired on August 22, 2022. All three contracts expired on June 30, 2023.

In general terms, Plaintiffs allege that they were subject to verbal abuse and bullying by Foster from the very beginning of his tenure and that NU protected him.

The Complaint alleges breach of contract against NU (Count I), negligent hiring against NU and Gragg (Count II), negligent supervision against NU, Gragg, Holland, and Velez (Count III), negligence (willful and wanton) against Defendants (Count IV), negligent infliction of emotional distress against Defendants (Count V), intentional infliction of emotional distress against Foster (Count VI), *respondeat superior* (Count VII).

## STANDARD OF LAW

Pursuant to 735 ILCS 5/2-619.1, a party may file together a section 2-615 motion to dismiss, section 2-619 motion to dismiss, and 2-1005 motion for summary judgment. 735 ILCS 5/2-619.1; *Edelman v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164, (1st Dist. 2003). On a 2-619.1 motion, a court should entertain the section 2-615 motion first; the section 2-619 motion with affidavits filed in support should be brought only after a legally sufficient cause of action has been found. *Johannesen v. Eddins*, 2011 IL App (2d) 110108 ¶29.

In a 2-615 motion to dismiss, the movant challenges the legal sufficiency of the complaint or counterclaim based on certain defects or defenses apparent on the face of the allegations. *Beacham v. Walker*, 231 Ill. 2d 51, 57 (2008). In such a motion, all well-pled facts and their reasonable inferences must be taken as true and viewed in the light most favorable to the non-movant. *Jarvis v. S. Oak Dodge*, 201 Ill. 2d 81, 85 (2002). Illinois is a fact pleading jurisdiction; therefore, "a [claimant] must allege facts sufficient to bring a claim within a legally recognized cause of action." *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 355 (2004). Mere conclusions of law and unsupported conclusory factual allegations are insufficient to survive a 2-615 motion to dismiss. *Alpha Sch. Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 736 (1st Dist. 2009).

A section 2-619 motion to dismiss raises defects, defenses, or other affirmative matters that appear on the face of the complaint, or are established by external submissions, that defeat the plaintiff's claim. *Ball v. County of Cook*, 385 Ill. App. 3d 103, 107 (1st Dist. 2008). In doing so, the motion "admits the legal sufficiency of the [claimant's] allegations." *Miner v. Fashion Enters*, 342 Ill. App. 3d 405, 413 (1st Dist. 2003). The "affirmative matter" must be apparent on the face of the pleadings or be supported by affidavits or other evidentiary materials. *John Doe v. Univ. of Chi. Med. Ctr.*, 2015 IL App (1st) 133735, ¶ 37. An affirmative matter negates a cause of action completely or refutes crucial conclusions of law or material fact within the pleadings. *In re Estate of Schleker*, 209 Ill. 2d 456, 461 (2004). A court must take all well-pled facts and reasonable inferences as true, and it must construe all pleadings and supporting documents in the light most favorable to the non-movant. *Porter v. Decatur Mem. Hosp.*, 227 Ill. 2d 343, 353 (2008).

Although Illinois is a fact-pleading jurisdiction, Plaintiffs are required to allege only ultimate facts necessary to state a cause of action and are not required to set out all of the evidence. *People ex rel. Fabner v. Carriage Way West, Inc.*, 88 Ill. 2d 300, 308 (1981).

The purpose of a section 2-619 motion is to provide a means to dispose of issues of law or of easily proved issues of fact, with a reservation of jury trial as to disputed questions of fact. *Bloomingdale State Bank v. Woodland Sales Co.*, 186 Ill. App. 3d 227, 232 (2nd Dist. 1989).

## DISCUSSION

*Negligence and Negligent Infliction of Emotional Distress (Counts IV and V)*

Foster argues that the Illinois Workers Compensation Act's ("IWCA") exclusivity provisions for injuries suffered during the course of employment precludes Plaintiffs' claims. Foster argues that the Court cannot determine whether the IWCA can compensate Plaintiffs' claims as that determination can only be made by the Commission. Foster maintains that there are no amendments that could be made to rectify these deficiencies. Further, Foster maintains that he does not owe Plaintiffs any type of duty.

Sections of the IWCA bar an employee from bringing a common law cause of action against his or her employer unless the employee-plaintiff proves: (1) that the injury was not accidental; (2) that the injury did not arise from his or her employment; (3) that the injury was not received during the course of employment; or (4) that the injury was not compensable under the Act. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 463. The Court first looks to *Pathfinder Co. v. Industrial Com.* for guidance. In *Pathfinder* the Illinois Supreme Court found that an act is considered accidental if the injury is caused by something that is without design or was unforeseeable. *Pathfinder Co. v. Industrial Com.*, 62 Ill. 2d 556, 563 (1976). Because injuries intentionally inflicted by a co-worker are accidental from the employer's point of view, the employer has a right to consider that the injured employee's sole remedy against the employer will be under the IWCA. *Hunt-Golliday v. Metropolitan Water Reclamation Dist.*, 104 F.3d 1004, 1016 citing *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 463-464 (1990). The exclusivity provisions will not bar a common law cause of action against an employer, however, for injuries which the employer or its alter ego intentionally inflicts upon an employee or which were commanded or expressly authorized by the employer. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 464 (1990).

The IWCA's exclusivity provisions bar employees from bringing common law actions against their employers based solely upon the *respondeat superior* doctrine. *Hunt-Golliday v. Metropolitan Water Reclamation Dist.*, 104 F.3d 1004, 1017 citing *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 465 (1990).

As to the matter regarding whether Plaintiffs' claims are compensable under the IWCA, the Court looks to *McDonald v. Symphony Bronzeville Park, LLC*, 2022 IL 126511. As to whether the injuries asserted by Plaintiffs are compensable under the IWCA, the Court looks to *McDonald v. Symphony Bronzeville Park, LLC*, 2022 IL 126511. In *McDonald* the Illinois Supreme Court found that an injury is compensable under the IWCA when there was a "harmful change in the human organism- not just its bones and muscles, but its brain and nerves as well." *McDonald v. Symphony Bronzeville Park, LLC*, 2022 IL 126511, P42. "[T]he purpose of the Workmen's Compensation Act is to afford employees financial protection when their earning power is temporarily diminished or terminated due

to employment injures." *McDonald v. Symphony Bronzeville Park, LLC*, 2022 IL 126511, P42; see also *Laffoon v. Bell & Zoller Coal Co.*, 65 Ill. 2d 437, 446 (1976).

The Court notes that Plaintiffs maintain similar arguments as presented in their response in opposition to the other Defendants' motion to dismiss. The Court finds that questions still exist as to the application of the IWCA and it would be a premature determination to dismiss this matter pursuant to the IWCA. Foster may renew the same as an affirmative defense or reassert these arguments in a motion as discovery unfolds.

To state a legally sufficient claim of negligence, the complaint must allege facts establishing the existence of a duty of care owed by the defendants to the plaintiffs, a breach of that duty, and an injury proximately caused by that breach. *Iseberg v. Gross*, 227 Ill. 2d 78, 87 (2007), citing *Bajwa v. Metro. Life Ins. Co.*, 208 Ill. 2d 414, 421 (2004); *Hills v. Bridgeview Little League Ass'n*, 195 Ill. 2d 210, 228, 745 N.E.2d 1166, 253 Ill. Dec. 632 (2000). Whether a duty is owed is a question of law for the court to decide, while breach and proximate cause are factual matters for the jury. *Id.*, citing *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43-44, 809 N.E.2d 1248, 284 Ill. Dec. 302 (2004); *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 340, 798 N.E.2d 724, 278 Ill. Dec. 340 (2003); *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 525, 513 N.E.2d 387, 111 Ill. Dec. 944 (1987); *Pelham v. Griesheimer*, 92 Ill. 2d 13, 440 N.E.2d 96, 64 Ill. Dec. 544 (1982).

The injury to Plaintiffs required by the tort of negligence necessarily arose from the alleged actions of Foster. As set forth below, the Court finds that Plaintiffs have not pled damages for emotional distress. As such, the Court finds that Plaintiffs have not met the pleading requirements or negligence.

The pleading requirements for negligent infliction of emotional distress include: (1) the existence of a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury proximately caused by that breach. *See Brackett v. Galesburg Clinic Ass'n*, 293 Ill. App. 3d 867, 872 (3rd Dist. 1997), citing *Corgan v. Muehling*, 143 Ill. 2d 296, 306 (1991). "To state a cause of action for the tort of negligent infliction of emotional distress, a plaintiff must allege that the infliction of emotional distress arose out of the *negligent* acts of a defendant." *Id.* "Where the purported emotional distress has been caused by *intentional* acts committed by a defendant, the plaintiff does not state a cause of action for *negligent* infliction of emotional distress." *Id.*

The Court finds that Plaintiffs fail to sufficiently plead a cause for negligent infliction of emotional distress. It is clear that the tort does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041, P51; *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 463 (1990); *Public Finanace Corp. v. Davis*, 66 Ill. 2d 85, 89 (1978), citing Restatement (Second) of Torts, sec. 46, comment d (1965); see also *Hayes v. Ill. Power Co.*, 225 Ill. App. 3d 819, 826-27 (4th Dist. 1992). Plaintiffs' complaint is a recitation of what is not covered by the tort.

The Court finds that Plaintiffs fail to establish that they have suffered any damages. Whether the infliction of emotional distress is done negligently or intentionally there must still be a demonstration that the actions that are alleged to have inflicted the emotional

distress are so severe that no reasonable man could be expected to endure it. *See Schweihs v. Chase Home Fin., LLC,* 2016 IL 120041, P51. The Court notes that Plaintiffs have not alleged that they have been under the care of any medical professional so as to demonstrate the injuries or harm they have suffered due to Foster's actions. The Court finds that Plaintiffs fail to state a cause of action.

As such, the Court grants Foster's 2-615 motion to dismiss Counts IV and V without prejudice. Plaintiffs may replead if they can address the Court's findings. Foster's 2-619 motion to dismiss pursuant to the IWCA is denied.

*Intentional Infliction of Emotional Distress (Count VI)*

Foster argues that even if Plaintiffs' facts are true, they have failed to state a cause of action. Foster argues that what might be considered outrageous and extreme in some circumstances are not considered extreme or outrageous in an employment situation. Foster argues that in the context of a power five conference athletic team in a Division I program there are no allegations demonstrating extreme or outrageous behavior. Foster argues that Plaintiffs' allegations simply boil down to personality differences that can never rise to the level of intentional infliction of emotional distress ("IIED").

Illinois courts have held that mere threats are not enough to constitute an actionable intentional infliction of emotional distress claim. *Kolegas v. Heftel Broadcasting Corp.,* 154 Ill. 2d 1, 15 (1992). "The conduct must be extreme and outrageous. The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities. 'It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Public Finanace Corp. v. Davis,* 66 Ill. 2d 85, 89 (1978), citing Restatement (Second) of Torts, sec. 46, comment d (1965); see also *Hayes v. Ill. Power Co.,* 225 Ill. App. 3d 819, 826-27 (4th Dist. 1992).

The elements for the intentional infliction of emotional distress are (1) extreme and outrageous conduct, (2) intent by the defendant to cause, or a reckless disregard of the probability of causing emotional distress, (3) severe or extreme emotional distress suffered by the plaintiff, and (4) an actual and proximate causation of emotional distress by the defendant's outrageous conduct. Public Finance Corp. v. Davis, 66 Ill. 2d 85 (1976) (a debtor lawfully attempting to collect a debt from plaintiff did not inflict actionable emotion distress).

Plaintiffs again maintain similar arguments as presented in their opposition to the other Defendants' motion to dismiss.

In Illinois, the tort of intentional infliction of emotional distress was first recognized in *Knierim v. Izzo,* 22 Ill. 2d 73, 87, 174 N.E.2d 157 (1961), in which a widow was permitted to maintain such an action against the person who had killed her husband. It was not until 1976, however, that this court (relying on Restatement (Second) of Torts § 46 (1965))

outlined the requirements for the tort. *Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041, P49-P51 *citing Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 90, 360 N.E.2d 765, 4 Ill. Dec. 652 (1976).

Although the tort originally arises from a killing, the standard has evolved to include other actions. First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress. *Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041, P49-P51. Third, the conduct must in fact cause severe emotional distress. *Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041, P49-P51 *citing McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E.2d 806, 127 Ill. Dec. 724 (1988) (citing *Public Finance*, 66 Ill. 2d at 90).

The Court finds Plaintiffs' allegations do not approach the pleading requirements for IIED. Plaintiffs do not allege an actual injury suffered, they do not recite any medical or psychological treatment or counseling that they have engaged in as support for their damages. The Plaintiffs do not recite that they have been unemployed or have been unable to find employment as a result of Foster's conduct. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and duration of the distress are factors to be considered in determining its severity." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 276-277 (2003).

The Court must consider the pleadings in the context of the positions held by Plaintiffs and the context of the work environment. The question posed is could no reasonable college baseball coach be expected to endure what Plaintiffs experienced? The Court finds that Plaintiffs fail to allege that Foster's conduct was so unbearable and invasive that they could not bear to withstand it any longer. Further, as the Court found above, Plaintiffs have not sufficiently pled any damages as a result of Foster's actions.

The Court grants Foster's motion to dismiss Count VI without prejudice. As this was an initial pleading, Plaintiffs are given leave to replead if they can address the Court's comments.

## ORDER

It is ordered:

(1) Foster's Motion to Dismiss is granted in part and denied in part;
   a. Foster's motion to dismiss Count VI under 2-615 is granted without prejudice;
   b. Foster's 2-619 motion to dismiss is denied;
(2) Plaintiffs are given 28 days, until May 17, 2024, to amend the Complaint
(3) This matter is continued to May 28, 2024 at 9:00 a.m. for status on the pleadings and for a proposed discovery schedule

Judge Daniel J. Kubasiak

APR 26 2024

ENTERED, Circuit Court - 2072

Judge Daniel J. Kubasiak, No. 2072