# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ADRIAN SANTIAGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2024-CV-2058 |
| v. | ) | |
| | ) | Judge Mary M. Rowland |
| NORTHWESTERN UNIVERSITY, | ) | |
| JAMES THOMAS FOSTER, MONIQUE | ) | |
| HOLLAND, and RACHEL VELEZ, | ) | |
| | ) | |
| Defendants. | ) | |

## THE NORTHWESTERN DEFENDANTS' MEMORANDUM OF LAW IN
## SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Reid J. Schar
Nicole A. Allen
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654
Phone: (312) 222-9350
rschar@jenner.com
nallen@jenner.com

*Counsel for Defendants Northwestern University, Monique Holland, and Rachel Velez*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................3

LEGAL STANDARD...........................................................................................................6

ARGUMENT .......................................................................................................................6

I.  This Court Should Dismiss Plaintiff's IMWL and FLSA Claims (Counts I-II).......................6

II.  This Court Should Dismiss Plaintiff's IWPCA Claim (Count III) Because He Had No Employment Agreement Entitling Him to the Amounts He Claims He Is Owed. .................10

III. The Court Should Dismiss Plaintiff's Tort Claims (Counts IV-VII) for Failure to State a Valid Claim. ....................................................................................................................12

A.  Plaintiff Does Not State a Claim for Negligent Hiring (Count IV) Against Northwestern...................................................................................................................12

1.  Plaintiff Does Not Sufficiently Allege Northwestern's Actual or Constructive Knowledge of Foster's Alleged Unfitness...................................................................12

2.  Plaintiff Does Not Sufficiently Allege Foster's "Particular Unfitness" or that it Proximately Caused Injury. ........................................................................................14

B.  Plaintiff Does Not State a Claim for Negligent Supervision (Count V)............................16

1.  Plaintiff Does Not Sufficiently Allege Negligent Supervision...................................16

2.  Plaintiff Does Not Sufficiently Allege Proximate Causation. ....................................17

3.  Plaintiff Does Not Sufficiently Allege that Holland and Velez Had a Duty to Supervise Foster........................................................................................................18

C.  Plaintiff Does Not State a Claim for Negligence (Count VI) or Willful and Wanton Conduct (Count VII). ...........................................................................................20

IV. This Court Should Dismiss Plaintiff's Tort Claims (Counts IV-VIII) As Barred by the IWCA.................................................................................................................................22

V.  Northwestern Is Not Liable Based on *Respondeat Superior* (Count VIII)............................24

CONCLUSION....................................................................................................................24

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alam v. Miller Brewing Co.*,
709 F.3d 662 (7th Cir. 2013) ................................................................6

*Albright v. Am. Greetings Corp.*,
2020 WL 3303001 (N.D. Ill June 18, 2020) .........................................23

*Allendorf v. Redfearn*,
2011 IL App (2d) 110130 .................................................................20, 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................6

*Atkins v. City of Chi.*,
631 F.3d 823 (7th Cir. 2011) .................................................................6

*Barr v. Cunningham*,
2017 IL 120751 ......................................................................................22

*Barry v. City of Chi.*,
2021 IL App (1st) 200829 .......................................................................15

*Beacom v. Northwestern University*,
Case No. 2023 L 8072 (Ill., Cir. Ct. Cook Cnty.) ..................................1

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................6

*Berger v. NCAA*,
843 F.3d 285 (7th Cir. 2016) .............................................................7, 9

*Bethany Pharmacal Co., Inc. v. QVC, Inc.*,
241 F.3d 854 (7th Cir. 2001) .................................................................3

*Brown v. BCG Att'y Search*,
2013 WL 6096932 (N.D. Ill. Nov. 20, 2013) ........................................10

*Brown v. New York City Dept. of Educ.*,
2012 WL 6186496 (S.D.N.Y. Dec. 12, 2012), *aff'd*, 755 F.3d 154 (2d Cir.
2014) .......................................................................................................9

*Callahan v. City of Chi.*,
78 F. Supp. 3d 791 (N.D. Ill. 2015), *aff'd*, 813 F.3d 658 (7th Cir. 2016) ............ 6-7

*Campbell v. A.C. Equip. Servs. Corp., Inc.*,
   242 Ill. App. 3d 707 (4th Dist. 1993) ............................................................................21, 22

*Carmona v. 4-Bros. Transp. LLC*,
   2024 WL 1767572 (N.D. Ill. Apr. 24, 2024) ........................................................................18

*Davis v. Potter*,
   301 F. Supp. 2d 850 (N.D. Ill. 2004) ......................................................................................5

*Doe v. La Magdalena II, Inc.*,
   585 F. Supp. 2d 984 (N.D. Ill. 2008) ....................................................................................23

*Enger v. Chi. Carriage Cab Corp.*,
   812 F.3d 565 (7th Cir. 2016) ................................................................................................11

*Fallon v. Indian Trail Sch.*,
   148 Ill. App. 3d 931 (2d Dist. 1986) .....................................................................................13

*Glatt v. Fox Searchlight Pictures, Inc.*,
   811 F.3d 528 (2d Cir. 2016) ....................................................................................................9

*Glickman v. Main-Niles Ass'n of Special Recreation*,
   440 F. Supp. 3d 946 (N.D. Ill. 2020) ....................................................................................18

*Gress v. Lakhani Hospitality, Inc.*,
   2018 IL App (1st) 170380 ......................................................................................................15

*Helix Energy Sols. Grp., Inc. v. Hewitt*,
   598 U.S. 39 (2023) ...................................................................................................................6

*Herrera v. Di Meo Bros., Inc.*,
   529 F. Supp. 3d 819 (N.D. Ill. 2021) ....................................................................................16

*Hill v. Watson*,
   2014 WL 440371 (N.D. Ill. Feb. 4, 2014) ...........................................................................7, 9

*Hoffman v. Roadlink Workforce Sols., LLC*,
   2014 WL 3808938 (N.D. Ill. Aug. 1, 2014) ..........................................................................11

*Hollins v. Regency Corp.*,
   867 F.3d 830 (7th Cir. 2017) ..................................................................................................9

*Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chi.*,
   104 F.3d 1004 (7th Cir. 1997) ...........................................................................................23, 24

*Mack Indus., Ltd. v. Vill. of Dolton*,
   2015 IL App (1st) 133620 .......................................................................................................21

*Martin v. Siciliano*,
    2023 WL 3320428 (N.D. Ill. May 9, 2023) ........................................................18

*Palar v. Blackhawk Bancorporation, Inc.*,
    2013 WL 5366124 (C.D. Ill. Sept. 25, 2013) ....................................................10

*Peters v. Riggs*,
    2015 IL App (4th) 140043 ................................................................................21

*Phillips v. Exxon Mobil Corp.*,
    2018 WL 3458286 (N.D. Ill. July 18, 2018)......................................................23

*Pryor v. Chi. Transit Auth.*,
    2022 IL App (1st) 200895..................................................................................21

*Purdham v. Fairfax Cnty. Sch. Bd.*,
    637 F.3d 421 (4th Cir. 2011) ..............................................................7, 8, 9, 10

*Robinson v. Roney Oatman, Inc.*,
    1999 WL 1102694 (N.D. Ill. Nov. 23, 1999) ....................................................19

*Santos v. Boeing Co.*,
    2004 WL 1384724 (N.D. Ill. May 11, 2004) .....................................................23

*Schumann v. Collier Anesthesia, P.A.*,
    803 F.3d 1199 (11th Cir. 2015) ...........................................................................9

*Todaro v. Twp. of Union*,
    40 F. Supp. 2d 226 (D.N.J. 1999) .......................................................................8

*Tony & Susan Alamo Found. v. Sec'y of Lab.*,
    471 U.S. 290 (1985).............................................................................................7

*Turner v. M.B. Fin. Bank*,
    2017 WL 4390367 (N.D. Ill. Oct. 3, 2017).......................................................24

*Van Horne v. Muller*,
    185 Ill. 2d 299 (1998) .........................................................................12, 14, 15

*Vann v. Dolly, Inc.*,
    2020 WL 902831 (N.D. Ill. Feb. 25, 2020) ......................................................11

*Walling v. Portland Terminal Co.*,
    330 U.S. 148 (1947).............................................................................................7

*Warnell v. Ford Motor Co.*,
    1998 WL 748328 (N.D. Ill. Oct. 21, 1998)........................................................13

*Williamson v. Curran*,
    714 F.3d 432 (7th Cir. 2013) ........................................................5

*Ziccarelli v. Phillips*,
    2013 WL 5387864 (N.D. Ill. Sept. 25, 2013) ...............................19, 20

**Statutes**

820 ILCS 115/2 ...........................................................................10, 11

820 ILCS 305/11 ..............................................................................23

820 ILCS 305/5(a) ............................................................................23

29 U.S.C. § 203(e)(4)(A) .................................................................10

29 U.S.C. § 206(a)(1)(C) ...................................................................6

29 U.S.C. § 207(a)(1) .........................................................................6

**Other Authorities**

29 C.F.R. § 553.106(a) ....................................................................10

29 C.F.R. § 553.106(e) ....................................................................10

56 Ill. Admin. Code 300.450 ...........................................................11

DOL Opinion Letter FLSA2005-51, 2005 WL 3308622 (Nov. 10, 2005)..................................10

DOL Opinion Letter FLSA2008-16, 2008 WL 5483056 (Dec. 18, 2008) ...................................10

**INTRODUCTION**

Plaintiff Adrian Santiago, a volunteer assistant baseball coach at Northwestern University during the 2022-2023 baseball season, has filed an amended complaint against the University, University employees Monique Holland and Rachel Velez, and the University's former head baseball coach James Foster. ECF No. 24 ("Am. Compl."). As he did in his original complaint (ECF No. 1), Plaintiff alleges that the University undercompensated him and that Foster, his supervisor, created a toxic work environment by yelling, cursing, and engaging in other so-called "unprofessional" behavior. *See, e.g.*, Am. Compl. ¶¶ 1-2, 50, 215. Based on this and similar alleged conduct, Plaintiff demands compensatory and punitive damages for alleged violations of state and federal wage laws (Counts I-III) and negligence in hiring and supervising Foster (Counts IV-VII).

In May 2024, the University, Holland, and Velez (collectively, the "Northwestern Defendants") moved to dismiss Plaintiff's initial complaint. ECF No. 16. The Northwestern Defendants' motion was filed on the heels of a state court opinion dismissing all counts in parallel litigation brought by other Northwestern baseball coaches against these same defendants, based on substantially similar allegations. *See* Order, *Beacom v. Northwestern University*, Case No. 2023 L 8072 (Ill., Cir. Ct. Cook Cnty. Apr. 26, 2024) (attached as Exhibit A). In response, Plaintiff voluntarily amended his complaint in July 2024. None of the amendments fix the fundamental deficiencies in Plaintiff's pleading. While adding color to some allegations—for example, by identifying University employees who worked with Foster and the National Collegiate Athletics Association ("NCAA") rules Foster purportedly asked his staff to violate—Plaintiff fails to correct

the core issues that the Northwestern Defendants identified in their initial motion to dismiss and reiterate here.[1]

First, Plaintiff's wage claims under the Illinois Minimum Wage Law ("IMWL") (Count I) and federal Fair Labor Standards Act ("FLSA") (Count II) fail because Plaintiff was a volunteer, and volunteers are not entitled to lost wages or overtime under the FLSA or IMWL. Plaintiff's claim under the Illinois Wage Payment and Collection Act ("IWPCA") (Count III) likewise fails because he did not earn wages pursuant to an employment contract or agreement as required for the IWPCA to apply.

Second, Plaintiff's claims for negligent hiring (Count IV), negligent supervision (Count V), negligence (Count VI), and willful and wanton conduct (Count VII) fail for the reasons articulated by the state court in *Beacom*. Plaintiff does not plead facts sufficient to conclude that anyone at Northwestern was or should have been aware of Foster's purported misconduct before Northwestern hired him. Plaintiff does not plead a connection between Foster's alleged misconduct at other schools and the injuries Plaintiff claims to have suffered. He does not plead facts sufficient to establish that Holland or Velez had a duty to supervise Foster. And he does not sufficiently plead willful and wanton conduct: conduct that shocks the conscience and that involves a risk of serious physical injury.

Third, even if Plaintiff could overcome these deficiencies, his tort claims (Counts IV-VII) would be barred by the Illinois Workers' Compensation Act ("IWCA"), which provides the

---

[1] The Court's May 2, 2024 minute entry states: "Defendants' motions to dismiss limited to 30 pages." ECF No. 15. The Northwestern Defendants interpret the authorization to extend to the present motion to dismiss. If the Court directs, however, the Northwestern Defendants will file a separate motion to extend the page limit.

exclusive remedy for accidental injuries allegedly sustained in the workplace, including the emotional injuries Plaintiff claims here.

Because each of Plaintiff's underlying claims are deficient, his attempt to base a claim on a *respondeat superior* theory (Count VIII) also should be dismissed. And because further amendment would be futile, particularly since Plaintiff has once already amended his original complaint, Plaintiff's claims should be dismissed with prejudice. *See Bethany Pharmacal Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001).

## BACKGROUND

Plaintiff alleges that he joined Northwestern's coaching staff as an unpaid volunteer. Am. Compl. ¶¶ 8, 34, 66, 128. According to Plaintiff, he agreed to coach in an unpaid role and without an employment contract in hopes that he eventually would be provided what he describes as an "opportunity to thrive as more than a 'volunteer coach' with the team," for example, as a "first or second assistant." *Id*. ¶ 66. Plaintiff reported to Foster, who was head baseball coach. *Id*. ¶ 49.

Plaintiff alleges that during Plaintiff's tenure as a volunteer coach, Foster subjected Plaintiff and others to "abuse and bullying" that consisted of the following:

- "[V]olatile, unpredictable behavior with frequent blow-ups," foul language, and yelling, which Plaintiff found "unprofessional and demean[ing]";

- Inappropriate comments about a student-athlete's ethnicity, such as calling one player the "Chinese kid";

- "Paranoia" and efforts to "manipulate and pit staff against one another"; and

- Requests that staff members engage in conduct Plaintiff perceived as violating NCAA rules, such as having a volunteer like Plaintiff engage in recruiting activities.

*Id.* ¶¶ 50(a)-(h), 57.

Plaintiff claims that Northwestern is responsible for Foster's conduct because the University "insufficiently vetted" Foster and hired him "in a rushed and inadequate process." *Id*.

¶¶ 23, 157. According to Plaintiff, Northwestern did not, prior to hiring Foster, consult the men's soccer coach or mental fitness coach—two University employees "staffed at West Point at the same time as Foster'"—or the women's softball coach, who was a student-athlete with Foster at Providence College. *Id.* ¶¶ 24-25. Plaintiff does not identify anything specific that these individuals would have told the University about Foster—much less allege that the information known to these individuals about Foster was negative. Plaintiff also claims, without support, that the Northwestern Defendants breached a duty of care purportedly imposed by the Northwestern Staff Handbook "when they failed to ensure that Foster was not engaging in 'unacceptable behavior.'" *Id.* ¶¶ 182-185, 196-198, 210-214.

Several former baseball coaches, but not Plaintiff, reported Foster's conduct to Northwestern's Human Resources ("HR") Department in October 2022 and separately reported Foster to the NCAA. *Id.* ¶ 58. Plaintiff concedes that HR investigated the complaint—indeed, Plaintiff says he personally met with HR staff in connection with the investigation. *Id.* ¶ 59. According to February 22, 2023 letters from Northwestern to the complainants, which Plaintiff repeatedly cites, *see id.* ¶¶ 64-65, 164-65, 186, 199, 212, HR's investigation was "thorough" and consisted of "witness interviews and a review of relevant information and documents," after which HR found sufficient evidence that Foster violated University policy.[2] *See* Northwestern Letters to

---

[2] Specifically, the University found that Foster "engaged in bullying and abusive behavior, made an inappropriate comment regarding a female staff member, and spoke negatively about his staff to other staff members," but deemed the evidence "insufficient" to "substantiate [the complainants'] remaining allegations," including that Foster made racially insensitive comments, requested that staff violate NCAA rules, and attempted to deny students appropriate medical care. Ex. B.

Michael Napoleon and Jon Strauss (Feb. 22, 2023) (attached as Exhibit B).[3] In addition to setting forth the University's investigative findings, the letters advised the complainants that the findings would be shared with Athletics Department leadership to take remedial action. *Id.*

Plaintiff alleges that the baseball coaches who complained to HR about Foster (Michael Napoleon, Jon Strauss, and Christopher Beacom) "became remote special contract workers at Northwestern" and later "lost their positions." Am. Compl. ¶ 56. In their absence, Plaintiff claims, he was assigned their duties (program operations, pitching strategy, and recruiting of potential student athletes), which, he says, clearly fell outside the duties of a "volunteer coach." *Id.* ¶¶ 29-45. As a result, "starting in November 2022, Plaintiff was working no less than 50 hours per week." *Id.* ¶ 119. Plaintiff "continued" on as a volunteer but was "fed assurances by Foster that Plaintiff could be hired next season." *Id.* ¶ 71.

Plaintiff alleges that in March 2023, he approached Foster and Northwestern about "receiving pay for the three full-time coaching jobs he was now performing." *Id.* ¶ 72. Plaintiff admits Northwestern did *not* respond by making him a paid employee: Foster told Plaintiff he "was caught up in administrative bullshit," and Velez told him they were "working it out." *Id.* ¶ 73. After this discussion, Northwestern allegedly made two $5,000 stipend payments to Plaintiff (which Plaintiff says is "less than what any other coach or the Director of Operations made under their employment contracts") but retained him as a volunteer without an employment agreement. *Id.* ¶¶ 78, 88.

---

[3] It is well-established that the "Court may … consider documents referred to in a plaintiff's complaint and attached to a motion to dismiss if they are central to the plaintiff's claim, even if the plaintiff did not attach them to his complaint." *Davis v. Potter*, 301 F. Supp. 2d 850, 856 (N.D. Ill. 2004); *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (same). The Northwestern Defendants therefore attach the February 22, 2023 letters to this motion to dismiss and ask the Court to consider them in assessing Plaintiff's allegations regarding the investigation and its aftermath.

In June 2023, after it purportedly became clear to Plaintiff that he would not be elevated to a paid role as a pitching coach, he left Northwestern. *Id.* ¶¶ 93-95. Plaintiff claims reputational harm as a result of his resignation: He must "explain to future employers why he was forced to step away from his post at a prestigious university like Northwestern" and "explain away to future employers his unavoidable association with Foster's toxic and unethical program." *Id.* ¶ 106.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted when the complaint fails to state a facially plausible and legally valid claim for relief—that is, it fails to "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A court need not accept as true legal conclusions, conclusory statements, or threadbare recitals of the elements. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013). And if a plaintiff pleads facts that show he has no claim, the claim must be dismissed. *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011).

## ARGUMENT

### I.     This Court Should Dismiss Plaintiff's IMWL and FLSA Claims (Counts I-II).

This Court should dismiss Plaintiff's IMWL and FLSA claims because Plaintiff, as a matter of law, was not an employee of Northwestern.

The FLSA requires that an employer pay its "employees" a minimum wage, 29 U.S.C. § 206(a)(1)(C), and pay overtime at 1.5 times the employee's hourly rate, *id.* § 207(a)(1). *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 44 (2023) (detailing FLSA requirements). The IMWL, interpreted coextensively with the FLSA, requires the same. *Callahan v. City of Chi.*, 78

F. Supp. 3d 791, 821 (N.D. Ill. 2015) ("same analysis" applies to FLSA and IMWL claims), *aff'd*, 813 F.3d 658 (7th Cir. 2016).

A precondition to these obligations, however, is that Plaintiff satisfy his burden of establishing that he was an "employee" of Northwestern, as only compensation for employees is governed by the laws' minimum-wage provisions. *Walling v. Portland Terminal Co*., 330 U.S. 148, 150-51 (1947); *see also Berger v. NCAA*, 843 F.3d 285, 290 (7th Cir. 2016) (plaintiff bears the burden of establishing his status as an employee and entitlement to compensation). An employee for purposes of the FLSA and IMWL is an individual who works in contemplation of compensation as a result of an "express[] or implied[] agree[ment] to pay them compensation." *Walling*, 330 U.S. at 151-52; *see also Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 306 (1985). By contrast, a volunteer who works without a compensation agreement generally is not an employee. *See Hill v. Watson,* 2014 WL 440371, at *1 (N.D. Ill. Feb. 4, 2014) (volunteer intern with athletic department was not employee). The definition of employee is limited in this way for good reason: The FLSA was "not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage [or pleasure] on the premises of another," as such a broad interpretation would run counter to Congress' intent and threaten "[o]rdinary volunteerism." *Tony & Susan Alamo Found.*, 471 U.S. at 300, 303.

Plaintiff does not meet the definition of employee: By his own admission, Plaintiff was a volunteer who worked without any explicit or implicit agreement he would be compensated. *See Purdham v. Fairfax Cnty. Sch. Bd.*, 637 F.3d 421, 428 (4th Cir. 2011) (explaining that the question of whether an individual is a volunteer or employee "is a matter of law to be determined by the court"). Like his original complaint, Plaintiff's amended complaint candidly—and repeatedly— concedes that he was hired as a "volunteer." Am. Compl. ¶¶ 8, 29-34, 50, 63, 66-67, 76-77, 79,

85, 88, 90. He admits he had no compensation agreement with Northwestern and laments he was never made one of the "*paid* members of the baseball staff." *Id.* ¶ 55. He admits he worked numerous "unpaid" positions on the team. *Id*. ¶ 128. And while he claims he was promised a paid coaching position in a *future* baseball season, *id*. ¶¶ 73, 91, 112, his allegations do not establish he reasonably expected or was promised remuneration for the services rendered during *the 2022-23 baseball season*—the services for which he seeks compensation, *see Todaro v. Twp. of Union*, 40 F. Supp. 2d 226, 230-31 (D.N.J. 1999) ("[A] person who performs services in the face of . . . policy that specifies such services will be unpaid, yet who nevertheless persists in 'expecting' to receive compensation, should not be permitted to satisfy the definition of 'employee' simply by unreasonably insisting that he has a subjective expectation of receiving wages."). In fact, because Plaintiff was a volunteer coach, the NCAA prohibited Plaintiff from receiving compensation. Am. Compl. ¶ 77.

Under these alleged facts, assumed to be true for purposes of the motion to dismiss, Plaintiff was not an employee who worked in contemplation of compensation.

The Fourth Circuit's opinion in *Purdham*, 637 F.3d 421, is illustrative. There, a public school's golf coach worked 400 to 450 hours a year, instructing the team, coordinating schedules, and overseeing fundraising. *Id.* at 424. The school district reimbursed the coach for expenses and provided a stipend, *id.* at 425, and the coach sued under the FLSA for missing wages, *id.* at 426. The district court ruled for the school, holding that the coach was a "volunteer," not an employee, *id.*, and the Fourth Circuit affirmed, *id.* at 428. The appellate court reasoned that the case "present[ed] a classic example of an individual who is motivated, in significant part, by humanitarian and charitable instincts"—namely, "his long-standing love of golf and his dedication to his student athletes." *Id.* at 429. That dedication is part of the culture of student athletics, the

court explained, for which coaches often volunteer their service without expectation of compensation. *Id.*; *cf. Berger*, 843 F.3d at 293 (student-athletes are not employees, including because athletes participate in sports "for reasons wholly unrelated to immediate compensation"); *Hill*, 2014 WL 440371, at *2 (dismissing FLSA counts where plaintiff was unpaid intern for athletic department).

So too here. Plaintiff alleges that he became a volunteer coach because he was motivated by his passion for baseball and collegiate athletics, and not by economic considerations. *See, e.g.*, Am. Compl. ¶ 95 (describing the volunteer position as "a 'dream opportunity' to 'represent [his] hometown school'"). He received an advantage for his service by developing coaching skills, making himself more marketable in the coaching pool, and positioning himself to become Foster's "first or second assistant," *id*. ¶ 66, or the team "pitching coach," *id*. ¶ 91. In this way, Plaintiff's volunteer coaching position resembled an internship or fellowship, the benefits of which inure to the volunteer.[4] *See Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 535 (2d Cir. 2016) (listing factors relevant to whether an unpaid intern is an employee and noting that "[w]hen properly designed," unpaid interns are the primary beneficiaries of the relationship); *Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199, 1211 (11th Cir. 2015) (similar); *Hollins v. Regency Corp.*, 867 F.3d 830, 836 (7th Cir. 2017) (holding that cosmetology students were not employees where they received "licensing hours and academic credit for their time and effort").

Plaintiff's alleged receipt of two $5,000 stipends does not alter this analysis. The public employee context provides an analogy. In that context, Congress created an exemption to the

---

[4] Similarly, Plaintiff's allegedly diverse job responsibilities support, rather than undermine, the conclusion that he was a volunteer. *See, e.g.*, *Brown v. N.Y.C. Dep't of Educ.*, 2012 WL 6186496, at *3 (S.D.N.Y. Dec. 12, 2012) ("[T]he fact that [plaintiff] performed so many different types of tasks suggests that he was a volunteer. If [plaintiff] held a position as an employee, his tasks would be limited to those in his job classification."), *aff'd*, 755 F.3d 154 (2d Cir. 2014).

FLSA's coverage for "any individual who volunteers to perform services for a public agency." 29 U.S.C. § 203(e)(4)(A). An individual can be a "volunteer[ ]" under the statutory exemption even if he receives a fee, so long as the fee is nominal, not a substitute for compensation, and not tied to productivity. *See* 29 C.F.R. § 553.106(a) (volunteers may be paid "expenses, reasonable benefits, a nominal fee, or any combination thereof, for their service without losing their status as volunteers"); 29 C.F.R. § 553.106(e) (fee cannot be "a substitute for compensation and must not be tied to productivity"). A fee is "nominal," in turn, if it does not exceed 20% of what an employer "would otherwise pay to hire a coach or advisor for the same services." DOL Opinion Letter FLSA2005-51, 2005 WL 3308622, at *3 (Nov. 10, 2005); *see also* DOL Opinion Letter FLSA2008-16, 2008 WL 5483056 (Dec. 18, 2008).

Again, *Purdham* offers a helpful comparison. The coach in *Purdham*, like Plaintiff, received a stipend for his work but remained a volunteer because the stipend was far less than the salary of a full-time employee, it was not tied to hours coached, and the coach remained primarily motivated by his commitment to the game. 637 F.3d at 425, 429. Here, too, Plaintiff alleges he received only two $5,000 payments, far less than 20% of the $100,000 salary he claims a pitching coach would make. Am. Compl. ¶¶ 78, 81, 83-84, 91.

## II. This Court Should Dismiss Plaintiff's IWPCA Claim (Count III) Because He Had No Employment Agreement Entitling Him to the Amounts He Claims He Is Owed.

Plaintiff's claim that Northwestern violated the IWPCA by failing to pay him wages for services he performed fails for the same reason as his IMWL and FLSA claims: The IWPCA protects only "employees," 820 ILCS 115/2, and Plaintiff was not an employee of Northwestern. *See generally Brown v. BCG Att'y Search*, 2013 WL 6096932, at *3 (N.D. Ill. Nov. 20, 2013) (where plaintiff's FLSA claim failed, so did his IWPCA claim); *Palar v. Blackhawk Bancorporation, Inc.*, 2013 WL 5366124, at *7 (C.D. Ill. Sept. 25, 2013) (similar).

Even if he was an "employee," however, the Court must dismiss Plaintiff's IWPCA claim because he did not have a contract or agreement entitling him to the wages that he claims he is owed. The IWPCA defines "wages" narrowly, as "compensation owed an employee by an employer *pursuant to an employment contract or agreement* between the 2 parties." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016) (quoting 820 ILCS 115/2) (emphasis added). In Illinois, an agreement requires "manifestation of mutual assent on the part of two or more persons." 56 Ill. Admin. Code 300.450; *see also Hoffman v. Roadlink Workforce Sols., LLC*, 2014 WL 3808938, at *4-5 (N.D. Ill. Aug. 1, 2014). Thus, "[a]bsent an agreement to pay the [p]laintiff[ ] a certain wage, the [p]laintiff['s] IWPCA claims cannot proceed." *Vann v. Dolly, Inc.*, 2020 WL 902831, at *4 (N.D. Ill. Feb. 25, 2020) (dismissing IWPCA claim because the asserted agreement "[did] not specify a certain agreed upon rate of pay").

Plaintiff's own allegations establish that he had no contract or agreement. By his own account, he began work as a volunteer coach without any agreement to be paid. Am. Compl. ¶¶ 29-34. Plaintiff himself acknowledges that "Northwestern failed to provide [him] with an employment contract that paid him for his full-time job responsibilities." *Id*. ¶ 88.

After Plaintiff allegedly took on additional responsibilities, he purportedly approached Foster and Northwestern about "receiving pay for the three jobs he was now performing," *id*. ¶ 72—but this only underscores that he had no agreement prior to that time. Velez allegedly responded by promising to "work[ ] it out," *id*. ¶ 73, and Northwestern allegedly later paid Plaintiff two $5,000 stipends, *id*. ¶ 78. But neither Plaintiff's inquiry nor Northwestern's response reflects mutual assent to pay Plaintiff something *more*: He does not allege that any of the Northwestern Defendants promised to pay him *additional* money that he is still owed. If anything, Plaintiff's

inquiry, followed by the payments, reflects an implicit agreement Plaintiff would be paid only the two $5,000 stipends he says he received. His IWPCA claim therefore must be dismissed.

III. **The Court Should Dismiss Plaintiff's Tort Claims (Counts IV-VII) for Failure to State a Valid Claim.**

A. **Plaintiff Does Not State a Claim for Negligent Hiring (Count IV) Against Northwestern.**

A claim for negligent hiring requires that (1) the "employee had a particular unfitness for the position so as to create a danger of harm to third persons"; (2) such "particular unfitness" was or should have been known to the employer at the time the employee was hired; and (3) the unfitness proximately caused injury. *Van Horne v. Muller*, 185 Ill. 2d 299, 311 (1998).

The state court in *Beacom* dismissed complaints against the Northwestern Defendants by Plaintiffs' fellow baseball coaches, based on a similar set of alleged facts, because those plaintiffs failed to allege that any of the defendants "had actual knowledge of any prior misconduct committed by Foster" or that "a more proactive approach" would have revealed such misconduct. Ex. A at 8. This Court should do the same.

1. **Plaintiff Does Not Sufficiently Allege Northwestern's Actual or Constructive Knowledge of Foster's Alleged Unfitness.**

To start, Plaintiff has not alleged that Northwestern actually knew of any prior incident involving Foster that put it on notice of Foster's purported bullying and abuse of his coaching staff. Instead, Plaintiff's theory is that Northwestern "insufficiently vetted" Foster and that a "proper investigation" would have revealed relevant information about Foster. Am. Compl. ¶¶ 17, 23.

Like his original complaint, Plaintiff's amended complaint asserts that a "proper investigation" would have revealed the following: that certain unspecified and unsubstantiated "allegations of abuse and misconduct" were made against Foster while he was a coach at Army West Point, prior to being hired by Northwestern; that there was a "celebratory Zoom" when he

left that coaching position; that a student of Foster's at West Point pitched when "[h]e wasn't feeling good"; and that, while Foster was the head baseball coach at the University of Rhode Island ("URI"), a player died after a team workout. *Id*. ¶¶ 17, 158, 161, 163. Plaintiff lists three employees within the Northwestern Athletic Department who previously worked or trained with Foster and who, according to Plaintiff, "easily could have offered insight into Foster's coaching abilities, personality, and reputation." *Id.* ¶¶ 24-25. Plaintiff does not specify what "insight" these individuals would have offered, or allege that their information about Foster would have been negative, but nonetheless summarily concludes that the University was negligent in not consulting with them during the purportedly "rushed" process of hiring Foster. *Id.* ¶¶ 24-26.

Plaintiff's theory fails as a matter of law. As the *Beacom* court recognized, a "negligent hiring claim cannot be based on a general, common law duty to investigate employees," if such a duty even exists. Ex. A at 7; *accord Warnell v. Ford Motor Co.*, 1998 WL 748328, at *3-4 (N.D. Ill. Oct. 21, 1998) (applying Illinois law); *Fallon v. Indian Trail Sch.*, 148 Ill. App. 3d 931, 935-36 (2d Dist. 1986) (affirming dismissal of complaint because "allegations that [a] school district failed to investigate" are insufficient to state a negligent hiring claim). Nor does the fact that an employee's hiring was purportedly rushed (Am. Compl. ¶¶ 21-28) mean that it was negligent. Plaintiff instead needs to plead, with specificity, that a different hiring process would have revealed Foster's purported misconduct.

The amended complaint does not do so. Plaintiff does not specify what information relevant to his claims Northwestern would have identified through due diligence, even if it had consulted the University employees who worked or trained with Foster at other institutions. Plaintiff continues to rely on online articles cited in his initial complaint, none of which are helpful to him. One was published *after* Foster was hired and thus could not have informed Northwestern's

hiring decision. Am. Compl. ¶ 158 n.13. The other two are not specific to Foster: The 2016 article about the URI incident does not mention Foster and states the player died from an unspecified medical emergency, *id.* ¶¶ 18 n.1, 163; the 2018 story praises a player who pitched in a tournament while "just getting over being sick" and in no way criticizes Foster, *id.* ¶ 161 n.14.

Based on these same alleged facts, the state court in *Beacom* concluded that the *Beacom* plaintiffs had not established that "a more proactive approach" by the Northwestern Defendants would have revealed Foster's alleged unfitness, or that the Northwestern "[D]efendant[s] had actual knowledge of any prior misconduct committed by Foster." Ex. A at 8. This Court should reach the same conclusion here and, like the *Beacom* court, dismiss the negligent hiring claim.

### 2. Plaintiff Does Not Sufficiently Allege Foster's "Particular Unfitness" or that It Proximately Caused Injury.

Plaintiff also fails to sufficiently plead the particular unfitness or proximate cause elements of his negligent hiring claim. As the *Beacom* court recognized, under Illinois law, "it is not enough for the plaintiff to simply allege that the employee was generally unfit for employment." *Van Horne*, 185 Ill. 2d at 313; *see* Ex. A at 8. Rather, liability for negligent hiring arises only when a "*particular* unfitness of an employee gives rise to a particular danger of harm to third parties," and that particular unfitness "rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position." *Van Horne*, 185 Ill. 2d at 313; *see* Ex. A at 8.

In *Van Horne*, for example, the plaintiff brought a negligent hiring claim against a radio station whose disc jockey ("DJ") allegedly made defamatory statements about the plaintiff on-air. 185 Ill. 2d at 308-11. In support, the plaintiff alleged that the DJ had a history of prior "outrageous and offensive" on-air conduct, including harassment of a local TV host, broadcasting misinformation, and mocking the elderly. *Id.* at 309, 313-14. The Illinois Supreme Court affirmed dismissal of the claim, concluding that the DJ's prior "outrageous conduct" was not similar enough

to the alleged defamation to put his employer on notice of defamatory conduct. *Id.* at 313-16. Likewise, in *Gress v. Lakhani Hospitality, Inc.*, 2018 IL App (1st) 170380, the court affirmed dismissal of a negligent hiring claim where a hotel employee had previously been arrested for solicitation and was presently accused of raping a hotel patron. Despite the subject-matter connection between the allegations (solicitation and rape), the court found the alleged rape was not foreseeable and the hotel was not negligent. *Id.* ¶¶ 42-44.

Here, Plaintiff claims injury to himself and student-athletes. Am. Compl. ¶ 166. But Plaintiff has no right to assert claims based on the rights of or injuries to students. *See* Ex. A at 2; *Barry v. City of Chi.*, 2021 IL App (1st) 200829, ¶ 43. And Plaintiff does not allege that *he* suffered personal injury from Foster's treatment of student-athletes—i.e., that Foster required him to engage in conduct vis-à-vis the student-athletes, such as forcing a player to play while sick, that caused Plaintiff any concrete injury.

Instead, Plaintiff's claimed injuries stem from Foster's purported mistreatment of Plaintiff. Specifically, Plaintiff alleges Foster cussed at, yelled at, and bullied him, which caused him discomfort and emotional harm. *E.g.*, Am. Compl. ¶¶ 50, 200-201. He alleges Northwestern should have anticipated this emotional abuse because Foster had a "troubled reputation," which would have been discovered if Northwestern interviewed the three employees who used to work or train with Foster. *Id.* ¶¶ 18, 24-26. Yet Plaintiff's *only* nonconclusory allegations regarding Foster's "troubled reputation" are that, at Foster's prior schools, a student pitched a game while sick and another student died after practice due to an unspecified medical emergency. *Id.* ¶¶ 18, 161, 163.

In other words, Plaintiff's argument is that the conditions under which students practiced and played at Foster's prior schools (*i.e.*, pitching while sick) should have put Northwestern on notice that Foster would bully and harass his *coaching staff* at Northwestern. This is baseless. Even

if everything Plaintiff claims is true, there is no nexus between Plaintiff's current claim, on the one hand, and his allegations about Foster's former players practicing and playing while ill, on the other. Not unlike the hotel in *Gress* that was not on notice of the possibility of a rape, or the radio station in *Van Horne* that was not on notice of possible defamatory statements, it is a far and unsupported leap from prior incidents involving student-athlete health to the conclusion that Northwestern knew or should have known Foster had any particular unfitness that might cause him to yell at or harass fellow coaches—the conduct Plaintiff identifies as the source of his alleged injuries. Absent this nexus, Plaintiff's claim should be dismissed.

**B.      Plaintiff Does Not State a Claim for Negligent Supervision (Count V).**

Plaintiff's negligent supervision claim should be dismissed because Plaintiff does not plead facts sufficient to establish that (1) the Northwestern Defendants had a duty to supervise Foster; (2) the Northwestern Defendants negligently supervised Foster; and (3) such negligence proximately caused Plaintiff's injuries. *Herrera v. Di Meo Bros., Inc.*, 529 F. Supp. 3d 819, 832 (N.D. Ill. 2021) (applying Illinois law); *cf.* Ex. A at 9-10.

**1.      Plaintiff Does Not Sufficiently Allege Negligent Supervision.**

Plaintiff's own allegations show that the Northwestern Defendants were not negligent in supervising Foster. As Plaintiff admits, he did not report Foster's alleged misconduct to his employer or supervisory staff—his fellow baseball coaches did. Am. Compl. ¶ 58. Plaintiff further admits that, immediately following his colleagues' complaints about Foster to HR, HR conducted a formal investigation, during which HR interviewed witnesses and reviewed relevant documents. Ex. B at 1; *see also* Ex. A at 10. As Plaintiff recounts in his amended complaint, he and other members of the baseball coaching staff were interviewed about Foster. Am. Compl. ¶ 57(l) (Plaintiff was interviewed by HR); *id.* ¶¶ 57(a), 57(k) (other members of the coaching staff were

interviewed by Northwestern's compliance department). On the basis of these and other interviews, HR concluded that Foster violated certain University policies, notified the complainants by letter, and shared the results of the investigation "with the leadership in Athletics & Recreation to take appropriate remedial action." Ex. B at 1.

The *Beacom* court held that the *Beacom* plaintiffs pleaded themselves out of court because the complaint revealed that Northwestern "*did* receive Plaintiffs' grievances, did investigate, and *did* take action." Ex. A at 10 (emphasis added); *see also id.* ("[A]ction was promptly taken[.]"). The same is true here, and the same result should follow. Plaintiff cannot demonstrate that Northwestern was negligent in its supervision when it thoroughly investigated Foster, identified policy violations, addressed those violations, conveyed those findings in writing, and took affirmative remedial steps. Northwestern's conduct, as pleaded, proves it was not negligent.

In his amended complaint, Plaintiff newly claims that Mark Wesoloski, Associate Athletic Director for Ticket Operations, was "not accessible" to Plaintiff. Am. Compl. ¶¶ 61-62. But Plaintiff points to no attempted outreach to Wesoloski that was ignored. Furthermore, Wesoloski is not a named defendant, and Northwestern and its Athletic Department conducted a thorough investigation. Against this backdrop, the alleged unavailability of a single Northwestern staff member cannot demonstrate that the Northwestern Defendants were negligent in supervising Foster.

### 2. Plaintiff Does Not Sufficiently Allege Proximate Causation.

Similarly, Plaintiff does not sufficiently plead proximate cause. Proximate cause requires that Plaintiff's injuries be "generally foreseeable," such that a supervisor would be expected to take particular action to prevent those injuries from occurring. *See* Ex. A at 8-9; *Glickman v. Main-*

*Niles Ass'n of Special Recreation*, 440 F. Supp. 3d 946, 955 (N.D. Ill. 2020) (dismissing negligent supervision claim where plaintiff failed to allege how supervision fell short).

Here, again, Plaintiff recites in conclusory fashion the proximate cause element, *see* Am. Compl. ¶ 191, but pleads no facts that establish foreseeability or what steps the Northwestern Defendants could or should have taken to prevent the alleged injuries. *Cf. Martin v. Siciliano*, 2023 WL 3320428, at *7 (N.D. Ill. May 9, 2023) (dismissing negligent supervision claim due to "[t]hreadbare recital" of proximate cause (internal marks omitted)).

### 3. Plaintiff Does Not Sufficiently Allege that Holland and Velez Had a Duty to Supervise Foster.

Plaintiff's claim should be dismissed as to Holland and Velez for an additional reason: Plaintiff is required to plead specific facts that, if true, establish supervisory duties. *See, e.g.*, *Carmona v. 4-Bros. Transp. LLC*, 2024 WL 1767572, at *3 (N.D. Ill. Apr. 24, 2024) (denying leave to amend where the complaint "offer[ed] only conclusory assertions that [defendants] had a duty to supervise" the individual). Plaintiff falls well short of this standard with respect to Holland and Velez. As the *Beacom* court recognized, there is no indication that either Holland or Velez had a duty to, or did in fact, supervise Foster. *See* Ex. A at 10.

Plaintiff alleges that Holland and Velez had a duty to supervise as "Northwestern's representatives and Foster's and Plaintiffs' [sic] superiors." Am. Compl. ¶ 208. But Velez works in HR and is not alleged to have had any supervisory role related to Foster or the baseball team more generally. *Id.* ¶ 12. Holland is the Deputy Director of Athletics (Chief of Staff), not Foster's supervisor. *Id.* ¶ 11. In any case, Plaintiff does not allege that Velez or Holland had authority to hire, fire, promote, reassign, or take other tangible employment actions against Foster. They therefore cannot be held to have a duty to protect others from injuries purportedly caused by Foster. *See Robinson v. Roney Oatman, Inc.*, 1999 WL 1102694, at *7 (N.D. Ill. Nov. 23, 1999) (employee

was not a supervisor for tort claim where he had no authority to affect the terms and conditions of employment).

Nor did the Northwestern Staff Handbook impose on Velez or Holland a duty to supervise that would permit them to be held liable in a tort action, as Plaintiff now suggests. *See* Am. Compl. ¶¶ 181-83. Although a handbook can help define an employee's job responsibilities, a handbook does not "create a duty" in tort where the law otherwise does not recognize such a duty. *Ziccarelli v. Phillips*, 2013 WL 5387864, at *14 & n.7 (N.D. Ill. Sept. 25, 2013) (applying Illinois law) ("Where the law does not impose a duty, one will not generally be created by a defendant's rules or internal guidelines" (internal marks omitted)). Instead, the existence of a legal duty is "a question of law . . . determined by reference to whether the parties stood in such a relationship to each other that *the law* imposes an obligation on one to act for the protection of the other." *Id*. at 14 (internal marks omitted). Here, Plaintiff does not sufficiently plead that the law imposed any duty on co-workers like Holland and Velez—who did not supervise Foster—to protect other employees from purported injuries allegedly caused by Foster.

Even by its own terms, the Northwestern Staff Handbook cannot be read to impose a supervisory duty on Holland or Velez. As Plaintiff alleges, the Handbook describes unacceptable behavior in the workplace and states that "[f]aculty and staff at all levels are expected to support compliance with applicable Northwestern policies and procedures . . . ." Am. Compl. ¶¶ 181-82. If, as Plaintiff says, this language were read to impose on Holland and Velez a legally binding duty to supervise Foster, then, by Plaintiff's logic, it would impose that duty on *all* faculty and staff, even Foster's subordinates. It would be the duty of each employee to supervise every other employee at the University—a plainly absurd result.

Thus, as the court did in *Beacom*, this Court should dismiss the negligent supervision claims against Holland and Velez. Ex. A at 10.

**C.      Plaintiff Does Not State a Claim for Negligence (Count VI) or Willful and Wanton Conduct (Count VII).**

In his initial complaint, Plaintiff asserted a single claim for willful and wanton negligence. *See* Compl. ¶¶ 139-145. The *Beacom* court dismissed a virtually identical claim, finding that the plaintiffs failed to plead a "duty owed []or any willful and wanton conduct." Ex. A at 10. Plaintiff now attempts to avoid a similar fate by splitting his claim into two separate "counts": negligence (Count VI) and willful and wanton conduct (Count VII). This Court should dismiss both counts.

Plaintiff's amended complaint does not sufficiently plead a duty owed by the Northwestern Defendants to Plaintiff. Ex. A at 10 (*Beacom* court concluding the same). Plaintiff asserts that "[t]he employer-employee relationship gives rise to a duty on the part of an employer to provide a safe place for their employees to work," Am. Compl. ¶ 193 (citing *Allendorf v. Redfearn*, 2011 IL App (2d) 110130, ¶ 18), but *Allendorf* held that this duty extends only to foreseeable, likely injuries where the magnitude of the burden imposed by guarding against the injury and the consequences of placing that burden on the employer do not warrant finding an exception to the duty, *see* 2011 IL App (2d) 110130, ¶¶ 16-18 (employer had common-law duty to protect employee against foreseeable ATV accident due to stumps on employer's property). Here, the claimed duty is nothing like the duty to protect against a foreseeable physical accident; it instead would necessitate Northwestern policing against its coaching staff cursing and yelling, an unjustifiable burden. And again, Plaintiff's attempt to craft a duty from passages in the Northwestern Staff Handbook that pertain to acceptable workplace behavior, Am. Compl. ¶¶ 195-196, fails because "internal policies contained in [a] handbook cannot create a duty for purposes of [a] negligence claim" where such a duty does not exist under the law. *Ziccarelli*, 2013 WL 5387864, at *14 & n.7.

Additionally, even if Northwestern owed Plaintiff a general duty to provide a safe work environment, Plaintiff has not alleged that Northwestern breached that duty. Instead, Plaintiff simply alleges that the Northwestern Defendants "fail[ed] to both sufficiently and substantially investigate," and ultimately terminate, Foster. Am. Compl. ¶ 199. But as in *Beacom*, Plaintiff's own allegations establish that "Defendants did receive [] grievances [about Foster's conduct], did investigate, and did take action" promptly. Ex. A at 10.

As to the individual defendants—Holland and Velez—Plaintiff fails to plead facts establishing that any purported duty to provide a "safe place . . . to work" extends to them. Am. Compl. ¶ 193. As explained above, *see* Section III.B.3, Plaintiff does not allege that Holland or Velez were his or Foster's employers, or that Holland or Velez had any authority to hire, supervise, or take any other tangible employment action against Plaintiff or Foster. *Id.*

Count VII, which purports to state a claim for "willful and wanton conduct," likewise fails. Am. Compl. ¶¶ 207-216. Willful and wanton conduct is not a standalone claim under Illinois law; it is an aggravated form of negligence, meaning that Plaintiff's failure to plead negligence also requires dismissal of this count. *See Peters v. Riggs*, 2015 IL App (4th) 140043, ¶ 43 (there is no "separate and independent tort" of willful and wanton conduct under Illinois law (internal marks omitted)); *Mack Indus., Ltd. v. Vill. of Dolton*, 2015 IL App (1st) 133620, ¶ 35 (same). Moreover, as was true of the claims in *Beacom*, Plaintiff has "not sufficiently pled . . . any willful or wanton conduct," Ex. A at 10, which requires conduct that "shock[s] the conscience," *Pryor v. Chi. Transit Auth.*, 2022 IL App (1st) 200895, ¶ 42 (internal marks omitted). At a minimum, Plaintiff must plead facts demonstrating that the Northwestern Defendants knew or should have known that he was exposed to a high risk of serious injury and recklessly disregarded that risk. *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 242 Ill. App. 3d 707, 714-15 (4th Dist. 1993). The risk of injury must be

physical and serious in nature. *Id.* at 715; *see also Barr v. Cunningham*, 2017 IL 120751, ¶¶ 20-21 (summarizing cases involving risk of serious physical harm).[5] And the conduct must be more than negligent: the employer must have understood and disregarded the danger. *Campbell*, 242 Ill. App. 3d at 716 (dismissing claim where "[p]laintiffs failed to allege sufficient facts" to "support an action for wil[l]ful and wanton misconduct since, under these allegations, defendants could have been merely careless and not in disregard of a *known* danger").

Here, Plaintiff pleads no facts from which one can conclude that any of the Northwestern Defendants consciously or recklessly disregarded Plaintiff's physical safety, or knew or should have known they were exposing Plaintiff to a risk of serious physical injury. Instead, Plaintiff merely alleges that the Northwestern Defendants disregarded the toxicity of the workplace, including Foster's "cursing[] and yelling," "insensitive language," and alleged breaking of the NCAA's and University's rules. Am. Compl. ¶ 215. None of these facts, if true, establish *any* risk of physical injury—much less serious injury—to Plaintiff.

## IV. This Court Should Dismiss Plaintiff's Tort Claims (Counts IV-VII) As Barred by the IWCA.

Even assuming Plaintiff could overcome his failure to plead valid tort claims for the reasons discussed above, those claims must be dismissed for the additional, distinct reason that they are barred by the IWCA's exclusivity provision.

The IWCA precludes employees from bringing any common law or statutory claims (1) for accidental injuries, (2) arising from and occurring in the course of employment, (3) that are

---

[5] The cases defining willful and wanton conduct interchangeably refer to "serious injury" and "serious physical harm." The Northwestern Defendants have located no cases in this context sustaining a claim for willful or wanton conduct where the sole injury was non-physical. Because Plaintiff here alleges no physical injury (actual or threatened), his willful and wanton claim is insufficiently pled.

compensable under the IWCA. 820 ILCS 305/5(a), 305/11; *Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chi.*, 104 F.3d 1004, 1016 (7th Cir. 1997).

Although the Act refers to "accidental injuries," 820 ILCS 305/11, "claims based upon negligence are preempted by the IWCA," *Santos v. Boeing Co.*, 2004 WL 1384724, at *6-7 (N.D. Ill. May 11, 2004). This is because "[c]laims for negligence are inherently claims for accidental injuries." *Phillips v. Exxon Mobil Corp.*, 2018 WL 3458286, at *4 (N.D. Ill. July 18, 2018). Thus, courts have held that claims for negligent hiring, negligent supervision, and willful and wanton negligence are preempted by the IWCA. *See, e.g.*, *id.* (dismissing negligent retention and supervision claims); *Doe v. La Magdalena II, Inc.*, 585 F. Supp. 2d 984, 986-87 (N.D. Ill. 2008) (same for willful and wanton negligence claim). Courts also treat the type of emotional injury claimed by Plaintiff as compensable under the IWCA. *See, e.g.*, *Albright v. Am. Greetings Corp.*, 2020 WL 3303001, at *3 (N.D. Ill. June 18, 2020) (Rowland, J.) (dismissing negligence claim); *Phillips*, 2018 WL 3458286, at *3-4 (dismissing NIED and negligent retention and supervision claims); *Doe*, 585 F. Supp. 2d at 986-87 (dismissing negligence and willful and wanton claims).

Assuming Plaintiff was an employee of Northwestern, as he claims, Counts IV through VII do not state valid claims. Each alleges that Plaintiff suffered a work-related emotional injury resulting from an employer's or co-worker's negligence—claims clearly covered by the IWCA's exclusivity provision. If Plaintiff is an employee as he claims to be, his exclusive remedy for his alleged injuries is under the IWCA.[6]

---

[6] The state court in *Beacom* declined to dismiss the *Beacom* plaintiffs' tort claims on IWCA preemption grounds, citing the need for further factual development, and instead dismissed all claims as improperly pled. *See* Ex. A at 5-7. The Northwestern Defendants maintain that this decision was incorrect. Preemption is a question of law properly decided on the pleadings, comparing Plaintiff's allegations to what is compensable under the IWCA. Accordingly, dismissal is proper.

## V. Northwestern Is Not Liable Based on *Respondeat Superior* (Count VIII).

Finally, Plaintiff seeks to hold Northwestern liable on a *respondeat superior* theory for his claims against Foster (negligence and willful and wanton conduct). Plaintiff can only do so if he has sufficiently pleaded those underlying claims. *Turner v. M.B. Fin. Bank*, 2017 WL 4390367, at *6 (N.D. Ill. Oct. 3, 2017); Ex. A at 13. As explained *supra*, Plaintiff has not sufficiently pleaded any of his claims. In addition, *respondeat superior* liability for the alleged torts is preempted by the IWCA, which bars "employees from bringing common law actions against their employers based solely upon … respondeat superior." *Hunt-Golliday*, 104 F.3d at 1017.

### CONCLUSION

For the foregoing reasons, the Northwestern Defendants respectfully request that Plaintiff's amended complaint be dismissed. Because Plaintiff's claims are defective and further amendment would be futile, the dismissal should be with prejudice.

Dated: August 30, 2024

Respectfully submitted,

NORTHWESTERN UNIVERSITY,
MONIQUE HOLLAND, AND
RACHELVELEZ

By: /s/ Reid J. Schar
One of their attorneys

Reid J. Schar
Nicole A. Allen
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654
Phone: (312) 222-9350
rschar@jenner.com
nallen@jenner.com

## <u>CERTIFICATE OF SERVICE</u>

I, Reid J. Schar, an attorney, hereby certify that on August 30, 2024, I caused a true and correct copy of the foregoing Memorandum of Law to be served via email on:

Christopher J. Esbrook
David F. Pustilnik
James M. Kestler
Esbrook P.C.
321 N. Clark St., Suite 1930
Chicago, IL 60654
Phone: (312) 319-7680
Counsel for Plaintiff

James M. Kelly
Jay L. Cohen
James Kelly Law Firm, P.C.
7817 N. Knoxville Ave.
Peoria, IL 61614
Phone: (309) 679-0919
Counsel for James Foster

/s/ Reid J. Schar