# EXHIBIT 1

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| CHRISTOPHER M. BEACOM, MICHAEL, DUSTIN NAPOLEON, and JONATHAN R. STRAUSS,<br><br>　　Plaintiffs,<br>v.<br><br>NORTHWESTERN UNIVERSITY, DERRICK GRAGG, JAMES THOMAS FOSTER, MONIQUE HOLLAND, and RACHEL VELEZ<br><br>　　Defendants. | No. 2023 L 008072<br><br>Judge Daniel J. Kubasiak<br><br>Commercial Calendar T |

## OPINION

This cause is before the court on Defendants Northwestern University ("NU"), Derrick Gragg ("Gragg"), Monique Holland ("Holland"), and Rachel Velez's ("Velez") (collectively "Defendants") Motion to Dismiss.

The court reviewed the pleading and the arguments made by the parties. Upon doing so, the court grants Defendants' Motion to Dismiss.

## BACKGROUND

The following allegations are contained in the First Amended Complaint ("FAC"). In June 2022, Northwestern University ("NU") hired James Thomas Foster ("Foster") as NU's head baseball coach. Foster was recruited to NU from Army West Point after six years there. Plaintiffs Christopher M. Beacom ("Beacom"), Michael Dustin Napoleon ("Napoleon"), and Jonathan R. Strauss ("Strauss") (collectively "Plaintiffs") allege that NU hired Foster despite his departure from Army West Point being for allegations of abuse and misconduct made by student-athletes. Plaintiffs allege that from the beginning of Foster's tenure at NU, they were subject to abuse and bullying from Foster. Plaintiffs also allege that NU hired Foster in a rushed and insufficient manner that did not allow NU to fully vet Foster including the fact that NU did not consult with two NU employees who had previously worked with Foster and knew of his behavior and tendencies.

Beginning in August 2022, Plaintiffs allege that Foster repeatedly violated and asked his staff, including Plaintiffs, to violate NCAA rules and regulations. Plaintiffs allege that Foster would set up unofficial visits and meetings with potential student athletes, had the baseball team watch him throw out a first pitch at a Chicago Cubs game when these players were required to attend orientation meetings, giving free admission to baseball camp to a potential student athlete, among other actions. Plaintiffs allege that these actions continued until May 2023.

Page 1 of 6

In October 2022, Plaintiffs began the process of formally reporting Foster's behavior to NU administration. Plaintiffs allege that they went to James Blais ("Blais"), Deputy Director of Athletics for NU, and Maria Sanchez ("Sanchez"), Chief Diversity and Inclusion Officer with complaints about Foster. Plaintiffs allege that Blais and Sanchez were horrified by the allegations and gave Plaintiffs the process for filing a formal complaint through NU Human Resources ("HR").

On November 30, 2022, Plaintiffs submitted a complaint to HR that included allegations of toxic work environment, Foster discouraging players from seeking medical treatment, and Foster's derogatory and sexist comments regarding the female student manager. Plaintiffs allege that HR did not communicate with them regarding their complaint until January 2023.

In January 2023, HR interviewed each plaintiff separately. Plaintiffs allege that Foster's toxicity escalated and when they reached out for support they were ignored or told to trust NU's process. Plaintiffs allege that NU only interviewed Plaintiffs, the trainer, and a volunteer coach rather than conduct a thorough and wide-ranging investigation. Plaintiffs allege that HR did not interview a single student athlete or medical professional regarding Plaintiffs' complaints. Plaintiffs allege that despite the investigation conducted by Rachel Velez ("Velez") and Tracy Marquette Gioria-Walker ("Walker"), they continued to face toxicity and abuse from Foster and the administration on several occasions. Although Plaintiffs take exception with the time NU took to conduct its investigation, Plaintiffs do acknowledge that shortly after the January interviews NU confirmed their claims.

In mid-February 2023, Velez sent an email to Plaintiffs stating that there was enough evidence to substantiate several of the claims and that Plaintiffs would receive a formal letter addressing the investigation. Plaintiffs allege that Holland attended the baseball team's first game, but then left after the first game allowing "all hell to break loose." Plaintiffs allege that Foster publicly yelled at Strauss and revoked his authority to make decisions regarding pitchers even though he was the pitching coach. Plaintiffs do not allege that Foster was without authority to make pitching decisions.

In mid- February 2023, NU provided a letter to Plaintiffs stating that there was sufficient evidence to substantiate their claims. Plaintiffs allege that on that same day, Derrick Gragg ("Gragg"), NU's Director of Athletics, confirmed that none of the three Plaintiffs would be returning to NU's baseball program and that NU was in the process of hiring new coaches. The email went on to suggest a mediation to establish cohesion in the baseball program despite the fact that Plaintiffs were not going to continue with the program. Plaintiffs declined to participate in mediation. Plaintiffs allege that they were forced to become remote special contract workers to receive pay for the remainder of their contracts, while Foster remained as head coach. Plaintiffs allege that NU endorsed Foster's outrageous behavior for the 2022-2023 season, but then terminated Foster on July 13, 2023, three days after the highly publicized termination of football coach Patrick Fitzgerald.

The Court has considered Plaintiffs' FAC and the pending motion within the context of the relevant time frame and sequence of events. The Court considers the additional allegations, but reiterates that causes of actions that appear to be asserted on behalf of

those who are not parties to this matter will not be considered by the Court. As the Court has previously said, this is a workplace action involving an employer, a supervisor, and three employees. That is the context that the Court will address this matter.

In general terms, Plaintiffs allege that they were subject to verbal abuse and bullying by Foster from the very beginning of his tenure and that NU protected him.

The Complaint alleges negligent hiring (Count I), negligent supervision (Count II), negligence (Count III), willful and wanton conduct (Count IV), Intentional Infliction of Emotional Distress (Count V) asserted by Beacom only against NU and Foster, and *respondeat superior* (Count VI).

## STANDARD OF LAW

Pursuant to 735 ILCS 5/2-619.1, a party may file together a section 2-615 motion to dismiss, section 2-619 motion to dismiss, and 2-1005 motion for summary judgment. 735 ILCS 5/2-619.1; *Edelman v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164, (1st Dist. 2003). On a 2-619.1 motion, a court should entertain the section 2-615 motion first; the section 2-619 motion with affidavits filed in support should be brought only after a legally sufficient cause of action has been found. *Johannesen v. Eddins*, 2011 IL App (2d) 110108 ¶29.

In a 2-615 motion to dismiss, the movant challenges the legal sufficiency of the complaint or counterclaim based on certain defects or defenses apparent on the face of the allegations. *Beacham v. Walker*, 231 Ill. 2d 51, 57 (2008). In such a motion, all well-pled facts and their reasonable inferences must be taken as true and viewed in the light most favorable to the non-movant. *Jarvis v. S. Oak Dodge*, 201 Ill. 2d 81, 85 (2002). Illinois is a fact pleading jurisdiction; therefore, "a [claimant] must allege facts sufficient to bring a claim within a legally recognized cause of action." *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 355 (2004). Mere conclusions of law and unsupported conclusory factual allegations are insufficient to survive a 2-615 motion to dismiss. *Alpha Sch. Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 736 (1st Dist. 2009).

A section 2-619 motion to dismiss raises defects, defenses, or other affirmative matters that appear on the face of the complaint, or are established by external submissions, that defeat the plaintiff's claim. *Ball v. County of Cook*, 385 Ill. App. 3d 103, 107 (1st Dist. 2008). In doing so, the motion "admits the legal sufficiency of the [claimant's] allegations." *Miner v. Fashion Enters*, 342 Ill. App. 3d 405, 413 (1st Dist. 2003). The "affirmative matter" must be apparent on the face of the pleadings or be supported by affidavits or other evidentiary materials. *John Doe v. Univ. of Chi. Med. Ctr.*, 2015 IL App (1st) 133735, ¶ 37. An affirmative matter negates a cause of action completely or refutes crucial conclusions of law or material fact within the pleadings. *In re Estate of Schleker*, 209 Ill. 2d 456, 461 (2004). A court must take all well-pled facts and reasonable inferences as true, and it must construe all pleadings and supporting documents in the light most favorable to the non-movant. *Porter v. Decatur Mem. Hosp.*, 227 Ill. 2d 343, 353 (2008).

Although Illinois is a fact-pleading jurisdiction, Plaintiffs are required to allege only ultimate facts necessary to state a cause of action and are not required to set out all of the evidence. *People ex rel. Fabner v. Carriage Way West, Inc.*, 88 Ill. 2d 300, 308 (1981).

The purpose of a section 2-619 motion is to provide a means to dispose of issues of law or of easily proved issues of fact, with a reservation of jury trial as to disputed questions of fact. *Bloomingdale State Bank v. Woodland Sales Co.*, 186 Ill. App. 3d 227, 232 (2nd Dist. 1989).

## DISCUSSION

### Section 2-619

#### Illinois Workers' Compensation Act

Defendants seek to dismiss the FAC under section 2-619 by arguing that Plaintiffs' claims are barred by the Illinois Workers' Compensation Act's ("IWCA") exclusivity provisions, which precludes an employee from bringing a common law or statutory claim for: 1) accidental injury; 2) arising from and occurring in the course of the employee's employment; 3) where the injury is compensable under the IWCA. Defendants argue that although the IWCA refers to "accidental injury", claims based upon negligence are preempted by the IWCA. Defendants argue that although the Court previously concluded that application of the IWCA would be premature Defendants argue that the IWCA now bars these claims.

Plaintiffs maintain that the IWCA does not bar their claims. Plaintiffs maintain that their negligence based claims are not preempted because: 1) Foster's conduct was encouraged and authorized by NU and its administration, thus not constituting an accident; 2) as leader of the baseball program Foster was the alter ego of NU, which deems NU to have committed the misconduct by Foster and bars any defense that Plaintiffs' injuries were accidental; and 3) Plaintiffs damages are not compensable under the IWCA.

The Court finds that Plaintiffs' negligence based claims are preempted by the IWCA. In *Phillips v. Exxon Mobil Corp.*, 2018 U.S. Dist. LEXIS 119687, the Northern District found that the IWCA preempts negligence actions against employers and co-workers. *Id.* at 9. The Northern District determined that claims for negligence are inherently claims for accidental injuries. *Id.*; *Meerbrey v. Marshall Field and Co.*, 139 Ill. 2d 455, 463, 151 Ill. Dec. 560, 564 N.E.2d 1222 (1990); *Hunt-Golliday v. Metropolitan Water Reclamation Dist.*, 104 F.3d 1004, 1016; *Richardson v. County of Cook*, 250 Ill. App. 3d 544 (1993). In light of this, the Court finds that Counts I through IV are preempted by the IWCA. However, claims for intentional torts, like intentional infliction of emotional distress ("IIED"), are not preempted as they do not constitute actions for accidental injuries. *Id* at 7-8. As such, the Court grants Defendants' motion to dismiss as to Counts I through IV with prejudice.

#### Willful and Wanton (Count IV)

Although Count IV is preempted by the IWCA the Court finds it necessary to reiterate that Count IV is not a recognized separate cause of action. The Court emphasizes that willful and wanton conduct is simply an aggravated form of negligence. This combined

with the fact that, as stated above, it is preempted by the IWCA warrants dismissal. As such, the Court grants Defendants' motion to dismiss Count IV with prejudice.

*Intentional Infliction of Emotional Distress (Count V)*

Defendants seek to dismiss Count V by arguing that Beacom fails to allege that Foster's conduct was so unbearable and invasive that they could not bear to withstand it any longer or that damages resulted. Defendants argue that Beacom does not allege any new facts showing extreme or outrageous behavior that goes beyond mere insults, indignities, or annoyances. Defendants argue that the two additional incidents made part of the FAC do nothing to move the needle to extreme and outrageous. Defendants argue that the newly alleged NCAA rules violations are also irrelevant as Beacom does not describe a single instance in which he was pressured to violate NCAA rules. Defendants argue that absent coercion this does not constitute extreme or outrageous conduct. further, Defendants argue that Beacom fails to sufficiently plead intent or damages. Defendants argue that Beacom merely recites the intent element without providing any supporting facts. Also, Defendants argue that Beacom fails to plead that he is unemployed or has been unable to find work as a result of Foster's conduct.

Beacom maintains that while mere insults alone are insufficient for an intentional infliction of emotional distress ("IIED") claim, it is clear that the degree of power or authority which a defendant has over a plaintiff dictates whether the conduct is seemingly outrageous or extreme or not. Beacom maintains that the more power and authority a defendant has over a plaintiff, the more likely the defendant's conduct will be deemed outrageous or extreme. Beacom maintains that this will occur particularly when the conduct involves either a veiled or explicit threat. Beacom maintains that an employer may engage in extreme or outrageous conduct when an employer coerces an employee to commit a crime or request that the employee participate in behavior that would subject that employee to civil or criminal penalties. Beacom maintains that Foster, as the head of the NU baseball program, had a great degree of power and authority over him and that Foster abused that power by requesting and attempting to coerce Beacom to violate NCAA rules. Beacom maintains that this conduct was repeatedly reported to NU making NU aware of Foster's conduct. Beacom maintains that this conduct was so rampant that it was well known among the baseball staff. Further, Beacom alleges that he can prove damages as he has sought medical treatment as a result of Foster's conduct.

The Court finds that Beacom's additional allegations involving potential violations of NCAA rules would be a breach of Foster's employment agreement and an action that could be brought by NU, but not by Beacom. NU's decision to not pursue these claims does not allow Beacom to assert them. Further, the Court finds that the allegations supporting Count V are vague general allegations that do not demonstrate that Foster specifically went to Beacom to have him perform these tasks. Further, the allegations in the FAC still do not rise to the level of extreme or outrageous behavior. 'It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of decency." *Public Finanace Corp. v. Davis*, 66 Ill. 2d 85, 89 (1978), citing Restatement (Second) of Torts, sec. 46, comment d (1965); see also *Hayes v. Ill. Power Co.*, 225 Ill. App. 3d 819, 826-27 (4th Dist. 1992). The FAC falls short of meeting this standard.

In addition, although Beacom argues that these alleged NCAA violations occurred the Complaint simply states that Foster went to Beacom wanting to do these things, Beacom informed Foster those things went against NCAA rules, and then nothing else occurred. The Court finds that Beacom fails to allege that Foster persisted in wanting to do these things or repeatedly went to Beacom to have things occur despite Beacom's reponse that these acts went against NCAA rules. As such, the Court grants Defendants' motion to dismiss Count V with prejudice.

### *Respondeat Superior (Count VI)*

Defendants seek to dismiss Count VI by arguing that Plaintiffs cannot seek to hold them liable under *respondeat superior* as it requires Plaintiffs to plead a separate cause of action. Defendants argue that Plaintiffs have failed to sufficiently plead all of their other causes of action, which warrants dismissal of this count. Plaintiffs maintain that they have sufficiently pled all of their causes of action and this count may stand.

The Court finds there are no counts that withstand the scrutiny brought under Defendants' Motion to Dismiss. As there are no independent causes of action left that would allow Plaintiffs to assert a *respondeat superior* claim this claim must also be dismissed with prejudice.

### ORDER

It is ordered:

(1) Defendants' section 2-619 motion to dismiss is granted with prejudice as to Counts I to IV;
(2) Defendants' section 2-615 motion to dismiss is granted with prejudice as to Counts V and VI;
(3) This is an Order that resolves all disputes and issues presented before this Court.

ENTERED,

Judge Daniel J. Kubasiak, No. 2072

Judge Daniel J. Kubasiak

DEC 13 2024

Circuit Court-2072