IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

CHRISTOPHER M. BEACOM, MICHAEL, )
DUSTIN NAPOLEON, and JONATHAN R. )
STRAUSS, )
                                                    )     No. 2023 L 008072
      Plaintiffs, )
v.                                                 )     Judge Daniel J. Kubasiak
                                                    )
NORTHWESTERN UNIVERSITY, DERRICK )     Commercial Calendar T
GRAGG, JAMES THOMAS FOSTER, )
MONIQUE HOLLAND, and RACHEL VELEZ )
                                                    )
      Defendants. )

## OPINION

This cause is before the court on Defendant James Foster's Motion to Dismiss.

The court reviewed the pleading and the arguments made by the parties. Upon doing so, the court grants Foster's Motion to Dismiss.

## BACKGROUND

The following allegations are contained in the First Amended Complaint ("FAC"). In June 2022, Northwestern University ("NU") hired Foster as NU's head baseball coach. Foster was recruited to NU from Army West Point after six years there. Plaintiffs Christopher M. Beacom ("Beacom"), Michael Dustin Napoleon ("Napoleon"), and Jonathan R. Strauss ("Strauss") (collectively "Plaintiffs") allege that NU hired Foster despite his departure from Army West Point being for allegations of abuse and misconduct made by student-athletes. Plaintiffs allege that from the beginning of Foster's tenure at NU, they were subject to abuse and bullying from Foster. Plaintiffs also allege that NU hired Foster in a rushed and insufficient manner that did not allow NU to fully vet Foster including the fact that NU did not consult with two NU employees who had previously worked with Foster and knew of his behavior and tendencies.

Beginning in August 2022, Plaintiffs allege that Foster repeatedly violated and asked his staff, including Plaintiffs, to violate NCAA rules and regulations. Plaintiffs allege that Foster would set up unofficial visits and meetings with potential student athletes, had the baseball team watch him throw out a first pitch at a Chicago Cubs game when these players were required to attend orientation meetings, giving free admission to baseball camp to a potential student athlete, among other actions. Plaintiffs allege that these actions continued until May 2023.

In October 2022, Plaintiffs began the process of formally reporting Foster's behavior to NU administration. Plaintiffs allege that they went to James Blais ("Blais"), Deputy Director of Athletics for NU, and Maria Sanchez ("Sanchez"), Chief Diversity and Inclusion

*EXHIBIT 1*

Officer with complaints about Foster. Plaintiffs allege that Blais and Sanchez were horrified by the allegations and gave Plaintiffs the process for filing a formal complaint through NU Human Resources ("HR").

On November 30, 2022, Plaintiffs submitted a complaint to HR that included allegations of toxic work environment, Foster discouraging players from seeking medical treatment, and Foster's derogatory and sexist comments regarding the female student manager. Plaintiffs allege that HR did not communicate with them regarding their complaint until January 2023.

In January 2023, HR interviewed each plaintiff separately. Plaintiffs allege that Foster's toxicity escalated and when they reached out for support they were ignored or told to trust NU's process. Plaintiffs allege that NU only interviewed Plaintiffs, the trainer, and a volunteer coach rather than conduct a thorough and wide-ranging investigation. Plaintiffs allege that HR did not interview a single student athlete or medical professional regarding Plaintiffs' complaints. Plaintiffs allege that despite the investigation conducted by Rachel Velez ("Velez") and Tracy Marquette Gioria-Walker ("Walker"), they continued to face toxicity and abuse from Foster and the administration on several occasions. Although Plaintiffs take exception with the time NU took to conduct its investigation, Plaintiffs do acknowledge that shortly after the January interviews NU confirmed their claims.

In mid-February 2023, Velez sent an email to Plaintiffs stating that there was enough evidence to substantiate several of the claims and that Plaintiffs would receive a formal letter addressing the investigation. Plaintiffs allege that Holland attended the baseball team's first game, but then left after the first game allowing "all hell to break loose." Plaintiffs allege that Foster publicly yelled at Strauss and revoked his authority to make decisions regarding pitchers even though he was the pitching coach. Plaintiffs do not allege that Foster was without authority to make pitching decisions.

In mid- February 2023, NU provided a letter to Plaintiffs stating that there was sufficient evidence to substantiate their claims. Plaintiffs allege that on that same day, Derrick Gragg ("Gragg"), NU's Director of Athletics, confirmed that none of the three Plaintiffs would be returning to NU's baseball program and that NU was in the process of hiring new coaches. The email went on to suggest a mediation to establish cohesion in the baseball program despite the fact that Plaintiffs were not going to continue with the program. Plaintiffs declined to participate in mediation. Plaintiffs allege that they were forced to become remote special contract workers to receive pay for the remainder of their contracts, while Foster remained as head coach. Plaintiffs allege that NU endorsed Foster's outrageous behavior for the 2022-2023 season, but then terminated Foster on July 13, 2023, three days after the highly publicized termination of football coach Patrick Fitzgerald.

The Court has considered Plaintiffs' FAC and the pending motion within the context of the relevant time frame and sequence of events. The Court considers the additional allegations, but reiterates that causes of actions that appear to be asserted on behalf of those who are not parties to this matter will not be considered by the Court. As the Court has previously said, this is a workplace action involving an employer, a supervisor, and three employees. That is the context that the Court will address this matter.

In general terms, Plaintiffs allege that they were subject to verbal abuse and bullying by Foster from the very beginning of his tenure and that NU protected him.

The Complaint against Foster alleges negligence (Count III), willful and wanton conduct (Count IV), Intentional Infliction of Emotional Distress (Count V).

## STANDARD OF LAW

Pursuant to 735 ILCS 5/2-619.1, a party may file together a section 2-615 motion to dismiss, section 2-619 motion to dismiss, and 2-1005 motion for summary judgment. 735 ILCS 5/2-619.1; *Edelman v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164, (1st Dist. 2003). On a 2-619.1 motion, a court should entertain the section 2-615 motion first; the section 2-619 motion with affidavits filed in support should be brought only after a legally sufficient cause of action has been found. *Johannesen v. Eddins*, 2011 IL App (2d) 110108 ¶29.

In a 2-615 motion to dismiss, the movant challenges the legal sufficiency of the complaint or counterclaim based on certain defects or defenses apparent on the face of the allegations. *Beacham v. Walker*, 231 Ill. 2d 51, 57 (2008). In such a motion, all well-pled facts and their reasonable inferences must be taken as true and viewed in the light most favorable to the non-movant. *Jarvis v. S. Oak Dodge*, 201 Ill. 2d 81, 85 (2002). Illinois is a fact pleading jurisdiction; therefore, "a [claimant] must allege facts sufficient to bring a claim within a legally recognized cause of action." *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 355 (2004). Mere conclusions of law and unsupported conclusory factual allegations are insufficient to survive a 2-615 motion to dismiss. *Alpha Sch. Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 736 (1st Dist. 2009).

A section 2-619 motion to dismiss raises defects, defenses, or other affirmative matters that appear on the face of the complaint, or are established by external submissions, that defeat the plaintiff's claim. *Ball v. County of Cook*, 385 Ill. App. 3d 103, 107 (1st Dist. 2008). In doing so, the motion "admits the legal sufficiency of the [claimant's] allegations." *Miner v. Fashion Enters*, 342 Ill. App. 3d 405, 413 (1st Dist. 2003). The "affirmative matter" must be apparent on the face of the pleadings or be supported by affidavits or other evidentiary materials. *John Doe v. Univ. of Chi. Med. Ctr.*, 2015 IL App (1st) 133735, ¶ 37. An affirmative matter negates a cause of action completely or refutes crucial conclusions of law or material fact with in the pleadings. *In re Estate of Schleker*, 209 Ill. 2d 456, 461 (2004). A court must take all well-pled facts and reasonable inferences as true, and it must construe all pleadings and supporting documents in the light most favorable to the non-movant. *Porter v. Decatur Mem. Hosp.*, 227 Ill. 2d 343, 353 (2008).

Although Illinois is a fact-pleading jurisdiction, Plaintiffs are required to allege only ultimate facts necessary to state a cause of action and are not required to set out all of the evidence. *People ex rel. Fabner v. Carriage Way West, Inc.*, 88 Ill. 2d 300, 308 (1981).

The purpose of a section 2-619 motion is to provide a means to dispose of issues of law or of easily proved issues of fact, with a reservation of jury trial as to disputed

questions of fact. *Bloomingdale State Bank v. Woodland Sales Co.*, 186 Ill. App. 3d 227, 232 (2nd Dist. 1989).

## DISCUSSION

### Section 2-619

Foster seeks to dismiss Counts III, IV, and V by arguing that these claims are preempted by the Illinois Workers' Compensation Act ("IWCA"). Foster argues that by enacting the IWCA the General Assembly established a new framework to replace the common law rights and liabilities that previously governed employee injuries. Foster argues that the IWCA contains an exclusive remedy provision as part of the *quid pro quo* section which balances the sacrifice and gains of employers and employees. Foster argues that there are four exceptions to the IWCA: 1) the injury was not accidental; 2) the injury did not arise from his employment; 3) the injury was not received during the course of his employment; and 4) the injury was not compensable under the IWCA. Foster argues that exceptions 2 and 3 do not apply because of the allegations made. Foster argues that in negligence claims the injuries are often, if not always, accidental. Foster argues that the question concerning the first exception is not whether the action was accidental, but rather was the injury accidental. Foster argues that the IWCA precludes a common law action for damages suffered by an employee that were caused by a coworker based upon the latter's negligence during the course of employment. Foster argues that exception 4 also does not apply as Plaintiffs have failed to allege facts which support the claims being sought. Foster argues that Plaintiffs have generally alleged that he and the other defendants left an incredible impact on their psyche, but this is compensable under the IWCA.

Plaintiffs maintain that their claims are not barred by the IWCA. Plaintiffs maintain that the IWCA is designed to provide financial protection to workers for accidental injuries arising out of and in the course of employment. Plaintiffs maintain that their negligence based and intentional infliction of emotion distress ("IIED") claims are not preempted because the actions giving rise to the claims were encouraged and authorized by NU. Plaintiff maintains that this fact deems that NU committed the misconduct and bars any defense that the injuries were accidental.

The Court finds that Plaintiffs' negligence based claims are preempted by the IWCA. In *Phillips v. Exxon Mobil Corp.*, 2018 U.S. Dist. LEXIS 119687, the Northern District found that the IWCA preempts negligence actions against employers and co-workers. *Id.* at 9. The Northern District determined that claims for negligence are inherently claims for accidental injuries. *Id.; Meerbrey v. Marshall Field and Co.*, 139 Ill. 2d 455, 463, 151 Ill. Dec. 560, 564 N.E.2d 1222 (1990); *Hunt-Golliday v. Metropolitan Water Reclamation Dist.*, 104 F.3d 1004, 1016; *Richardson v. County of Cook*, 250 Ill. App. 3d 544 (1993). In light of this, the Court finds that Counts III and IV are preempted by the IWCA. However, claims for intentional torts, like intentional infliction of emotional distress ("IIED"), are not preempted as they do not constitute actions for accidental injuries. *Id* at 7-8. As such, the Court grants Foster's 2-619 motion to dismiss with prejudice as to Counts III and IV. The Court denies as to Count V.

*Section 2-615*

*Willful and Wanton (Count IV)*

*Willful and Wanton (Count IV)*

Although Count IV is preempted by the IWCA the Court finds it necessary to reiterate that Count IV is not a recognized separate cause of action. The Court emphasizes that willful and wanton conduct is simply an aggravated form of negligence. This combined with the fact that, as stated above, it is preempted by the IWCA warrants dismissal. As such, the Court grants Defendants' motion to dismiss Count IV with prejudice.

*Intentional Infliction of Emotional Distress (Count V)*

Foster seeks to dismiss Count V by arguing that Beacom has essentially abandoned this claim as it is insurmountable. Foster argues that Beacom cannot state a claim for IIED based on the interactions with another coach in a Power Five baseball job. Foster argues that the federal court in *Piech v. Arthur Andersen & Co.*, 841 F. Supp. 825 (N.D. Ill. 1994) provided examples of cases involving behavior in the employment context that constitutes outrageous conduct such as: 1) a supervisor intentionally placed checks in the plaintiff's purse so that the plaintiff would appear as a thief and fear criminal charges; 2) a defendant exposed himself to plaintiff and subjected plaintiff to unwelcome sexual advances, sexual comments containing innuendos, and repeated requests for sexual behavior; and 3) where the defendant knew plaintiff was susceptible to emotional distress and pursed the plaintiff for dates, offered her money for sex, and threatened to kill and rape her.

Foster argues that the *Piech* court also provided examples of acts that did not constitute outrageous conduct such as: 1) a plaintiff alleged that she was surrounded by supervisors and coworkers who were inconsiderate, rude, vulgar, uncooperative, unfair, and that one agent touched her breast while another stated he wanted her; 2) a plaintiff alleged that a piece of toilet paper with human waste matter was placed in a drawer the plaintiff would open; and 3) where an African American employee had a pickaninny doll hung up in her office, was subjected to racial slurs, excluded from social events, put on probation, and was refused proper training. Foster argues that Beacom's allegations do not even approach shocking the conscience. Foster argues that Beacom fails to allege a single fact that supports that Foster coerced him to violate any NCAA rule.

Foster argues that a court cannot accept as true mere conclusions of law or allegations unsupported by facts. Also, Foster argues that Beacom has failed to allege any emotional harm serious enough to support his claim. Foster argues that skipped meals, loss of sleep, being fearful of entering the workplace, and resuming medications previously taken do not constitute severe emotional distress.

Beacom maintains that in *Piech* the plaintiff was subjected to one isolated incident, but in this matter Beacom was subjected to a slew of acts of coercion, abuse of authority, and harassment over the course of the entire 2022-23 baseball season. Beacom maintains that the facts in this matter are also distinct from those in *Piech* given Foster's propensity for coercing his staf to repeatedly violate NCAA rules. Beacom maintains that this key

distinction is crucial in a court considering whether an employer engaged in extreme or outrageous conduct. Beacom maintains that the cases cited by Foster only serve to help Beacom because as contained in Foster's cited cases Beacom was subjected to abusive language, threats, and extended harassment. Beacom maintains that Foster disregards the fact that Beacom's injuries are not limited to skipping meals, losing sleep, or loss of concentration. Beacom maintains that the Court should not allow his injuries to go unanswered.

The Court finds, as it did with NU's motion to dismiss, that Beacom fails to allege extreme or outrageous conduct committed by Foster. The Court finds that to constitute extreme or outrageous conduct the conduct must be characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Public Finanace Corp. v. Davis*, 66 Ill. 2d 85, 89 (1978), citing Restatement (Second) of Torts, sec. 46, comment d (1965); see also *Hayes v. Ill. Power Co.*, 225 Ill. App. 3d 819, 826-27 (4th Dist. 1992). "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1988). The Court notes that even after Beacom and the other plaintiffs made their formal grievances they stayed in the baseball program and not once did any quit prior to being dismissed. The Court finds that the fact alone demonstrates that Foster's actions were not so unbearable or such that it shocked the conscience. Further, the Court finds that Beacom fails to allege facts that demonstrate severe emotional distress.

In addition, although Beacom argues that these alleged NCAA violations occurred the Complaint simply states that Foster went to Beacom wanting to do these things, Beacom informed Foster those things went against NCAA rules, and then nothing else occurred. The Court finds that Beacom fails to allege that Foster persisted in wanting to do these things or repeatedly went to Beacom to have things occur despite Beacom's reponse that these acts went against NCAA rules. As such, the Court grants Foster's Motion to Dismiss Count V with prejudice.

### ORDER

It is ordered:

(1) The Court grants Foster's 2-619 motion to dismiss with prejudice as to Counts III and IV;
(2) The Court grants Foster's 2-615 motion to dismiss with prejudice as to Count V;
(3) This Order resolves all issues and disputes presented before this Court.

**Judge Daniel J. Kubasiak**

**DEC 13 2024**

**Circuit Court - 2072**

ENTERED,

Judge Daniel J. Kubasiak, No. 2072