IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADRIAN SANTIAGO, | |
| Plaintiff, | |
| v. | Case No. 24-cv-2058 |
| NORTHWESTERN UNIVERSITY, JAMES THOMAS FOSTER, MONIQUE HOLLAND, and RACHEL VELEZ, | Judge Mary M. Rowland |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Adrian Santiago has sued Northwestern University, Monique Holland, Rachel Velez (the "Northwestern Defendants"), and James Foster (and collectively with the Northwestern Defendants, "Defendants") alleging violations of the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL"), Illinois Wage Payment and Collection Act ("IWPCA"), and seeking liability under various negligence-based torts. Santiago's claims arise out of Defendants' treatment and non-payment of Santiago while he was a volunteer baseball coach at Northwestern University. Before the Court now are Defendants' motions to dismiss [26]; [27] the first amended complaint. For the reasons stated herein, the Northwestern Defendants' motion [26] is granted in part and denied in part, and Foster's motion [27] is granted.

I. Background

1

The following factual allegations taken from the operative complaint [24] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

Northwestern hired Foster as its head baseball coach in June 2022 following an interview process that lasted just three or four days. [24] ¶¶ 15-16. At the time, the baseball team also employed three individuals—Beacom, Napoleon, and Strauss—who helped run the team, and their responsibilities included managing program operations, pitching strategy, and recruiting. [24] ¶ 24. Before he was hired at Northwestern, Foster had worked as a coach at West Point and the University of Rhode Island. [24] ¶ 16-18. While he was the head coach at West Point, he faced allegations of abusive and bullying behavior. [24] ¶ 158. During his tenure at the University of Rhode Island, the university was sued following a student-pitcher's death during an outdoor training session. [24] ¶ 18.

Santiago started working with the Northwestern baseball team as a "volunteer coach" in October 2022 with an agreement that his responsibilities would take no more than 30 hours a week to fulfill. [24] ¶¶ 29, 31. By November 2022, at Foster's request, Santiago took on additional duties that were outside those expected of a volunteer coach. [24] ¶ 31. By January 2023, Santiago was spending over 100 hours a week fulfilling his volunteer duties. [24] ¶ 36. In February of that year, Beacom, Napoleon, and Strauss left their roles, and their responsibilities and duties fell to Santiago. [24] ¶¶ 37-40. Northwestern hired replacements for Napoleon and Strauss in March, but Santiago alleges that they were so inexperienced that Santiago had to

2

continue performing all their job duties as well as his own volunteer responsibilities. [24] ¶¶ 42-44. Santiago continued working more than 100 hours a week until the end of the season in June 2023. [24] ¶ 45.

As head baseball coach, Foster subjected Santiago, other staff, and the students to abusive and bullying behavior. [24] ¶ 50. On several occasions, Foster yelled and swore at staff members, often in front of other staff or student-athletes. [24] ¶ 50. Santiago alleges that Foster repeatedly violated NCAA and Northwestern rules around recruiting potential student-athletes. [24] ¶ 57.

In October 2022, Beacom, Napoleon and Strause formally reported Foster's conduct to Northwestern. [24] ¶ 58. Santiago did the same in January 2023. [24] ¶ 59. Specifically, Santiago met employees in Northwestern's HR department to corroborate a timeline that other staff members had provided as a part of an investigation Northwestern was conducting. [24] ¶ 59. Santiago also described how Foster's manipulative abusive behavior gave Santiago extreme anxiety. [24] ¶ 59. In February, Northwestern sent a letter to Beacom, Strauss, and Napoleon, explaining that Northwestern had investigated Foster and found sufficient evidence to substantiate allegations that he had engaged in bullying and abusive behavior. [24] ¶ 64. Northwestern nonetheless kept him as head coach until at least the end of the season.

In the spring, Foster began making statements to Santiago indicating that Santiago may soon have a paid role on the team. [24] ¶ 66. Foster told him that they would "be great coaching together," and that he "could be [Foster's] first or second

3

assistant." [24] ¶ 66. Santiago approached Foster and Northwestern in March to seek compensation for the three full-time jobs he was performing in addition to his volunteer responsibilities. [24] ¶ 72. Foster told Santiago that "he was caught up in administrative bullshit," and Velez, an HR employee with Northwestern, told Santiago that they were "working it out" with the NCAA. [24] ¶ 73. Foster and Velez ultimately decided to pay Santiago two payments of $5,000; one in March and one in April. [24] ¶ 78. Santiago alleges that Northwestern otherwise "failed to compensate [him] for work that it knew he had been performing since coming on board as a 'volunteer coach' . . . in direct violation of NCAA guidelines . . . to avoid paying [Santiago] a full-time assistant's salary. . . ." [24] ¶ 79. Santiago further alleges that "Northwestern failed to provide [him] with an employment contract that paid him for his full-time job responsibilities." [24] ¶ 88. At some later point in time, Foster communicated to Santiago that he "could" be the pitching coach in the future, and that he could be paid $100,000 a year in that role. [24] ¶¶ 91, 129. However, Santiago later learned that Foster had offered the pitching coach role to other prospective coaches as well. [24] ¶ 93. Because Santiago could "no longer endure such an abusive, toxic, and unethical work environment," Santiago left the program in the end of June 2023. [24] ¶ 94.

In early July, a highly publicized news article described Foster's abusive and bullying tactics and detailed how Foster pushed student-athletes to compete to their detriment even while they were injured. [24] ¶ 97. Northwestern fired Foster three days later.

4

Santiago filed his complaint in state court on February 21, 2024, and it was removed to federal court on March 11, 2024. Count I alleges that Northwestern violated the IMWL; Count II alleges that Northwestern violated the FLSA; Count III alleges that Northwestern violated the IWPCA; Count IV alleges that Northwestern is liable for negligent hiring; Count V alleges that the Northwestern Defendants are liable for negligent supervision; Count VI alleges that all Defendants are liable for negligence; Count VII alleges that all Defendants are liable for willful and wanton conduct; and Count VIII seeks to hold Northwestern liable under a theory of *respondeat superior*.

## II. Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not

necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### III. Analysis

#### A. Counts I (IMWL) and II (FLSA)

Defendants argue that Counts I and II should be dismissed because both the IMWL and FLSA protect only the rights of employees, not those of volunteers. To survive a motion to dismiss an FLSA claim, plaintiffs must "allege facts, which taken as true, establish that they were employees.," *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 290 (7th Cir. 2016). The IMWL requires the same. *See Callahan v. City of Chi.,* 78 F. Supp. 3d 791, 821 (N.D. Ill. 2015) ("Because the IMWL parallels the FLSA so closely, courts have generally interpreted their provisions to be coextensive, and so have generally applied the same analysis to both."), *aff'd*, 813 F.3d 658 (7th Cir. 2016). To determine whether one is an employee under the FLSA, the Seventh Circuit has instructed district courts to assess the "economic reality" of the

6

relationship between the employer and the alleged employee. *Vanskike v. Peters*, 974 F.2d 806, 808 (7th Cir. 1992).

The parties agree that both statutes allow only an employee to bring a claim, but they disagree about what framework to use to assess the economic reality of Santiago and Northwestern's relationship. Courts have developed "a variety of multifactor tests" to evaluate economic realities, *Berger*, 843 F.3d at 290, but the Seventh Circuit has declined to universally adopt any one test. *See Vansike*, 974 F.2d at 809 (rejecting use of a multi-factor test because it did not capture the nature of the relationship between the plaintiffs and their alleged employer); *Hollins v. Regency Corp.*, 867 F.3d 830 (7th Cir. 2017) (commending the district court for being "rightly skeptical about the utility of [one test's] plethora of factors"). Santiago urges the Court to use a seven-factor test recommended by the Department of Labor for use when considering internships:

> 1. The extent to which the intern and the employer clearly understand that there is no expectation of compensation.
>
> 2. The extent to which the internship provides training that would be similar to that which would be given in an educational environment.
>
> 3. The extent to which the internship is tied to the intern's formal education by integrated coursework or the receipt of academic credit.
>
> 4. The extent to which the internship accommodates the intern's academic commitments by corresponding to the academic calendar.
>
> 5. The extent to which the internship's duration is limited to the period in which the internship provides the intern with beneficial learning.
>
> 6. The extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern.
>
> 7. The extent to which the intern and the employer understand that the internship is conducted without entitlement to a paid job at the conclusion of the internship

DOL, Wage & Hour Div., Fact Sheet # 71, Internship Programs Under The Fair Labor Standards Act, *available at* https://www.dol.gov/whd/regs/compliance/whdfs71.pdf).

Although Santiago undoubtedly learned useful skills as a volunteer coach, Santiago has not alleged facts that would allow the Court to assess his relationship with Northwestern under this framework. It is not clear, for example, how factors two, three, four, or five could be meaningfully analyzed in this case. Santiago essentially concedes as much. Rather, as in *Viske*, the Court will assess the economic reality of the parties' relationship more holistically. Santiago alleges that he began working for Northwestern in October as a *volunteer* without any expectation of compensation from Northwestern. By November, although his volunteer responsibilities expanded, he continued to work without any expectation of compensation or a future paid role at Northwestern. Despite his expanded role, Santiago does not allege facts demonstrating that the economic reality had become more than one of a very eager volunteer and an entity who was glad to benefit from freely volunteered services.

By February, however, the economic reality of the arrangement changed. Santiago alleges that he was not only performing his own volunteer duties, but also the *job* duties of three separate staff positions (Director of Operations, Recruiting Coordinator, and lead Assistant Coach) after the paid employees in those roles quit. The facts alleged in the complaint demonstrate that Northwestern clearly needed staff to work those roles; Northwestern hired at least two replacement employees the next month. And in March and April 2023, Northwestern began giving Santiago payments of $5,000 "for his performance of all three full-time coaching jobs." [24] ¶

8

78. During this time, Santiago was also training the replacements that Northwestern hired, and one of those replacements apparently viewed Santiago as being so essential to the baseball team's operation that he offered to give Santiago his own salary.

In short, Santiago performed the job responsibilities of a paid employee, and Northwestern paid him to do those job responsibilities. Despite that there was no formal change in his job title, the economic reality is that Northwestern was paying Santiago for essential work that they needed staff to perform. Taking the facts in the complaint in the light most favorable to Santiago, the Court holds that he has alleged sufficient facts to show he was an FLSA-employee by at least February of 2023.

Northwestern argues that the $5,000 payments should not affect the Court's analysis. The university points to an exemption that Congress created for FLSA coverage that applies to "any individual who volunteers to perform services for a public agency." 29 U.S.C. § 203(e)(4)(A). Under the exemption, an individual can be a volunteer "even if he receives a fee, so long as the fee is nominal." 29 C.F.R. § 553.106(a). The DOL has said a fee is "nominal" if it does not exceed 20% of what an employer "would otherwise pay to hire a coach or advisor for the same services." DOL Opinion Letter FLSA2005-51, 2005 WL 3308622, at *3 (Nov. 10, 2005). Northwestern argues that the two $5,000 payments are nominal because Santiago alleges that had he been hired, he would have been paid $100,000 a year.

There are two problems with this argument. First, the exemption applies only to those who volunteer for a *public* agency, and Northwestern is a private university.

9

The DOL has explicitly stated that this exemption does not apply to volunteers for private sector employers. *See* DOL ELaws Fair Labor Standards Act Advisor, Volunteers, *available at* https://webapps.dol.gov/elaws/whd/flsa/docs/volunteers.asp. Second, even if the exemption applied to Santiago, it would not be possible to determine whether it is nominal at this stage of the proceedings. For instance, Santiago alleges that Northwestern paid one of its coaches $8,500 a month. The payments of $5,000 are more than nominal under this scenario.

With the benefit of discovery, Northwestern may be able to demonstrate that a different economic reality existed, and that Santiago was not an FLSA-employee during any of his time with Northwestern. Further, with the benefit of discovery, the parties will be in a position to argue at which point, if ever, Santiago moved from volunteer to employee. But at the pleadings stage, Santiago has alleged sufficient facts to survive dismissal.

### B. Count III (IWPCA)

The IWPCA gives employees "a cause of action against employers for the timely and complete payment of earned wages." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016). "[T]o state a claim under the IWPCA, [plaintiffs] are required to demonstrate that they are owed compensation from defendants pursuant to an employment agreement." *Id*. (citing *Dominguez v. Micro Ctr. Sales Corp.*, 2012 WL 1719793 (N.D. Ill. 2012) ("[T]he IWPCA mandates overtime pay or any other specific kind of wage only to the extent the parties' contract or agreement requires such pay.")). An agreement under the IWPCA is "broader than a contract," and requires

10

only the manifestation of mutual assent. *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 452 (7th Cir. 2012) Northwestern argues that Santiago failed to allege that any employment agreement exists under which Santiago is owed unpaid wages. The Court agrees.

Santiago alleges only that Northwestern agreed to pay him two amounts of $5,000 in March and April 2023. Santiago further alleges that Northwestern in fact paid him those amounts. He points to comments made by Defendants indicating that they intended to hire him on as a full-time coach *in the future*, but those comments say nothing about any agreement or intent to pay him for his work as a volunteer coach. While an agreement under the IWPCA requires only the manifestation of mutual assent, Santiago has not alleged sufficient facts demonstrating any manifestation of assent to pay him at any time outside of March and April 2023, and Northwestern paid him the amounts it agreed to pay him in those months. Count III is dismissed.

### C. Counts IV – VII: Tort Claims

Santiago has also brought Illinois tort claims against Defendants for negligence, negligent hiring, negligent supervision, and willful and wanton conduct. Defendants argue that each of these claims is preempted by the Illinois Workers Compensation Act ("IWCA"). The Court agrees.[1]

The IWCA "is designed to provide financial protection to workers for accidental injuries arising out of and in the course of employment." *Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1225 (Ill. 1990). The Act "imposes liability without fault upon

---

[1] Because the Court holds that Santiago's negligence claims are preempted, it declines to address the parties' other arguments specific to each negligence claim. [26-1] at 12-22.

11

the employer and, in return, prohibits common law suits by employees against the employer." *Id.* As such, the Illinois Supreme Court has held that any claim by an employee-plaintiff is preempted by the IWCA unless one of the following exceptions applies: "(1) that the injury was not accidental; (2) that the injury did not arise from his or her employment; (3) that the injury was not received during the course of employment; or (4) that the injury was not compensable under the Act." *Id.* at 1226 (citing *Collier v. Wagner Castings Co.*, 408 N.E.2d 198, 237 (Ill. 1980)). At issue here is the last exception—whether Santiago's alleged injuries are compensable under the IWCA. Santiago does not argue that any other exception applies.

Santiago alleges that, because of Defendants' negligent conduct, he suffered injuries in the form of emotional distress and damage to his reputation. Santiago acknowledges that claims for emotional injury are compensable under (and thus preempted by) the IWCA. *See Collier*, 408 N.E.2d at 202. In response to Defendants' argument, he asserts that "any reputational damages incurred by Plaintiff are not compensable under the IWCA" [34] at 32, and thus not preempted.[2]

As a general matter, courts routinely find that claims against employers for negligence are preempted by the IWCA. *See, e.g., Doe v. La Magdalena II, Inc.*, 585 F. Supp. 2d 984, 986 (N.D.Ill.2008) ("The [IWCA] abrogates employer liability for all common law negligence claims.") (internal quotation marks omitted); *Phillips v. Exxon Mobil Corp.*, 2018 WL 3458286, at *4 (N.D. Ill. July 18, 2018) (dismissing negligent hiring, negligent supervision, and willful and wanton claims as preempted

---

[2] Santiago seemingly concedes that his claim for emotional distress damages is preempted.

12

by the IWCA); *Ulm v. Mem'l Med. Ctr.*, 964 N.E.2d 632, 645 (Ill. App. Ct. 2012) (same as to negligent supervision and negligent infliction of emotional distress).

The parties have not cited, and the Court cannot find, any case where a court applying Illinois law has considered whether a plaintiff can escape this general rule by claiming reputational injury.[3] Defendants argue that reputational damage is not a compensable in an action for negligence. Federal courts applying Illinois law have held that reputational injuries are purely economic and thus not compensable in a negligence claim. *Integra Healthcare, S.C. v. APP of Illinois HM, PLLC*, No. 18 C 3589, 2019 WL 3766122, at *3-4 (N.D. Ill. Aug. 9, 2019) (citing *Cloverhill Pastry-Vend Corp. v. Cont'l Carbonics Prods., Inc.*, 574 N.E.2d 80, 83 (Ill. App. Ct. 1991)); *Brawley v. U.S. Bank, N.A.*, No. 05-911-JPG, 2007 WL 315012, at *4 (S.D. Ill. Jan. 31, 2007) (same). The question, then, is whether Santiago can avoid preemption by alleging he has suffered *reputational damages* that do not appear to be compensable under either the IWCA *or* the claims alleged in the Amended Complaint. The Court holds that he cannot.

The IWCA forces employers to accept "liability without fault . . . and, in return, prohibits common law suits by employees against their employers." *Meebery*, 564 N.E.2d at 1225. The Illinois Supreme Court has described this statutory scheme as a

---

[3] Both parties refer to proceedings in state court brought by other members of the Northwestern coaching staff against Foster and Northwestern. *See generally Beacom v. Northwestern University et al*, 2023 L 008072 (Cook Cty. Cir. Ct. Dec. 13, 2024). There, the state court held that a paid employee's negligence-based claims seeking emotional damages were preempted by the IWCA. However, although the plaintiffs in *Beacom* also alleged they suffered reputational injuries, they did not specifically argue that such injuries were not compensable under the IWCA. *See Beacom,* 2023 L 008072, First Amended Compl. ¶ 113; Pls. Opp. Mot. Dismiss at 25. As a result, the *Beacom* opinion does not address the specific issue before the Court now—whether reputational injury is compensable under the IWCA.

13

"*quid pro quo*" under which "the sacrifices and gains of employees and employers are to some extent put in balance." *Id*. Allowing Santiago to escape preemption by alleging he suffered a form of injury that cannot itself be recovered in a negligence action would disrupt this balance, and the Court declines to do so here. As a result, Counts IV – VII are preempted by the IWCA and dismissed.

### D. Count VIII: *Respondeat Superior*

Finally, Santiago seeks to hold Northwestern liable for its allegedly tortious conduct through the doctrine of *respondeat superior*. But a *respondeat superior* claim cannot proceed when the underlying cause of action has been dismissed. *See Bachenski v. Malnati*, 11 F.3d 1371, 1377–78 (7th Cir. 1993) (applying Illinois law). Because Santiago's tort claims have been dismissed, Count VIII is likewise dismissed.

## IV. Conclusion

For the stated reasons, Northwestern Defendants' motion to dismiss [26] is granted in part and denied in part, and Foster's motion to dismiss [27] is granted. Counts I and II survive dismissal; the remaining counts are dismissed.

E N T E R:

Dated: June 16, 2025

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

14